UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VIOLA BRYANT, as Personal
Representative of the Estate of
GREGORY VAUGHN HILL, JR.,

Case No. 2:16cv14072-ROSENBERG/LYNCH

Plaintiff,

vs.

SHERIFF KEN MASCARA in his official
Capacity as Sheriff of St. Lucie County,
and CHRISTOPHER NEWMAN,
an individual,

Defendants.
_____/

## DEFENDANT NEWMAN'S MOTION FOR SUMMARY JUDGMENT
## (AND MEMORANDUM OF LAW)

The Defendant, CHRISTOPHER NEWMAN, individually, by and through undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this his Motion for Summary Judgment[1] (and Memorandum of Law), and as grounds therefore would state as follows:

1. This lawsuit arises out of an incident that occurred during the afternoon of January 14, 2014. Two uniformed St. Lucie County Sheriff's deputies Christopher Newman and Edward Lopez responded to a 911 call regarding a complaint of loud music. The call concerned loud vulgar music coming from the garage of a residence located at 1501 Avenue Q in Fort Pierce, across the street from Frances K. Sweet Elementary School. While attempting to make contact with the residents at the house, the garage door began to open and the two deputies were confronted with a black male (Gregory Hill) inside of the garage with a gun in his right hand. He was ordered to drop the weapon.

---

[1] Pursuant to this Court's Order [DE 8], the Defendants have filed contemporaneously herewith a separate Statement of Material Facts in support of their Motions for Summary Judgment.

1

However, he raised the gun in Deputy Lopez's direction and began to manually close the garage door. Deputy Newman, perceiving that his life and the life of his fellow officer was in imminent danger, fired four shots at Hill. As the garage door was in the process of being closed during this time, the bullets traveled through the garage door, striking and killing Hill.

2. Plaintiff Viola Bryant, who is the Personal Representative of the Estate of Gregory Vaughn Hill, Jr., brings the following claims in the Complaint:

Count I: Claim pursuant to 42 U.S.C. §1983 Municipal Liability;

Count II: Claim against Christopher Newman Pursuant to 42 U.S.C. §1983;

Count III: State Law Claim of Negligence Against Sheriff Ken Mascara;

Count IV: State Law Claim for Battery Resulting in Wrongful Death Against Christopher Newman; and

Count V: Claim for Negligence Resulting in Damage to Real Property Against Sheriff Ken Mascara.

3. At issue here for purposes of this Motion are Counts II and IV which are brought against the Defendant Newman in his individual capacity only.

4. Based upon the pleadings in the file, the depositions, record evidence, and the exhibits filed herewith, the undisputed facts establish that the Defendant Newman is entitled to summary judgment in his favor as a matter of law on Count II of the Complaint as he is entitled to qualified immunity as he at no time violated Gregory Hill's clearly established constitutional rights. Defendant Newman is entitled to summary judgment in his favor as a matter of law on Count IV as his actions in using deadly force on the Plaintiff's decedent were not taken in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Furthermore, the Defendant Newman did not wrongfully cause the death of the Plaintiff's decedent,

2

Gregory Hill.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Defendant Newman's Motion for Summary Judgment.

FURTHER, and in support of this Motion, the Defendant Newman would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

### ARGUMENT

The standard of review which must be applied by the Court is contained in Rule 56(a) of the Federal Rules of Civil Procedure which reads in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, in this case, the Plaintiffs. The plaintiff is then required to come forward with sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. See Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). See also Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (Plaintiff must produce specific facts showing that there is a genuine issue for trial). Furthermore, summary judgment is appropriate even if "some alleged factual dispute" between the parties remains, so long as there is "no genuine issue of material fact." Scott v. Harris, 550 U.S. at 380, 127 S.Ct. at 1776 (quotation marks and citation omitted).

## LAW CONCERNING EXCESSIVE FORCE/USE OF DEADLY FORCE

The United States Supreme Court has held that an excessive force claim against a law enforcement officer must be analyzed under the Fourth Amendment and its reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009). The reasonableness inquiry in a Fourth Amendment excessive force case is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation. Graham, 490 U.S. at 397. The "reasonableness" inquiry requires courts to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Reasonableness depends on all circumstances relevant to an officer's decision to use force, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. See Id; see also, Crenshaw, 556 F.3d at 1290. Furthermore, reasonableness must account for the fact that police officers are sometimes forced to make split-second judgments under circumstances that are tense and rapidly evolving. Graham, 490 U.S. at 397. What the officer could or should have done in hindsight is not the appropriate inquiry. Rather, "[t]he sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances. See Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009).

