UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

VIOLA BRYANT, as Personal
Representative of the Estate of
GREGORY VAUGHN HILL, JR.,

Case No. 2:16cv14072-ROSENBERG/LYNCH

Plaintiff,

vs.

SHERIFF KEN MASCARA in his official
Capacity as Sheriff of St. Lucie County,
and CHRISTOPHER NEWMAN,
an individual,

Defendants.
_____/

**DEFENDANTS' SHERIFF AND NEWMAN'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT**

The Defendants, SHERIFF KEN MASCARA, in his official capacity as Sheriff of St. Lucie County, and CHRISTOPHER NEWMAN, individually, by and through undersigned counsel, pursuant to Local Rule 56.1(a) and this Court's Order Setting Status Conference, Calendar Call, and Trial Date and Order of Reference to Magistrate [DE 8] files this their Statement of Material Facts in support of their Motions for Summary Judgment as follows:

**STATEMENT OF MATERIAL FACTS**

1.  Defendant Sheriff Mascara is named in this proceeding in his official capacity only. (See Compl. ¶8).

2.  Defendant Christopher Newman is named in this proceeding in his individual capacity only. (See Compl. ¶9).

3.  At all times relevant to this matter, the Defendant Newman was acting within the course and scope of his employment with the Sheriff of St. Lucie County and was acting under color

1

of state law. (See Compl.¶s 9-10).

4. At the time of the subject incident, the Defendant Christopher Newman was a law enforcement officer with the St. Lucie County Sheriff's Office. (See Compl. ¶9).

5. Deputy Newman began his employment with the St. Lucie County Sheriff's Office in October 1, 2013. (See Exhibit "A"- Newman depo. pg. 5/lines 22-23). He had previously worked as a law enforcement officer with the Fort Pierce Police Department from 1999 to 2009 and then from 2009 to 2013 he worked for the Florida Division of Alcoholic Beverages and Tobacco. (See Exhibit "A" - Newman depo. pg. 5/line 25- pg. 6/line 4).

6. On January 14, 2014, at approximately 3:00 p.m., Defendant deputy Christopher Newman and Deputy Edward Lopez arrived at Gregory Hill's residence located at 1501 Avenue Q, Fort Pierce, St. Lucie County, Florida in response to a noise complaint for loud vulgar music emanating from the garage of the residence. (See Compl. pg. 3/¶11; Exhibit "A" - Newman depo. pg. 14/lines 17-19, pg. 19/line 9 - pg. 20/line 9).

7. The complaint for loud vulgar music was received via a 911 call from a parent (Stefani Mills) who was picking up children at the elementary school across the street from the Hill residence. (See Exhibit "B"- Mills depo. pg. 10/lines 16-24).

8. Ms. Mills called because of really loud music with a lot of profanity coming from large speakers inside of an open garage. The house was very close to the elementary school. (See Exhibit "B" - Mills depo. pg. 11/line 15 - pg. 12/line 8, pg. 14/lines 11-20, pg. 15/lines 9-19, pg.17/lines 7-15).

9. In response to the concerned parent's 911 call, Defendant deputy Newman and Deputy Edward Lopez, both of whom were dressed in standard issued SLSO uniforms and were each driving marked SLSO patrol cars, went to the home located at 1501 Avenue Q in Fort Pierce. (See

Exhibit"A" - Newman depo. pg.19/lines 9- pg. 20/line 9; Exhibit "B" Mills depo. pg. 21/lines 15 - 22 , pg. 28/line 24 - pg. 29/line 6;  Exhibit "H" McGuire depo. - pg. 39/lines 15 -25.

    10.    Upon arrival, the Defendant Newman knocked on the front and garage doors of the residence in an attempt to speak with the person responsible for the loud vulgar music which was still playing. (See Compl. pg. 4/¶13; Exhibit "A" Newman depo. pg.25/lines 4 -20; Exhibit "C" Lopez depo. pg. 32/lines 13 - 23).

