# EXHIBIT D

# Memorandum

**Date:** 01/15/2014

**To:** Major David Thompson (Director of Law Enforcement)

**From:** Sgt. Scott Wells (SWAT)

**Re:** <u>After Action Critique-1501 Avenue Q –Barricaded/Armed Suspect</u>

**Initial Call out:** On 1/14/2014 at 3:41 pm, I was notified by Major Thompson and told to activate the SWAT team to respond to the area of North 16th Street and Avenue Q. I was told that the incident involved a barricaded suspect with shots fired.

**Response:** Team leaders were notified and initiated a call out to other members. All members were directed to respond to the incident area. Several SWAT members (Sgt. Pettit, D/S Trevisol, and Det. Register) were already at the scene in response to the initial incident.

**Operational Plan:** Upon my arrival at the scene, I made contact with Major Thompson who was the incident commander. He pointed out the residence which was identified as 1501 Avenue Q. Major Thompson told me that deputies had responded to a complaint of loud music and were confronted with a male armed with a handgun. The male suspect (believed to be Gregory Hill) pointed the gun at the deputies and closed the garage door as deputies fired rounds at him. It was unknown if the suspect was hit. Now it was believed the suspect was inside the residence and there was possibly an 8 year old mentally handicapped child with him. At this point, it was my understanding no contact had been made with the suspect after the garage door was down. There were numerous patrol deputies and other law enforcement on scene, which had a perimeter established around the suspect's home. SWAT members and vehicle assets were arriving at the scene and preparing for deployment.

**Deployment:** Initial priorities were as follows:

1. Establish an immediate action team.

2. Deploy sniper teams and establish inner perimeter with SWAT personnel.

3. Relieve non-SWAT personnel from the inner perimeter using the MRAP armored vehicle for cover.

Sgt. Pettit formed an immediate action team with Johnson, Gajewski, Courtemanche, and Harbin and responded to the west side of the residence.

Sgt. Hester was tasked with supervising a team in the MRAP which consisted of Archie (driver), Blatchford, Pearson, Stubley, Morash, Wax and Hueck.

Norman, Sotomayor, Trevisol, Masters, and Register were deployed as snipers to provide a precision rifle contingency and inner perimeter containment.

Page 2

**5:01 pm**-Register (sniper) advised curtain moved in window on south side of residence.

**5:17 pm**- All non-SWAT personnel were relieved and SWAT controlled the inner perimeter. The L-RAD PA system was deployed by Sgt. Hester's team to establish communications with the suspect.

**5:22 pm**-Sgt. Colangelo (Crisis Negotiations Team), using the L-RAD, gave several commands for the suspect to exit the residence. There was no response from inside.

**5:39 pm**- I was told by Sgt. Goodner (Crisis Negotiations Team) that the child originally thought to be in the residence was accounted for and there was no other information which indicated anyone else was in the residence but the suspect-Gregory Hill. Major Thompson (Incident Commander) authorized me to initiate a plan for introducing chemical agents into the residence in an attempt to persuade the suspect to come out. I assigned Sgt. Hester and his team to initiate the introduction of chemical agents. Our plan was to introduce agents through windows in the rear of the residence to force the suspect to come out the front door where he could be taken into custody.

**6:01 pm**-Sgt. Hester and his team removed (2) patrol cars from the street directly in front of the residence to provide unobstructed access to the house.

**6:16 pm**- I was advised by the command post that a male identifying himself as the suspect's uncle allegedly talked to the suspect on the phone 30 minutes earlier and advised the suspect was inside the house, unharmed, and was scared to come out. It was my understanding that the Crisis Negotiations Team made numerous attempts to contact the suspect with no success. I was also informed by Sgt. Defonzo (on scene Criminal Investigations Supervisor) that a search warrant was being completed for the residence and based off the initial encounter there was probable cause for the suspect's arrest.

**6:28 pm**-40 mm OC ferret rounds were introduced into the structure.

**6:37 pm**-water supply to the house was shut off by Sgt. Pettit.

**6:45 pm**-40 mm CS ferret rounds were introduced into the structure as an escalation from OC. No response from inside the residence.

**7:03 pm**- Lt. Hostetler informed me that the Bomb Team's robot was available to introduce a camera inside the residence.

**7:10 pm**-The robot was deployed to the garage area of the house and upon insertion of the camera into the garage door, a subject was observed lying on the floor.

**7:16 pm**- Sgt. Hester and Sgt. Pettit with their respective teams were directed to enter and clear the residence. Upon doing so, they located only the suspect, Gregory Hill, who was pronounced deceased. The residence was handled as a crime scene and turned over to Criminal Investigations.

SWAT members were recalled to the command area and were held on scene as additional scene security until released by Captain Scavuzzo (Patrol Operations Commander).

Page 3

**Debrief:** A debrief meeting was held which included all SWAT members involved in the incident except for Norman, Blatchford, and Wax who were held at the scene to assist with CID investigation.

**Findings/Suggested Solutions:**

**Initial callout-**(1) team member, Favale, was not notified and therefore did not respond. All team leaders will maintain a current roster and follow up to ensure all team members assigned to them are notified. If possible, team commander will also account for responding personnel using a current roster.

**Equipment needed-**It was noted that the residence had "burglary bars" on the front door. It is recommended that a tow chain with hook be stored on the MRAP in the event these barriers had to be quickly removed during a breach.

**Additional Training-**Due to a slight delay in the deployment of the L-RAD from technical difficulties, it is recommended that team members receive ongoing, periodic training on this and other specialty equipment used by SWAT.

**Chemical Agents-** Chemical agent munitions were effectively delivered inside as verified by entry team.

**T.O.C. Radio Communications-**During a crisis event, inner perimeter SWAT units operate on the SWAT Channel. Outer perimeter units operate on a different designated channel. A split radio system inside the SWAT truck would allow a separate person to monitor and relay information pertinent to non-SWAT personnel on the outer perimeter of a crisis situation. During a callout, there is often radio traffic on the SWAT channel and TAC channel at the same time which would require 2 radios and 2 monitors. The T.O.C. operator (Rhodes) should monitor SWAT radio traffic and function as a scribe as the events occur. The SWAT Commander or designee should have direct radio communication with the deployed team on the SWAT channel. It is recommended that a third person be assigned to monitor and relay information on the designated channel used by outer perimeter units. This role could be filled by any on scene law enforcement not already tasked with a specific duty.