There is no bright-line standard regarding the use of force. Therefore, qualified immunity applies unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful. Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997), cert. denied, 119 S.Ct. 165 (1998); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, the reasonableness of a particular use of force must be judged from

the perspective of a reasonable officer on the scene, not by 20/20 hindsight.  Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), cert. denied, 123 S.Ct. 1482 (2003); Plumhoff v. Rickard, 134 S.Ct. 2012, 2020 (2014).

"The Supreme Court has said that if the suspect threatens the officer with a weapon or there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, then it is constitutionally permissible to use deadly force to prevent the escape of the suspect.  Because the Constitution permits the use of deadly force to prevent a violent suspect from escaping, the Constitution must also permit the use of deadly force against a suspect who poses not merely an escape risk (because he is not yet in police control), but also an imminent threat of danger to a police officer or others."  McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1246 (11th Cir. 2003), citing Tennessee v. Garner, 471 U.S. 1 (1985) (internal quotations omitted).

Furthermore, an officer need only have arguable probable cause to be entitled to qualified immunity. Under that standard, an officer will be entitled to qualified immunity if he had arguable probable cause to employ deadly force; in essence, we decide whether the officer reasonably could have believed that probable cause existed to use deadly force." See Willingham v. Loughnan, 321 F.3d 1299 (11th Cir. 2003); Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009).

## STATEMENT OF THE LAW REGARDING QUALIFIED IMMUNITY

In order for Plaintiff to recover against the Defendant Newman in his individual capacity, Plaintiff must demonstrate that the Defendant Newman violated Plaintiff's decedent's constitutional rights and therefore is not entitled to qualified immunity.  The qualified immunity defense protects governmental officials from suit in their individual capacities for acts based on the use of their discretion.  See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).  Qualified immunity affords broad

protection to "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990); Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989); White v. Pauly, ___ U.S. ___, 137 S.Ct. 548, 196 L.Ed2d 463 (2017).

The Supreme Court of the United States has indicated that:

> Such officials as police officers or prison wardens, to say nothing of higher level officials who enjoy only qualified immunity routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively . . . . In these circumstances, officials should not err always on the side of caution.

Davis v. Scherer, 468 U.S. 183, 196 (1986).

In Harlow, supra, the United States Supreme Court applied an objective test regarding government officials performing discretionary duties, and specifically noted:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

This objective test clearly gives trial courts greater flexibility in disposing of claims on summary judgment. See Harlow, supra, at 818.

Qualified immunity presents a question of law for the court regardless of which stage of the procedure, if a determination must be made. See Dartland v. Metropolitan Dade County, 866 F.2d 1321 (11th Cir. 1989). The burden of proof on the defense of qualified immunity is allocated as follows:

First, it is the obligation of the defendant who claims that his or her action is qualifiedly immune to demonstrate that his or her actions were taken within the scope of his or her discretionary authority. Here there is no dispute that the Defendant Newman was acting as a law enforcement

6

officer in any contact he had with Gregory Hill. (See Compl. pg. 3/¶10). Therefore the Defendant Newman was performing discretionary functions. When the initial burden of the defendant public official has been met, it is then incumbent upon the plaintiff to demonstrate that the defendant public official acted in bad faith, i.e. "violated clearly established constitutional law." See Brosseau v. Haugen, 543 U.S. 194 (2004). The United States Supreme Court has recently reiterated the fact that: "'Clearly established law' should not be defined at a high level of generality...the clearly established law must be particularized to the facts of the case." See White v. Pauly, 137 S.Ct. 548, 552 (internal citations omitted).