    11.    Deputy Lopez also knocked on the garage door. (See Exhibit "C" Lopez depo.  pg. 34/lines 3-9).

    12.    Deputy Newman intended to merely ask the occupant to lower the music. (See Exhibit "A" Newman depo. pg. 40/lines 13 -15).

    13.    While Deputy Newman was still standing near the front door, and Deputy Lopez was near the west side of the garage door, the garage door suddenly began to go up.  (See Exhibit "A" Newman depo. pg. 25/lines 20 -25, pg. 42/lines 5 -14; Exhibit "B" Mills depo. pg. 24/lines 7 -22, Exhibit "C" Lopez depo. pg. 32/lines 20 - 23).

    14.    At that time, both deputies Newman and Lopez saw a black male (later identified as Gregory Hill) opening the garage door with his left hand while holding a gun in his right hand.(See Exhibit "A" Newman depo. pg. 25/line 23 - pg. 26/line 6; Exhibit "C"-Lopez depo. pg. 37/lines 5- 10).

    15.    Once deputy Newman saw Hill with a gun in his hand, Deputy Newman drew his firearm. (See Exhibit "A" Newman depo. pg. 81/lines 13 - 16).

    16.    Deputy Newman identified himself as a law enforcement officer and yelled: "Gun" "Drop the gun!" (See Exhibit "A" Newman depo. pg 83/line 20 - pg. 84/line 5).

    17.     Deputy Newman yelled "gun" "drop the gun" one more time as loud as he could.

Deputy Newman saw Hill kind of look his way and then the garage door started coming down as Hill was raising the gun. (See Exhibit "A" Newman depo. pg. 26/lines 13 -18).

18. Deputy Lopez identified himself as a law enforcement officer and yelled:"Sheriff's office, Sheriff's office" when the garage door started to come up. (See Exhibit "C" Lopez depo. pg. 34/line 25 - pg. 35/line 13).

19. Deputy Lopez also yelled : "gun, gun, gun, drop the gun, drop the gun, drop the gun!" (See Exhibit "C" Lopez depo. pg. 37/lines 2- 21).

20. Deputy Lopez heard Deputy Newman say "hey"and saw Hill look toward Deputy Newman and start to drop the garage door. (See Exhibit "C" Lopez depo. pg. 37/lines 23 - 25).

21. Despite the deputies' orders, Hill raised the gun in the direction of Deputy Lopez who was standing directly in front of Mr. Hill. (See Exhibit "A" Newman depo. pg.46/lines 15 - 20; Exhibit "C" Lopez depo. pg. 37/lines 13 - 21, pg. 40/lines 11 - 16).

22. After Hill failed to comply with numerous orders to drop the gun, and as he believed that his life and the life of deputy Lopez was in imminent danger, Deputy Newman shot at Hill four times as the garage door went down and closed. (See Exhibit "A" Newman. depo. pg.26/line 23 - pg. 28/line 1, pg. 56/lines 11 - 15, pg. 40/lines 19-25; pg. 84/lines 6-10).

23. Deputy Lopez also thought that he was going to be shot by Mr. Hill. (See Exhibit "C" Lopez depo. pg. 40/lines 11 - 21).

24. As soon as Hill started to raise his gun in the direction of Deputy Lopez, Deputy Lopez started to draw his gun and retreat. (See Exhibit "C" Lopez depo pg. 38/line 23 - pg. 39/line 3).

25. Deputy Lopez recalled that he and deputy Newman ran for cover behind Deputy Lopez's marked patrol car which was parked in front of the residence and called out on the radio that

4

shots had been fired. (See Exhibit "C" Lopez depo. - pg. 44/lines 12 - 17).

26. Deputy Newman recalls going around and covering the back of the house (See Exhibit "A" Newman depo. pg. 37/line 23 - pg. 38/line 10).