Furthermore, the resolution of the qualified immunity issue in the Eleventh Circuit is controlled by the state of the law as found in the opinions issued by the following courts: the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. See Vineyard v. Wilson, 311 F.3d 1340, 1351 n.22 (11th Cir. 2002). In addition, the qualified immunity analysis is dependent upon the state of the law **at the time** the officer allegedly violated the decedent's constitutional rights; in this case, January 14, 2014. Consequently, opinions of the courts decided **after** the date of the alleged constitutional violation do not clearly establish the law as to that particular constitutional issue for the purpose of denying qualified immunity. However, such opinions are helpful in determining whether a particular defendant is entitled to qualified immunity.

### **Count II: Violation of Section 42 U.S.C. 1983 Against Deputy Newman**

In the case at bar, as evidenced by the exhibits submitted by the Defendants in support of their motions for summary judgment, particularly the depositions of Defendant Newman and deputy Edward Lopez, the actions of the Defendant Newman were objectively reasonable in light of the facts known to him.

The record evidence in this case demonstrates that the Defendant Newman responded to

Gregory Hill's residence located at 1501 Avenue Q, Fort Pierce, St. Lucie County, Florida in response to a noise complaint for loud vulgar music emanating from the garage of the residence. (See Compl. pg. 3/¶11; Exhibit "A" - Newman depo. pg. 14/lines 17-19, pg. 19/line 9 - pg. 20/line 9). The complaint for loud vulgar music was received via a 911 call from a parent (Stefani Mills) who was picking up children at the elementary school across the street from the Hill residence. (See Exhibit "B"- Mills depo. pg. 10/lines 16-24). In response to the concerned parent's 911 call, Defendant deputy Newman and Deputy Edward Lopez, both of whom were dressed in standard issued SLSO uniforms and were each driving marked SLSO patrol cars (see Exhibit"A" - Newman depo. pg.19/lines 9- pg. 20/line 9; Exhibit "B" Mills depo. pg. 21/lines 15 - 22 , pg. 28/line 24 - pg. 29/line 6;  Exhibit "H" McGuire depo. - pg. 39/lines 15 -25) knocked on the front and garage doors of the residence in an attempt to speak with the person responsible for the loud vulgar music which was still playing. (See Compl. pg. 4/¶13; Exhibit "A" Newman depo. pg.25/lines 4 -20; Exhibit "C" Lopez depo. pg. 32/lines 13 - 23). Deputy Newman intended to merely ask the occupant to lower the music. (See Exhibit "A" Newman depo. pg. 40/lines 13 -15).

      While Deputy Newman was still standing near the front door, and Deputy Lopez was near the west side of the garage door, the garage door suddenly began to go up.  (See Exhibit "A" Newman depo. pg. 25/lines 20 -25, pg. 42/lines 5 -14; Exhibit "B" Mills depo. pg. 24/lines 7 -22, Exhibit "C" Lopez depo. pg. 32/lines 20 - 23).  At that time, both deputies Newman and Lopez saw a black male (later identified as Gregory Hill) opening the garage door with his left hand while holding a gun in his right hand.(See Exhibit "A" Newman depo. pg. 25/line 23 - pg. 26/line 6; Exhibit "C"-Lopez depo. pg. 37/lines 5-10). Both deputies identified themselves as law enforcement officers and ordered Hill to drop the gun. (See Exhibit "A" Newman depo. pg 83/line 20 - pg. 84/line 5, pg. 26/lines 13 -18; Exhibit "C" Lopez depo. pg. 34/line 25 - pg. 35/line 13, pg. 37/lines 2- 21).

8

Despite the deputies' orders, Hill raised the gun in the direction of Deputy Lopez who was standing directly in front of Mr. Hill. (See Exhibit "A" Newman depo. pg.46/lines 15 - 20; Exhibit "C" Lopez depo. pg. 37/lines 13 - 21, pg. 40/lines 11 - 16). After Hill failed to comply with numerous orders to drop the gun, and as he believed that his life and the life of deputy Lopez was in imminent danger, Deputy Newman shot at Hill four times as the garage door went down and closed. (See Exhibit "A" Newman. depo. pg.26/line 23 - pg. 28/line 1, pg. 56/lines 11 - 15, pg. 40/lines 19-25; pg. 84/lines 6-10).[2]