27. Neither deputy Newman nor deputy Lopez knew whether or not Gregory Hill had been struck by any of Deputy Newman's bullets. (See Exhibit "A" Newman depo. pg.37/lines 15 - 16, pg. 38/lines 1 - 2; Exhibit "C" Lopez depo. pg. 43/lines 21 - 24, pg. 44/lines 2 - 10).

28. Thereafter, numerous attempts were made by Sheriff's office personnel who arrived after the shooting to contact Mr. Hill. These attempts were unsuccessful. (See Exhibit "D" SWAT memo pg. 2).

29. Law enforcement on scene was advised by a family member that Mr. Hill was alive and unharmed in the house but was not willing to voluntarily come out. (See Exhibit "D" SWAT memo - pg.2).

30. There was also a concern that a mentally handicapped child may have been in the home with Mr. Hill. This likewise turned out not to be the case. (See Exhibit "D" SWAT memo- pgs. 1, 2; See also Exhibit "A" Newman depo. pg. 52/lines 4 -17).

31. After it was learned that there was likely no one else in the house other than Mr. Hill, the SWAT team introduced chemical agents into the home in an attempt to get Hill to exit the residence. This attempt was unsuccessful. (See Exhibit "D" SWAT memo pg.2).

32. Thereafter, the SLSO's Bomb Team's robot with a camera was able to be utilized to view inside the garage. (See Exhibit "D" SWAT memo pg. 2).

33. At that time it was discovered that Mr. Hill was lying in a pool of blood inside of his garage. A dark object was seen in his back pocket on the robot's remote camera. (See Exhibit "E" - photo of Hill in garage).

34. The SWAT team then entered the residence and found Mr. Hill, deceased, in the garage. (See Exhibit "D" SWAT memo pg. 2).

35. A hand gun (Kel-Tec) was located in Hill's right back pocket. (See Exhibit "F" - photo of gun found in Hill's pocket; Exhibit "A" Newman depo. pg. 78/lines 12 - 13).

36. On the police radio, in the moments following the shooting, Deputy Newman identified the gun that had been in Hill's hand as possibly being a Kel-Tec model hand gun. (See Exhibit "A" -pg. 76/lines 10 - 16; Exhibit "G" transcript of radio communications - pg. 2 (time of 15:28:14)).

37. Deputy Lopez indicated on the radio that he thought the gun in Mr. Hill's hand looked more like a Glock., model 30, 22 or 27. (See Exhibit "A"- pg. 77/line 24 - pg. 78/line 11; Exhibit "G" transcript of radio communications - pg. 2 (time of 15:29:06)).

38. Several civilian witnesses nearby saw portions of the subject shooting. They noted that it was dark in the garage and they had difficulty seeing into the garage. (See Exhibit "B" Mills depo. pg. 28/lines 3 -17, pg. 28/line 23 - pg. 29/line 2; Exhibit "H" Mcguire depo. pg. 16/lines 6 - 13, pg.41/lines 6 -12; Exhibit "I" -depo of Enriquez Ruiz - pg.20/line 20 - pg. 21/line 5).

39. As to Count I of the Complaint, the Defendant Sheriff Mascara, had no custom, policy, practice or procedure at the time of the subject incident which would have caused Plaintiff's decedent's constitutional rights to be violated as alleged. (See Exhibit "J" - Aff. of Lt. Sheelar and Comp. Exh. "1" attached thereto).

40. The St. Lucie County Sheriff's Office did not permit or tolerate the use of excessive force. (See id).

41. Additionally, when it is established that a St. Lucie County Sheriff's deputy has violated Sheriff's Office policy or procedure, that individual is subjected to appropriate disciplinary

sanctions, to include termination. (See id including St. Lucie County Sheriff's Office General Order 15.02). Thus the Sheriff does not have a practice of tolerating known uses of excessive force.

42. The Complaint contains conclusory allegations regarding the alleged existence of unconstitutional policies, practices or customs of the St. Lucie County Sheriff's Office. (See Complaint ¶s 25 - 31).