The factual circumstances faced by Deputy Newman were tense and rapidly evolving and in a split second decision he used deadly force on Gregory Hill. Given the circumstances as known to Deputy Newman, it is clear that probable cause existed for him to use deadly force upon Gregory Hill or at the very least, Deputy Newman reasonably could have believed that probable cause existed to use deadly force upon Gregory Hill. As a result, even if this Court determines that probable cause did not exist for the Defendant Newman to use deadly force upon the Plaintiff's decedent, the Defendant Newman is still entitled to qualified immunity, and therefore summary judgment, as he had arguable probable cause to believe that he was entitled to use deadly force. See Kesinger v. Herrington, 381 F.3d 1243 (11th Cir. 2004); McCormick v. City of Fort Lauderdale, 333 F.3d 1234 (11th Cir. 2003); Garczynski, supra.

### COUNT IV: STATE LAW CLAIM FOR BATTERY RESULTING IN WRONGFUL DEATH AGAINST CHRISTOPHER NEWMAN

In Count IV of the Complaint, the Plaintiff attempts to bring a battery claim pursuant to state law against the Defendant Newman in his individual capacity. The Plaintiff alleges that as a result of the Defendant Newman's alleged misconduct, Hill suffered fatal injuries. (See Compl. pg.

---

[2] Deputy Lopez also thought that he was going to be shot by Mr. Hill. (See Exhibit "C" Lopez depo. pg. 40/lines 11 - 21).

9

11/¶45). It is further alleged that Defendant Newman intentionally discharged his handgun at Hill which act was carried out in bad faith and with malicious intent. (Id at pg. 11/ ¶44).

It is undisputed in this case that the death of Plaintiff's decedent Gregory Hill was caused by the Defendant Newman when he was shot by Deputy Newman during an incident which occurred on January 14, 2014. Florida Statute § 776.012, which concerns use of force in defense of person, states:

> A person is justified in the use of force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against such other's imminent use of unlawful force. However, the person is justified in the use of deadly force only if he or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.

Here to the extent the Court finds that the Defendant Newman is entitled to summary judgment as to Count II, which is the Section 1983 excessive force claim (i.e., that the force used by the Defendant Newman upon Hill was reasonable under the circumstances), it is clear that Count IV of the Plaintiff's Complaint would likewise fail.

The Plaintiff's state law claim of Wrongful Death is governed by Florida's limited waiver of sovereign immunity as contained in Florida Statute §768.28. See Beard v. Hambrick, 396 So.2d 708 (Fla. 1981). Florida Statute 768.28(9)(a) reads in pertinent part as follows:

> The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officer shall be by action against the government entity, or the head of such entity in her or his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

As Count IV of the Complaint is brought against Deputy Newman in his individual capacity, the above referenced language as set forth in §768.28(9)(a) compels that this Count be dismissed as to the Defendant Newman. In the case at bar, it is undisputed that Deputy Newman was acting within the course and scope of his employment with the Sheriff at all times pertinent. (See Compl. pg. 3/¶ 10). Furthermore, there is no evidence in the record that the Defendant Newman acted in bad faith, or with malicious purpose or in a manner exhibiting wanton and willful disregard to human rights, safety or property. As a result, the Defendant Newman is not a proper party to this claim.[3]

The Motion should be granted.

---

[3] Furthermore, to the extent the Court determines as a matter of law that the Defendant Newman did not use excessive force, the Defendant Sheriff would be entitled to summary judgment on this claim as the use of force authorized by Florida Statute § 776.05 is also governed by the reasonableness standard applicable to the Fourth Amendment of the United States Constitution. See e.g. Brown v. City of Clewiston, 848 F.2d 1534 (11th Cir. 1988).

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **John M. Phillips, Esquire,** Law Office of John M. Phillips, LLC, 4230 Ortega Boulevard, Jacksonville, FL 32210; jphillips@floridajustice.com, dmalone@floridajustice.com, this **31st** day of March, 2017.

>PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
>Attorneys for Defendants
>2455 East Sunrise Boulevard, Suite 1216
>Fort Lauderdale, Florida 33304
>Telephone (954) 462-3200
>Telecopier (954) 462-3861
>Email: summer@purdylaw.com
>melissa@purdylaw.com
>
>BY   *s/ Summer M. Barranco*
>SUMMER M. BARRANCO
>Fla. Bar No. 984663