43. The record evidence reflects that deputies with the St. Lucie County Sheriff's Office, to include Defendant Christopher Newman, were trained in accordance with St. Lucie County Sheriff's Office policy and the standards set forth by the Florida Department of Law Enforcement and Criminal Justice Standards and Training Commission guidelines. (See Exhibit "J" - Aff. of Lt. Sheelar & policies attached thereto).

44. The Defendant deputy Newman undergoes annual in-service training. (See Exhibit "J" - Aff. of Lt. Sheelar/¶4).

45. Deputy sheriffs employed by the St. Lucie County Sheriff's Office, whom are assigned to the law enforcement division, including Deputy Christopher Newman, are sworn certified law enforcement officers in accordance with Florida Statute Chapter 943 and as established by the Criminal Justice Standards and Training Commission/Florida Department of Law Enforcement. [CJSTC/FDLE]. (See Exhibit "J"- Aff. of Lt. Sheelar/¶4).

46. Christopher Newman met all of the requirements, in accordance with Florida Statute Chapter 943 and CJSTC/FDLE, to be a law enforcement officer and to enforce the laws of the State of Florida on January 14, 2014, and he continues to meet those requirements today. (See Exhibit "J"- Aff. of Lt. Sheelar/¶4).

47. Consequently, Christopher Newman was a certified law enforcement officer on January 14, 2014, the day he had contact with Gregory Hill. This means that Christopher Newman

completed a police academy and met the requirements established by the CJSTC/FDLE to be a law enforcement officer in the State of Florida, including instruction on the need for probable cause to make an arrest, reasonable suspicion to stop and investigate suspected illegal conduct and that any use of force must be objectively reasonable and necessary under the totality of the circumstances. (See Exhibit "J"- Aff. of Lt. Sheelar/¶4).

48. The St. Lucie County Sheriff's Office provides in-service training to sworn certified law enforcement officers, each and every year, in an amount that exceeds the requirements of Florida Statute 943.135(1). The topics covered vary, depending on the needs at the time, and are in full compliance with the requirements of the CJSTC/FDLE, including topics related to the reasonable use of force. (See Exhibit "J"- Aff. of Lt. Sheelar/¶4).

49. Deputy sheriffs employed by the St. Lucie County Sheriff's Office, including Christopher Newman, are trained that they are only authorized to use that amount of force which is objectively reasonable and necessary under the totality of the circumstances and are otherwise not authorized to use excessive or unnecessary force. The focus in training is on the objectively reasonable and necessary use of force in response to resistance as contemplated by Graham v. Connor, 490 U.S. 386 (1989). In addition, instruction and situational based training is provided regarding the use of deadly force only under circumstances where it is objectively reasonable to believe that deadly force is necessary to prevent the imminent use of deadly force or to prevent imminent great bodily harm. (See Exhibit "J"- Aff. of Lt. Sheelar/¶5).

50. The use of force related policies of the St. Lucie County Sheriff's Office which were in effect at the time of the subject incident on January 14, 2014, and which governed the use of force upon Mr. Hill, and which are dependent upon the totality of the facts and circumstances known to the deputy using force, do not authorize the use of excessive force. (See Exhibit "J"- Aff. of Lt.

Sheelar/¶6).

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **John M. Phillips, Esquire,** Law Office of John M. Phillips, LLC, 4230 Ortega Boulevard, Jacksonville, FL 32210; jphillips@floridajustice.com, dmalone@floridajustice.com, this **31st** day of March, 2017.

                PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
                Attorneys for Defendants
                2455 East Sunrise Boulevard, Suite 1216
                Fort Lauderdale, Florida 33304
                Telephone (954) 462-3200
                Telecopier (954) 462-3861
                Email: summer@purdylaw.com
                            melissa@purdylaw.com

BY    ***s/ Summer M. Barranco***
          SUMMER M. BARRANCO
          Fla. Bar No. 984663