# COMPOSITE EXHIBIT 2

## ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:**<br>G.O. 15.01 (08/01/01) | **Effective:** December 1, 2005 | **General Order: 15.01** |
|---|---|---|---|
| | | **Title: Unlawful Conduct** | |
| | | **Accreditation Standards:**<br>**CFA** &  27.03<br>**CALEA** &  52.1.8<br>**FCAC** & | **Attachments:**<br>**FCN:** |

**CONTENTS:** This order consists of the following numbered sections:

    I.     UNLAWFUL CONDUCT OFFENSES
    II.    SHERIFF'S OFFICE MEMBERS AS VICTIMS
    III.   GLOSSARY

**PURPOSE:**  The purpose of this General Order is to establish guidelines relating to unlawful conduct by members of the St. Lucie County Sheriff's Office and other law enforcement agencies.  This is not intended to supercede any existing Sheriff's Office regulations but is provided as additional guidelines.

**SCOPE:**  This order applies to all members and to 911 communications personnel who supply information to responding deputies and victims.

**DISCUSSION:**  The Sheriff's Office has zero tolerance for members who engage in any form of unlawful conduct and thoroughly investigates all such reports.  All members should become familiar with Sheriff's Office rules, procedures, policies and directives governing unlawful conduct involving members of this or any other law enforcement agency.  The Sheriff's Office is particularly sensitive to unlawful conduct involving domestic and sexual violence, child abuse, and related victim/witness calls for service.

**PROCEDURE:**

**I.**    **UNLAWFUL CONDUCT OFFENSES:**

    **A.**  Disciplinary measures resulting from unlawful conduct may be imposed independently of, or concurrent with, civil and criminal prosecutions or internal disciplinary measures may be waived pending civil or criminal disposition.  The administration of internal disciplinary measures from unlawful conduct must necessarily depend upon individual case circumstances, and will be determined by the Sheriff. (from Part VI - Code of Conduct)

    **B.**  Any member who witnesses or otherwise has first-hand or well-founded knowledge of an unlawful conduct offense involving a member of this or any other law enforcement agency will report the incident to a Sheriff's Office supervisor.

    **C.**  If communications personnel receive a call for assistance at a scene where a member of this or any other law enforcement agency is alleged to be an offender, a Sheriff's Office supervisor will be notified.

    **D.**  When the suspect is a sworn/unsworn member of this or any other law enforcement agency, the investigating deputy will notify a supervisor who will respond to the scene to ensure that the initial investigation is handled properly, with emphasis being placed on the victim's safety.  The supervisor will also ensure that the investigation is carried out as any other, regardless of the status or employment of the suspect.

*December 1, 2005*

**E.** If an arrest is made on a member of this agency, the provisions of applicable laws and departmental policies and procedures will be adhered to.

**F.** When a member is arrested by another agency, a member of Internal Affairs or Sheriff's designee will contact the arresting agency. If possible, the designated member will travel to the arresting agency's location and gather all pertinent information relating to the arrest including the arrest report, booking report, and all other relevant documentation for review. He/She will immediately notify the Sheriff or Chief Deputy.

**G.** Members who are arrested will be immediately relieved from duty WITH PAY pending an initial review of all relevant documentation relating to the arrest. Once it as been determined by the St. Lucie County Sheriff's Office that probable cause existed to make the arrest, the member may be terminated or placed on leave without pay awaiting the outcome of the case.

**H.** If the terminated member is cleared of all charges, he/she may reapply with the Sheriff's Office. The former member will fall under the same guidelines as any other new applicant applying for employment.

**I.** Once a member placed on paid/unpaid leave is cleared of all charges and policy or rule violations, he/she may be re-instated with all back pay and accruals.

**J.** When a criminal investigation is required, it should be completed before the suspect is interviewed regarding an internal affairs investigation.

**K.** An internal affairs investigation will be conducted to determine whether the member violated department policies.

**L.** The criminal and/or internal affairs investigation(s) will be carried out as any other(s), regardless of the status or employment of the suspect.

**M.** At any stage of an internal investigation, if findings commensurate with the seriousness of the action/conduct involved in the case, the concerned member may be relieved of further active duty at his/her place of assignment. Authority for such actions rests with the Sheriff. However, under certain exigent or unique circumstances, the Chief Deputy, department director, division commander, or immediate supervisor may relieve a member from duty. In such cases, the Chief Deputy will be notified immediately.

**N.** The actual act of relieving the member is done by contacting and notifying the member in person. All issued items including firearms, I.D. cards, badges, entry and credit cards, vehicles, gasoline and building keys and other Sheriff's Office owned equipment will be taken and a signed receipt obtained. This notification will be followed by a written notice generated by the member's department director.

**O.** When a member of another law enforcement agency has been arrested or served with a domestic violence injunction the employing agency will be notified before the end of the shift. The notification should include the time of the incident, the specific crime, and the agency case number.

**P.** When a member of another law enforcement agency is a suspect in an active investigation by the St. Lucie County Sheriff's Office, the decision as to when to notify the suspect's employing agency will be in the best interests of the case and/or victim.

**Q.** If a member of the St. Lucie County Sheriff's Office is arrested or served with a Domestic Violence Injunction, he/she will notify his/her supervisor before the beginning of his/her next duty shift. If the supervisor can not be contacted, notification will be made to the next ascending supervisor in the chain of command. The member is further required to keep his/her supervisor informed of the status of the case.

**R.** When a sworn member is served with any protective injunction and is a first responder, the member may be temporarily re-assigned to duties not requiring response to Domestic Violence-related calls for service.

**S.** In cases where a "temporary" injunction is extended to a "permanent" injunction, the member will undergo psychological evaluation to determine his/her fitness for duty and/or be referred to a batterer's intervention program, if warranted.

**T.** The possession of weapons by a member while under an order of injunction or following his/her conviction for domestic violence will be consistent with current state and federal laws as well as any applicable department policies.

**U.** The status of an affected member should be taken into consideration prior to approving any on or off duty assignments.

## II.   SHERIFF'S OFFICE MEMBERS AS VICTIMS:

**A.** When a member of the St. Lucie County Sheriff's Office is a victim of a serious or violent crime, he/she will notify a supervisor prior to the beginning of his/her next work shift and further keep his/her supervisor advised of the status of the case.

**B.** In addition to the services available to any victim, a member of the St. Lucie County Sheriff's Office will be entitled to the services of the Sheriff's Office Chaplain and Psychologist to render personal support to the affected member and family.

**C.** The State Attorney's Office, Victim/Witness Assistance Program may provide assistance during the criminal proceedings and may maintain long-term contact for additional assistance. (see G.O. 30.01 - Victim/Witness Assistance Program).

## III.   GLOSSARY:

MEMBER -  Any employee or appointee of the St. Lucie County Sheriff's Office whether sworn or unsworn.

UNLAWFUL CONDUCT -  Any act contrary to federal, state, and local laws and ordinances, as well as any act contrary to existing Sheriff's Office rules, procedures, policies and directives.

**G.O. 15.01**

**INDEXING:**

DOMESTIC VIOLENCE JUNCTION NOTICE
LEAVE WITH PAY
LEAVE WITHOUT PAY
UNLAWFUL CONDUCT

DRAFTED BY:  jdr/lkt September 14, 2005

**Sheriff Ken J. Mascara**

*December 1, 2005*

## ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:**<br>G.O. 15.02 (11/15/09) | **Effective:** October 15, 2011 | **General Order: 15.02** |
|---|---|---|---|
| | | **Title: Misconduct Investigations/Disciplinary Action** | |
| | | **Accreditation Standards:**<br>**CFA:** Ch. 11, Ch. 27<br>**FCAC:** Ch. 4 | **Attachments:**<br>**FCN:** 253, 254, 257 |

**CONTENTS:** This order consists of the following numbered sections:

I.      COMPLAINT RECEIPT AND DOCUMENTATION
II.     INFORMAL PRELIMINARY INVESTIGATIONS AND CONCLUSIONS
III.    INTERNAL AFFAIRS INVESTIGATIONS
IV.     SUPERVISOR RESPONSIBILITY AND AUTHORITY
V.      AUTHORITY TO RELIEVE FROM DUTY
VI.     FORMAL COMPLAINT INVESTIGATION
VII.    FORMAL INVESTIGATIVE CONCLUSIONS
VIII.   DISCIPLINE
IX.     PROCESS OF APPEALS
X.      GLOSSARY

**PURPOSE:**  The purpose of this General Order is to establish guidelines for the receipt, investigation, and disposition of complaints of member misconduct.

**SCOPE:**  This order applies to all members.

**DISCUSSION:**   Proper conduct promotes efficiency, coordination of effort, and public support. Misconduct must be met with fair and consistent administrative action.

**POLICY:** It is the policy of the St. Lucie County Sheriff's Office to investigate all complaints of member misconduct.

**PROCEDURE:**

## I.      COMPLAINT RECEIPT AND DOCUMENTATION:

**A.** All members of the Sheriff's Office will forward citizen complaints of misconduct to the accused member's supervisor, the on duty supervisor, or the Internal Affairs Unit supervisor.

**B.** Complaints are sometimes based on misunderstandings of law or procedure rather than on member misconduct. When this occurs, the supervisor will attempt to clarify the applicable law or procedure and make it understandable to the citizen. Written documentation is not necessary if the complaint is based on a misunderstanding.

**C.** Citizens alleging member misconduct will be encouraged to complete and sign a Citizen Complaint Affidavit (FCN 254)

**D.** Supervisors investigating a valid citizen complaint will document the information on a Citizen's Complaint Control form (FCN 253) and investigate the complaint as outlined in Section II.

E.  The Internal Affairs Unit will review and maintain a record of all valid complaints received by the agency.

## II.  INFORMAL PRELIMINARY INVESTIGATIONS AND CONCLUSIONS:

A.  Supervisors who receive complaints about a member may speak to the member about the complaint and must give the member the complainant's name and basis for the complaint, unless the complainant is in custody and under the supervision of, or may have contact with, the accused member. Supervisors should not interview the member in detail, but should conduct an initial inquiry that may include a memorandum from the member concerning the incident.

B.  Complaints of misconduct that are minor violations are generally investigated at the division level. The supervisor of the Office entity to which the accused member is assigned will normally have the responsibility to investigate the following:

1.  Harassment by a deputy;
2.  Discourtesy and/or rudeness;
3.  Noncriminal conduct;
4.  Tardiness and/or insubordination;
5.  Minor complaint of physical force; and
6.  Any other lesser violation not requiring an Internal Affairs investigation.

C.  If the initial inquiry reveals that the complaint is unfounded, unsubstantiated, exonerated, or exonerated due to lack of policy, the supervisor will document their recommendation in memorandum form with all documentation attached and forward the finding to the Internal Affairs Unit, via the chain of command, as appropriate.

D.  A performance deficiency may be based on a citizen's complaint or member observation. A Corrective Action Form (FCN 257) should be used when discipline is the appropriate manner for resolution of a complaint involving a minor deficiency in a member's job performance. The original completed Corrective Action Form is to be forwarded to the Internal Affairs Unit.

E.  A supervisor inquiry is an informal preliminary investigation into allegations of minor policy violation(s) which may result in informal discipline. During an informal review if violations which could result in formal discipline have been observed, a formal investigation may be required. Supervisors will proceed following the investigative steps outlined in Section VI. (Formal discipline may be administered to an observed policy violation where no interview is required)

## III.  INTERNAL AFFAIRS INVESTIGATIONS:   Complaints, which require investigation by the Internal Affairs Unit, include but are not limited to the following:

A.  Acceptance of a bribe, illegal compensation, or other allegation of corruption.
B.  Criminal assault, brutality, or the utilization of force that involved injuries.
C.  A breach of civil rights.
D.  Commission of a crime.
E.  Immoral conduct.
F.  Violation of narcotics law.
G.  Use of authority for personal gain.
H.  Release of confidential information without authority.

**I.** Malfeasance, misfeasance, or nonfeasance of office.

**J.** A matter which requires confidential investigation.

**K.** Investigations that are too time consuming to be practical for the accused individual's line supervisor to undertake.

**L.** When members from more than one division are involved.

**M.** When directed by the Sheriff or Chief Deputy.

**IV.   SUPERVISOR RESPONSIBILITY AND AUTHORITY:**   Supervisors will be responsible for adherence to rules, regulations, orders, and policies of the Office of the Sheriff and its components. They are responsible for the discipline of subordinates and for providing assistance and guidelines to them. Supervisors will identify training needs not being met by the agency. The levels of responsibility and authority are as follows:

**A.** Supervisors, civilian or sworn, from the rank of sergeant through major may assign remedial training; give counseling; give reprimands; administer vehicle use suspension, probation, suspension from duty; and recommend demotion or termination.

**B.** The Sheriff and Chief Deputy may assign remedial training; give counseling; give reprimands; administer vehicle use suspension, probation, suspension from duty, demotion, or termination.

**V.   AUTHORITY TO RELIEVE FROM DUTY:**

**A.** The Sheriff may relieve any member of duty and place them on Administrative Leave, with or without pay. As soon as practical, the Sheriff, or his designee, will generate a memorandum as written notice to the member with copies to the appropriate department director, division commander, immediate supervisor, and the Human Resources Unit.

**B.** An immediate supervisor may relieve a member of official duties and place the member on administrative leave with pay under the following circumstances:

**1.** Following insubordinate or other improper conduct, which adversely affects the operation of the Sheriff's Office; or

**2.** When an allegation of misconduct is raised and it is in the best interest of the agency and/or public; or

**3.** When a member's ability to perform the functions of his or her position are in question.

**C.** A supervisor, who relieves a member of duty, will notify his or her chain of command as soon as possible.

**D.** Members relieved of official duties may be:

**1.** Placed on administrative assignment;

**2.** Placed on administrative leave with pay; or

**3.** Placed on administrative leave without pay.

**E.** Members placed on administrative assignment will surrender any assigned vehicle, but will receive full pay and benefits and not lose any vested rights.

**F.** Members placed on administrative leave with pay:

   **1.** May be required to surrender their firearm, agency credentials, keys, a vehicle and/or other agency property.

   **2.** Are considered "on duty" and will be available by telephone from 0800 - 1700 hours Monday through Friday for all calls and/or interviews by the agency.

   **3.** Are not permitted to go on vacation unless it is approved or the vacation was pre-planned and then only after re-approval. The department director will make this decision based on the best interests of the agency and the member.

**G.** Members placed on administrative leave without pay will surrender their badge, issued weapon, identification card, and Sheriff's Office vehicle.

**H.** Members will not wear the official uniform, or other articles of clothing that identifies the person as a member of the Sheriff's Office, while under disciplinary suspension or while on administrative leave.

**VI.  FORMAL COMPLAINT INVESTIGATION:**  When a member is under an investigation that could lead to formal disciplinary action, demotion, or termination, the investigation will be conducted in accordance with the Police Officers Bill of Rights requirements and under the following conditions:

**A.** Supervisors should avoid investigative actions or interviews that might jeopardize a subsequent criminal investigation.

**B.** Supervisors conducting an investigation will meet with the complainant(s), when possible, and obtain a signed Citizen Complaint Affidavit (FCN 254) documenting the main issues of the complaint.

**C.** Complainant(s), witness(s), and agency member(s) under investigation must be placed under oath before conducting an interview. Interviews with members, complainants, and all witnesses will be audio recorded. The interview, including all recess periods, will be recorded. There will be no unrecorded questions or statements during the interview.

**D.** The investigating supervisor will notify the member under investigation of the nature of the complaint and identify all complainants before commencing an interview. In cases where advanced notification could jeopardize the investigation, the notification may be given immediately before the interview.

**E.** A member may be instructed to submit a written response or explanation of an incident or allegation before an investigative interview.

**F.** Supervisors conducting investigations will question members at a Sheriff's Office facility during duty hours, unless the seriousness of the allegation warrants immediate action.

**G.** The member may review all documentation before an interview. This includes incident reports, GPS locator information, audio and/or video recordings, and the statements of the complainant(s) and all witnesses.

**H.** Members under investigation are required to answer all questions related to the performance of their duties. Failure to answer questions related to the performance of duties may result in disciplinary action up to and <u>including termination</u>. However, information obtained through the compelled statement may not be used in any future criminal prosecution except for proving perjury and/or impeachment. Questions must be specific and narrowly related to the member's duties and their conduct as it relates to their employment with the Sheriff's Office.

**I.** Members under investigation will not be subjected to offensive language or threatened with transfer, termination, or disciplinary action.

**J.** Sheriff's Office members may be required to submit to tests and other investigative methods. The member may also request any of the following tests be administered at the member's expense. These tests will be coordinated through the Internal Affairs Unit. Members will not be ordered to submit to a line up, voice prints, polygraph and hand writing exemplars. Members may be required to submit to:

    **1.** Photographs;
    **2.** Medical or laboratory examinations, including blood, urine, and breath tests;
    **3.** Financial disclosure statements; and
    **4.** Other tests or examinations, when there is reasonable suspicion to believe the results will disclose an administrative violation.

**K.** Members may volunteer to take a polygraph administered by the Sheriff's Office; however, bargaining unit members will not be requested to volunteer for such test.

**L.** Sheriff's Office or county owned property may be searched as part of an investigation.

**M.** Personal property in any Sheriff's Office facility or vehicle may be searched, subject to the limitations of the Fourth Amendment, U.S. Constitution.

**N.** Sheriff's Office communications equipment may be monitored at anytime under conditions permitted by law. Other communications or conversations may also be monitored under conditions permitted by law.

**O.** Supervisors are encouraged to contact the Internal Affairs Unit for investigative advice and techniques, and interpretations of applicable rules and regulations.

**P.** No criminal investigations may be conducted by a member of the Sheriff's Office on any other member(s) of the Sheriff's Office without the knowledge and prior approval of the Sheriff or Chief Deputy.

## VII. FORMAL INVESTIGATIVE CONCLUSIONS:

**A.** If it is determined that the allegation is unfounded, not sustained, exonerated, or exonerated due to policy failure the investigating supervisor or department director will give the member written notification with a copy placed in the case file.

**B.** If it is determined that the allegation is sustained or partially sustained:

    **1.** The investigating supervisor or department director will give the member written notification of the corrective and/or disciplinary action which will then be carried out accordingly. The completed documentation of corrective and/or disciplinary action will be signed by the member and placed in the case file.

    **2.** If the final action is termination, demotion, or permanent loss of pay, only the Sheriff may issue notification. The Sheriff's administrative assistant will prepare the notification. A notification of termination will contain the following:

        a. A statement documenting the reason for termination;

        b. An effective date of the termination;

        c. A statement stating that copies of supporting documentation relating to the termination are available from Internal Affairs; and

        d. Information regarding fringe and retirements benefits after termination. A copy will be placed in the member's personnel file.

**C.** Files complete with Statements of Charges, where applicable, will be delivered to the Internal Affairs Unit in such a fashion as to preserve the integrity of the investigation.

    **1.** If investigated by the member's line supervisor they will be delivered via the chain of command to the member's department director and then to the Internal Affairs Unit.

    **2.** Subsequently, each person reviewing the file will date and sign their name to either the Corrective Action Form or a control sheet which will be affixed to the face of each file by the Internal Affairs Unit. Each person will ensure that the confidentiality of the file is maintained while a disposition is pending.

**D.** The Sheriff, or designee, will concur with one of the following dispositions:

    **1.** Sustained;
    **2.** Partially Sustained;
    **3.** Unfounded;
    **4.** Not Sustained (Unsubstantiated);
    **5.** Exonerated;
    **6.** Policy Failure; or
    **7.** Misconduct not based on original complaint.

**E.** Upon approval of the disposition and recommended discipline, if applicable, by the Sheriff, or designee, the investigative file will be delivered to the appropriate department director.

**F.** If the member resigns prior to the completion of the investigation, the investigation may be completed to its logical conclusion and submitted for final disposition.

**G.** All documentation and completed case files, including letters of final determination, will be forwarded to the Internal Affairs Unit for final review, processing, and filing. Recordings will be furnished to Internal Affairs in a manner that protects the recording from accidental damage or deletion.

**H.** Once the file is returned to the Internal Affairs Unit, the following steps will be taken:

    **1.** The work file copy or any duplicates and their contents will be destroyed,

    **2.** The control log will be updated to reflect disposition, and

    **3.** The complainant will be notified in writing of the conclusion of fact of the complaint. A copy of the notification will be included in the case file.

## VIII.  DISCIPLINE:

**A.** **Informal Discipline:**  This procedure is not intended to interfere with the application of corrective action and/or discipline by supervisors in regard to informal disciplinary matters. Responsibility for informal corrective/disciplinary matters will rest within each chain of command.

    **1.** Informal disciplinary action may be authorized in response to the result of a citizen complaint.

    **2.** Informal disciplinary action may be authorized in response to investigations directly handled by the Internal Affairs Unit or an authorized investigator. In order to avoid disparity or the appearance of unfair treatment, informal discipline will not be used on sustained charges when the recommended discipline includes the possibility of termination. In a case where informal discipline is appropriate, a lesser charge from the table of rules and regulations should be charged.

    **3.** The same level of informal disciplinary action is not authorized in repeat offenses (Rules and Regulations Section, Code of Conduct E, 4 and 5).

    **4.** Informal discipline may be administered in three levels of severity. The least severe form is counseling. Secondly is the suspension of privileges and the most severe form of informal discipline is a reprimand. Any suspension, demotion, loss of pay, or termination is considered formal discipline and therefore not authorized for informal purposes.

    **5.** The decision to apply informal disciplinary action, rather than formal disciplinary action, is based on the policy violated. If the policy violation is not a policy which includes the potential for termination, informal disciplinary action is at the discretion of the member's supervisor and the Sheriff.

    **6.** All informal disciplinary actions will be documented utilizing the following guidelines for informal disciplinary action:

        a.  The member's supervisor will complete and sign a Corrective Action Form (FCN 257).

        b.  The member's supervisor will review the form with the member and have him/her sign the form.

    c.  The document will then be routed to and reviewed by the supervisor's commander. If found acceptable, the supervisor's commander will sign the document where designated for the reviewer's signature.

    d.  The original Corrective Action Form and any attachments will be forwarded to the Internal Affairs Unit where it will be maintained in accordance with the General Records Schedule for Law Enforcement Agencies and related procedures for Sustained Informal Discipline Case Files.

**B. Formal Discipline:**

  **1.**  Under the following circumstances formal discipline is required:

    a.  When the offense committed requires an investigation by the Internal Affairs Unit and/or an authorized investigator and the investigation results in the following dispositions:

        1)  Sustained
        2)  Partially Sustained

    b.  In cases of repeated offenses (Rules and Regulations Section, Code of Conduct E, 4 and 5).

  **2.**  The supervisor may elect to use formal discipline under additional circumstances based on a case by case evaluation of his/her knowledge of the member and the circumstances surrounding the offense.

  **3.**  Formal discipline will be documented utilizing a Corrective Action Form (FCN 257).

    a.  The member's supervisor will complete a Corrective Action Form to include; describing the infraction of applicable rule or procedure, citing the specific corrective action required, and signing as designated for supervisor's signature.

    b.  The member's supervisor will review the form with the member and have him/her sign the completed form.

    c.  The document will then be routed to and reviewed by the supervisor's commander. If found acceptable, the supervisor's commander will sign the document where designated for the reviewer's signature.

    d.  The completed form and any attachments will be routed as follows; original to the Internal Affairs Unit, copy to the member's supervisor, and copy to the member.

## IX.  PROCESS OF APPEALS:

  **A. Corrective Action:**  Members may not appeal corrective actions. Members may only grieve policy and procedure failures in accordance with G.O. 14.01.

  **B. Informal Disciplinary Action:**  A member may not appeal any informal disciplinary action.

    **C. Formal Disciplinary Action:** A member may appeal any formal disciplinary action which results in a suspension of six (6) days or more or termination. Guidelines for an appeal are found in the Rules and Regulations Section, IX, Career Service Law and the Appeals Board Guide.

# X.   GLOSSARY:

AUTHORIZED INVESTIGATOR(S) - Any person authorized by the Sheriff or Chief Deputy to conduct an internal affairs or supervisory investigation as outlined herein.

CITIZEN'S COMPLAINT - Any complaint by any person, group of persons, organization, or corporation making allegations against any member of the Sheriff's Office or against the Office itself.

COMPLAINT OF MISCONDUCT - An accusation or charge accusing a member of the Sheriff's Office of violating a policy, procedure, rule or regulation. This **DOES NOT INCLUDE** citizen complaints or grievances that result from a complainant's misunderstanding or disagreement with the application of law or Sheriff's Office policies or procedures.

CORRECTIVE ACTION - Action intended to modify or improve behavior and elicit compliance with established policies and procedures, e.g., Counseling, Letter of Reprimand.

COUNSELING - A documented discussion between a supervisor and subordinate in which the subordinate's improper behavior and necessary improvements are brought to their attention. Counseling is generally used after supervisor/subordinate communications, i.e., "coaching" has failed to produce the desired results.

DISPOSITION - The final results of the investigation. Not to be misconstrued with corrective or disciplinary action. The dispositions of Internal Affairs are as follows:

1.    Sustained - The allegation is supported by sufficient evidence.

2.    Partially Sustained - The incident has two or more allegations and at least one of the allegations is sustained.

3.    Policy Failure - The policy or procedure does not properly address the allegation, or conflict in policy or procedure led to the alleged conduct.

4.    Unfounded - The allegation was demonstrably false or there is no credible evidence to support the complaint.

5.    Not Sustained (Unsubstantiated) - The investigation failed to disclose sufficient evidence to prove or disprove the allegation.

6.    Exonerated - An incident occurred but the individual's actions were lawful and proper.

7.    Misconduct Not Based On The Original Complaint - Substantiated misconduct not mentioned in initial allegation which was uncovered during the Investigation.

FORMAL DISCIPLINARY ACTION - Termination, demotion, suspension from duty without pay and probation.

<u>INFORMAL CORRECTIVE/DISCIPLINARY ACTION</u> - Action taken to effect informal corrective/disciplinary matters. Informal corrective/disciplinary matters are less serious matters that are managed by the application of informal discipline including; suspension of privileges, counseling, or reprimands.

<u>REPRIMAND</u> - An official censure of unacceptable acts or behavior, which is administered in a positive manner. It will be made clear to the member that the behavior for which the reprimand was given will not be tolerated, and stronger disciplinary action(s) will be taken if the behavior reoccurs.

<u>STATEMENT OF CHARGES</u> - A written document summarizing the disposition of an investigation regarding the alleged actions of an individual and the relationship to the rules and regulations of this agency. A statement of charges must provide a proposal of the specific action sought, including the length of suspension, if applicable. Notice to the member must be made within 180 days after the agency received notice of the alleged misconduct. Exceptions to the rule are located in Florida Statute.

<u>SUPERVISORY INVESTIGATION</u> - An investigation by trained and qualified members who have control of the person(s) being investigated for alleged inappropriate behavior and misconduct. An investigation conducted by an immediate supervisor of a member for allegations of inappropriate behavior, misconduct, or minor policy violations.

**INDEXING:**

ADMINISTRATIVE LEAVE
CITIZEN COMPLAINTS
COMPLAINT INVESTIGATIONS
CORRECTIVE ACTION
COUNSELING
DISCIPLINARY PROCEDURES
DISCIPLINE
FORMAL DISCIPLINARY ACTION
FORMAL INVESTIGATIONS
INFORMAL DISCIPLINARY ACTION
INFORMAL INVESTIGATIONS
INTERNAL AFFAIRS INVESTIGATIONS
MISCONDUCT INVESTIGATIONS

DRAFTED BY:  jdr/lkt October 3, 2011

**Sheriff Ken J. Mascara**

*October 15, 2011*

## ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:**<br>G.O. 18.02 (07/01/10) | **Effective:** August 1, 2012 | **General Order: 18.02** |
|---|---|---|---|
| | | **Title: Training Organization and Management** | |
| | | **Accreditation Standards:**<br>**CFA:** 14.01, 14.03, 14.06, 14.09<br>**FCAC:** | **Attachments:** A<br>**FCN:** 016, 272 |

**CONTENTS:** This order consists of the following numbered sections:

| | |
|---|---|
| I. | ADMINISTRATION |
| II. | ATTENDANCE REQUIREMENTS |
| III. | TRAINING REQUESTS |
| IV. | INSTRUCTOR QUALIFICATIONS AND SELECTION |
| V. | PROGRAM REQUIREMENTS |
| VI. | RECORD KEEPING |
| VII. | GLOSSARY |

**PURPOSE:** The purpose of this General Order is to establish guidelines for the development, organization, and administration of agency training programs.

**SCOPE:** This order applies to all members.

**DISCUSSION:** Training is an important responsibility of any law enforcement agency. Effective training prepares members to act decisively and correctly in a broad spectrum of situations, it reduces the agency's exposure to liability, and can significantly reduce the risks associated with various job tasks.

**POLICY:** Members will be provided training as mandated by the Criminal Justice Standards and Training Commission, Florida law, federal law, and agency policy.

**PROCEDURE:**

I. **ADMINISTRATION:**

   A. **Training Function:** The primary responsibility for training rests with the Training Unit. The Training Unit will review, evaluate, and update training programs to ensure that training is job-related and conforms to current law and agency policy. Training includes, but is not limited to, the following:

   1. Program development;
   2. Instructor selection;
   3. Training notification to members;
   4. Record keeping;
   5. Administration of the college internship program; and
   6. Coordination of training with the Indian River State College, the Florida Department of Law Enforcement, and the Criminal Justice and Standards Training Commission.

*August 1, 2012*

**B. Training Advisory Committee:** The committee will help in developing and evaluating training needs, and make recommendations to the Training Unit supervisor. The committee will be comprised of department directors, division commanders, the Training Unit supervisor, and other members as needed. The Director of Administration will serve as the chairperson. The primary purpose of this committee is to provide unified direction for the agency's comprehensive training program.

    **1.** The Training Unit supervisor will schedule advisory committee meeting at least annually. Records of these meetings will be kept in the Training Unit.

    **2.** Any board member who is unable to attend a scheduled meeting will send a designee.

**II. ATTENDANCE REQUIREMENTS:** Members scheduled for training must complete all areas of the program. Members who do not attend scheduled training due to an authorized or unauthorized absence will be rescheduled for the next available training session, when practical.

    **A.** It is the member's responsibility to obtain approval from their division commander to be absent from class.

        **1.** Instructors will document and forward attendance records to the Training Unit for filing.

        **2.** The Training Unit supervisor will report absences to the member's division commander.

    **B.** Members attending training programs outside the agency are required to report absences to their division commander.

    **C.** Instructors may be excused from attending courses for which they hold current CJSTC certification or other specialty certification to teach.

**III. TRAINING REQUEST:**

    **A.** All members desiring to attend a region funded training program at a regional training facility will complete a Training Request form (FCN 272). However, if there are any costs associated with a class taken at the regional training facility, members must complete a Training/Travel Request form (FCN 016). Members should submit the training request form within 30 days prior to the starting date of the training program, unless authorized by his/her division commander.

    **B.** The member will submit the training request form to his/her immediate supervisor and division commander for review and approval. Once approved, the training request form will be forwarded to the member's Training Unit. The Sheriff's Office and/or Region XI will be responsible for tuition and lab fees of courses approved by the division commander or higher authority.

    **C.** Attendance of training programs may be on the member's off-duty or on-duty hours depending upon approval of the member's immediate supervisor.

    **D.** The member will make copies of all certificates received from any training, approved by the agency, and forward them to the Training Unit for placement into the member's training file.

**IV.  INSTRUCTOR QUALIFICATIONS AND SELECTION:**  Qualified instructors are an essential element of any successful training effort. The supervisor of the Training Unit is responsible for the selection and monitoring of instructors for agency-provided training. Sheriff's Office instructors will be selected based upon their expertise, skills, knowledge, and abilities.

**A.  In-house Instructors:**  All in-house instructors must have received instructor training for the particular topic area or possess significant expertise in the topic area, as approved by the director of the department for which the training is intended. Instructors for high liability topics, as identified by CJSTC, must possess CJSTC instructor certification in the topic discipline. Instructor qualifications, as approved by the Director of Administration, will be maintained by the Training Unit.

**B.  Outside Instructors:**  Outside instructors may be scheduled to teach courses based upon the special needs of the agency. These instructors will be selected by the Training Unit supervisor based on experience; recommendations of other law enforcement agencies, schools, colleges, and universities; and their known skills and abilities as instructors. Such instructors are not required to possess CJSTC instructor certification, but they must comply with all agency training guidelines. Outside instructors may present topics of instruction that include, but are not limited to the following:

1.  Law.
2.  Crisis intervention.
3.  Interpersonal relationships and stress.
4.  Fire fighting.
5.  Psychology.
6.  Health issues.
7.  Management issues.

**V.  PROGRAM REQUIREMENTS:**

**A.  Lesson Plans:**  A lesson plan is required for every agency-provided training course. Lesson plans will serve as a guide to instructors and identify performance objectives for students. The guidelines and format for developing lesson plans will be consistent with Attachment A. They will be submitted to the Training Unit supervisor for review and division commander or department director for approval before the course is initiated. The Training Unit supervisor is responsible for ensuring that lesson plans:

1.  Are developed based on current job task analysis;

2.  Contain statements of student performance objectives, testing method, learning aids;

3.  Contain source references, when appropriate; and

4.  Identify the content of the training program and specify the instructional techniques that will be employed. Instruction techniques may include, but are not limited to, conferences, field experiences, presentations, problem investigations, and simulations.

*August 1, 2012*

**B. Testing and Course Evaluation:**   The instructor may use competency tests based upon performance objectives to measure participant knowledge and job-related skills. The Training Unit supervisor must review all such tests before use.

   1. Instructors will administer tests according to lesson plan requirements and score numerically for pass or fail grades. Written tests require a score of 80% to achieve a passing grade. Specific topics or certifications may require a different passing score, i.e., the American Heart Association requires a score of 84% for a passing grade for the CPR re-certification program.

   2. Cheating on agency tests or exams is a violation of agency ethics and, if necessary, will be dealt with through disciplinary process. If a high probability of cheating exists, the member(s) will be required to re-attend the course.

   3. Participants will evaluate each course for content, training aids, organization, instructor performance, and the need for expansion or cancellation of the course. Evaluations will be documented on an Instructor/Course Evaluation Sheet that will be placed into the class file.

**VI.  RECORD KEEPING:** The Training Unit is responsible for maintaining accurate records of training presented to agency members. The information contained in these files is public record and will be released in conformance with Florida law and G.O. 29.01. Agency members will have access to this information as needed.

   **A.** Course documentation will include, but is not limited to, the following:

   1. Course content;
   2. Rosters of attendees;
   3. Completed course and instructor evaluations;
   4. Completed tests or other student evaluation tools;
   5. Instructor name and notes used to document unusual occurrences during the course; and
   6. Registration forms and signed waivers, if applicable.

   **B.** Course certificates and other proofs of course completion will be maintained in individual files for each member. The member is responsible for providing documentation of job-related courses attended outside the Sheriff's Office within **five (5)** days of course completion.

   **C.** The Training Unit is responsible for documenting course work to be used for CJSTC mandatory retraining credit. These records will be kept in each sworn member's training file.

**VII. GLOSSARY:**

<u>AUTHORIZED ABSENCE</u> - Failure to attend scheduled training due to illness, a recognized emergency, a State Attorney's Office investigation, subpoena, or written authorization from division commander.

<u>JOB TASK ANALYSIS</u> - A systematic examination of the functions and objectives of each job-related task as they relate to the skills, knowledge and abilities of the job.

<u>LESSON PLAN</u> - A detailed documented guideline of training course content. A lesson plan includes course goals, specific subject matter, performance objectives, references, resources and method of evaluating or testing students.

**G.O. 18.02**

PERFORMANCE OBJECTIVES - Specific statements of operational behavior for satisfactory performance of a job task, the conditions under which the behavior is usually performed, and the criteria of satisfactory performance. Performance objectives provide the basis for evaluating participants and the effectiveness of the training program.

STATE RATE - The rate of reimbursement for travel and expenses as provided by Florida law.

UNAUTHORIZED ABSENCE - Failure to attend a scheduled class without authorization.

**INDEXING:**

ATTENDANCE, TRAINING
INSTRUCTORS
TRAINING ADMINISTRATION
TRAINING ATTENDANCE
TRAINING AUTHORIZATION
TRAINING ORGANIZATION
TRAINING REQUESTS

---

DRAFTED BY:  jdr/lkt July 16, 2012

---

**Sheriff Ken J. Mascara**

*August 1, 2012*

## ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:**<br>G.O. 18.03 (10/15/10) | **Effective:** February 15, 2013 | **General Order: 18.03** |
|---|---|---|---|
| | | **Title: Training Programs** | |
| | | **Accreditation Standards:**<br>**CFA:** 5.05, 14.04, 14.05, 14.11, 14.12, 14.13<br>**CALEA:** | **Attachments:**<br>**FCN:** |

**CONTENTS:** This order consists of the following numbered sections:

      I.     ORIENTATION TRAINING
     II.    IN-SERVICE TRAINING
   III.    ROLL CALL TRAINING
   IV.    REMEDIAL AND ADDITIONAL TRAINING
    V.    SPECIALIZED TRAINING
   VI.    ADVANCED TRAINING
  VII.    GLOSSARY

**PURPOSE:** The purpose of this General Order is to establish guidelines for Sheriff's Office training programs.

**SCOPE:** This order applies to all members.

**DISCUSSION:** The Sheriff's Office ensures that members are kept up to date with technological improvements, new laws, and revisions. Training is provided to members, supervisors, management, or specialized units/teams. Certain positions require special skills, knowledge, or abilities. Members assigned to these positions must be specially trained to acquire the skills, knowledge, and abilities that are required. Training for specialized jobs must be initiated in a timely manner to prevent the member from working at a job that he/she has not been trained to perform.

**POLICY:** It will be the policy of the Sheriff's Office that all members be provided training in conformance with law and this order.

**PROCEDURE:**

**I.   ORIENTATION TRAINING:**

   **A.** All newly hired members will attend agency orientation training in the first available class after their hire date. These classes will be conducted by the Risk Management Unit in conjunction with the Human Resources Unit and the Training Unit. Orientation training will include:

      **1.** A review of the agency's role, purpose, goals, policies, and procedures.
      **2.** Working conditions and rules and regulations.
      **3.** Member rights, responsibilities, and benefits.
      **4.** Accreditation process.
      **5.** Blood borne pathogens training.
      **6.** Biomedical hazards training.
      **7.** Employee wellness and drug free workplace.

*February 15, 2013*

**B.** All sworn law enforcement members will be required to complete and pass an Orientation to Law Enforcement Operations class conducted by the Training Unit prior to beginning the Field Training and Evaluation Program.

## II.  IN-SERVICE TRAINING:

**A. Requirements:**  Sworn deputies will receive a minimum of 40 hours of in-service training every four years as required by CJSTC. Detention deputies will receive in-service training as required by CJSTC. Sworn deputies will receive in-service high liability training as follows:

1. **Domestic Violence:**  CJSTC required every four years for sworn law enforcement members or as needed.

2. **Discriminatory Profiling and Professional Traffic Stops (S.A.L.T.S.):**  CJSTC required every four years for sworn members. Completion of this class also satisfies the CJSTC requirement for Human Diversity Interpersonal Skills as approved by the Sheriff.

3. **Discriminatory Profiling and Professional Traffic Stops:**  CJSTC required every four years for certified law enforcement members.

4. **Driving:**  High liability training required annually for sworn members who operate agency vehicles.

5. **Defensive Tactics (Includes Use of Force):**  High liability training required annually for sworn members.

6. **Cardiopulmonary Resuscitation (CPR) and Basic First Aid:**  High liability training required every two years for sworn members. Available on a voluntary basis for civilian members.

7. **Firearms:**  Proficiency and qualification training required twice annually for sworn members.

8. **Legal Updates:**  As needed for all members.

9. **Blood Borne Pathogens Updates:**  Annually for all members with occupational exposure.

10. **Hazardous Materials Updates:**  Annually for sworn members.

11. **Forfeiture Updates:**  Annually.

12. **Other Safety, Health, and High Liability Subjects:**  As required by law or regulation.

**B. Curriculum:**  The Training Unit supervisor is responsible for the in-service training curriculum. The training committee or any agency member may make recommendations regarding in-service subjects. Current job task analysis will be reviewed by the Training Unit supervisor to ensure that in-service training addresses job requirements.

**C. Responsibilities:**  Attendance at all in-service training is mandatory. Members may be excused from in-service training by a division commander for court testimony, sick leave, or minimum staffing requirements. The Training Unit supervisor will be responsible for the review and update of each sworn member's certificate as required by CJSTC. However, the member is personally responsible for maintaining their current certifications required for their assignment.

**G.O. 18.03**

## III. ROLL CALL TRAINING:

**A.** The roll call training program provides an effective means to update and review the skills, knowledge, and abilities of members between formal training programs. Roll call training for law enforcement deputies and detectives may include the following topics:

1. Agency mission, policies, procedures, rules and regulations;
2. Statutory or case law changes affecting law enforcement operations;
3. The functions of agencies in the local judicial system;
4. The exercise of discretion;
5. Interrogation and interview techniques;
6. Investigative or technological techniques or methods;
7. Evidence collection and preservation;
8. Report writing and records systems procedures and requirements;
9. Crime prevention policies and procedures;
10. Special operations and unusual occurrences;
11. Victim/witness rights and responsibilities;
12. Any other appropriate topic.

**B.** Detention deputies will refer to their department directives for roll call training topics.

**C. Materials:**  Roll call materials may include video presentations, lectures, seminars, or printed materials such as training bulletins.

**D. Coordination:**  Roll call training will be developed and implemented by supervisors in cooperation with the Training Unit. The Training Unit will coordinate and monitor roll call training activities to include:

1. **Planning:**  Training Unit members will provide any necessary outlines, lesson plans, and materials for the roll call training courses.

2. **Techniques:**  Individuals assigned roll call instruction responsibilities will present training materials in a way that is conducive to learning. State certification or instructor training is not required, but is recommended for roll call presentations.

3. **Coordination with Academy:**  The roll call program may be presented in conjunction with the materials and courses taught at local Criminal Justice Standards and Training Commission approved centers, inclusive of the Indian River Basic Recruit Law Enforcement and Correction's Academies. Training Unit members and unit supervisors will disseminate training materials with this goal in mind.

4. **Instructional Personnel:**  Unit supervisors or the Training Unit supervisor will assign roll call instructors. The selection of personnel will be based upon the skills, knowledge, abilities, and motivation of individuals on certain topics.

5. **Evaluation:**  Unit supervisors will evaluate the effectiveness of roll call training by written testing, oral testing, scenario presentations, or by observation. Remedial training will be scheduled by a member's supervisor to assist any member unable to apply the content of the training to the appropriate job task.

*February 15, 2013*

6. **Scheduling:**  Unit supervisors will schedule roll call training courses through their division commander.

   a. The unit supervisor will structure roll call training to allow adequate time for the completion of the training without interfering with the operational readiness of the agency. Training courses may be presented in a block format to allow increased instructional time on the topic.

   b. Division commanders will ensure that the training schedule is implemented and documented. The documentation may include attendance lists, written tests administered, or any other handout material used in the training. The documentation will be forwarded to the Training Unit supervisor for review and file update.

7. **Supervisor/Deputy Role:**  Each supervisor is responsible for ensuring that the training meets the needs of the agency. Each supervisor and deputy will actively participate in the roll call training program. Members may make suggestions for roll call training topics anytime through the unit supervisor or a member of the Training Unit.

IV. **REMEDIAL AND ADDITIONAL TRAINING:**  Remedial and additional training is available to members when performance deficiencies are identified through evaluation or observation. Minor deficiencies can be corrected through informal training or counseling sessions. Serious deficiencies should be reported to the member's division commander and addressed as follows:

**A.** Remedial training should be initiated upon discovery of the deficiency, but must be initiated within 30 days.

**B.** If the required training is of an operational nature, the member's division will provide the training. If the training exceeds the division's resources, or the need is of an administrative or technical nature, the Training Unit will plan, administer, and document the training.

**C.** Training hours accumulated during remedial training will not be credited as training time necessary to complete the in-service training requirement.

**D.** Failure to participate in, or successfully complete, a remedial training program may be considered failure to do a job function, and will be handled according to established disciplinary procedures.

**E.** Remedial training will be initiated for, but not be limited to, the following job performance deficiencies:

   1. **Vehicle Driving Skills:**  Members who demonstrate poor driving habits, or are found "at fault" in crashes while operating Sheriff's Office vehicles, may attend the next scheduled defensive driving course. Law enforcement and prisoner transport deputies will attend a "skill driving" course. Members may be instructed, at their own expense, to attend driver training outside the agency.

   2. **Firearms Proficiency:**  Deputies must demonstrate proficiency with all firearms carried and used in an official capacity. This is accomplished during scheduled qualification periods. Failure to show proficiency will result in further training under the direction of a certified firearms instructor (refer to G.O. 1.04).

3. **Defensive Tactics/Less-lethal Weapon Proficiency:** Deputies must demonstrate proficiency in use of force and defensive tactics annually. Less-lethal weapons proficiency will be conducted biennially, at a minimum. Failure to qualify in either of these areas will result in remedial training.

4. **Cardiopulmonary Resuscitation (CPR) and First Aid Skills:** This is normally accomplished during the in-service training period.

## V.   SPECIALIZED TRAINING:

A. **Policy:** Specific training will be required for agency members in certain positions. Training will be provided based upon agency need for the specialized skill or as the result of a job task analysis of the specialized position. Specialized training may include:

1. Training that develops and/or enhances the skills, knowledge, and abilities particular to the position.

2. Management, administration, supervision, personnel policies, and support services of the function or component.

3. Performance standards of the specialized position or component.

4. Agency mission, policies, procedures, rules and regulations, specifically related to the function or component.

5. Supervised on-the-job training.

B. **Time Limitation:** Unit supervisors will ensure that the training of members transferred or assigned to the specialized position is initiated within 12 months of the assignment or transfer. This training will be documented in the member's Training Unit files.

C. **Sworn Assignments:** The following assignments require specialized training:

1. Aviation;
2. Crime Scene Technicians;
3. Detectives;
4. Bomb Disposal Team;
5. Instructors;
6. K-9 Handlers;
7. Special Weapons and Tactics Team (SWAT);
8. Traffic Motorcycle Operators; and
9. Underwater Search and Recovery Team.

D. **Civilian Job Assignments:** The following assignments require specialized training:

1. Crime Analyst;
2. Crime Scene Technician;
3. Evidence Custodian;
4. Fingerprint Technician;
5. Records Supervisor and Clerks;
6. Civil Clerks;
7. Warrant Clerks; and
8. School Crossing Guards.

G.O. 18.03

   **E.  Documentation:**   All training attended by agency members in a specialized position will be documented by the unit. Copies of any materials used in the specialized training will be sent to the Training Unit supervisor.

**VI.  ADVANCED TRAINING:**  Training is essential for the professional growth of the individual and should be continued throughout the law enforcement career. The Sheriff's Office encourages participation in programs at an advanced level for members assigned to management or staff level positions. All requests to participate in any extended advanced training will be submitted to the Chief Deputy, via the member's department director. The agency provides this through training centers such as:

   **A.**  The Federal Bureau of Investigation National Academy
   **B.**  The Southern Police Institute
   **C.**  The Florida Department of Law Enforcement Executive Institute
   **D.**  IRSC - Criminal Justice Institute

**VII. GLOSSARY:**

ADVANCED TRAINING - Training designed for management or staff level positions, often held outside the agency.

IN-SERVICE TRAINING - Training that includes periodic refresher training or mandatory retraining as required by the Florida Department of Law Enforcement.

REMEDIAL TRAINING - Individual training used to correct a specific job deficiency. Deficiencies may be identified through testing, evaluation, or job task performance.

ROLL CALL TRAINING - Training sessions, of short duration, conducted within a certain time. Roll call training may include: videos, lectures, or the printed media, to include weekly training bulletins.

SPECIALIZED TRAINING - Training required through job task analysis for specialized positions within the agency.

**INDEXING:**

ADVANCED TRAINING
IN-SERVICE TRAINING
ORIENTATION TRAINING
REMEDIAL TRAINING
ROLL CALL TRAINING
SPECIALIZED TRAINING
TRAINING

DRAFTED BY:  cfs/lkt December 3, 2012

**Sheriff Ken J. Mascara**

*February 15, 2013*

# ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:** G.O. 19.01 (02/01/13) | **Effective:** May 1, 2013 | **General Order: 19.01** |
|---|---|---|---|
| | | **Title: Performance Evaluation System** | |
| | | **Accreditation Standards:** **CFA:** Ch. 16 **FCAC:** 4.24 – 4.30 | **Attachments:** **FCN:** 155 |

**CONTENTS:** This order consists of the following numbered sections:

|     |                                |
|-----|--------------------------------|
| I.   | EVALUATION SYSTEM OBJECTIVES   |
| II.  | EVALUATION SCHEDULE            |
| III. | RATER RESPONSIBILITIES         |
| IV.  | COMPLETING THE EVALUATION      |
| V.   | REVIEWER RESPNSIBILITIES       |
| VI.  | MEMBER RESPNSIBILITIES         |
| VII. | ROUTING PROCEDURE              |
| VIII.| CONTESTING EVALUATIONS         |
| IX.  | DISTRIBUTION                   |
| X.   | EVALUATION RESULTS             |
| XI.  | GLOSSARY                       |

**PURPOSE:** The purpose of this General Order is to establish guidelines for assessing the job performance of Sheriff's Office members.

**SCOPE:** This order applies to all members.

**DISCUSSION:** The objective of the St. Lucie County Sheriff's Office Member Performance Evaluation is to provide both management and the member with a fair and impartial means of measuring performance within established standards.

**POLICY:** Supervisors will complete a Member Performance Evaluation (FCN 155) for every member under their span of control in conformance to this order.

**PROCEDURE:**

I. **EVALUATION SYSTEM OBJECTIVES:** The objectives of the performance evaluation system are to:

   **A.** Improve member performance.
   **B.** Foster fair and impartial personnel decisions.
   **C.** Provide a vehicle for counseling, coaching, and dialogue.
   **D.** Facilitate retention decisions during introductory periods.
   **E.** Provide a means to recognize and acknowledge individual performance.
   **F.** Identify training needs.

## II.  EVALUATION SCHEDULE:

### A.  Newly Hired Probationary Member:

1.  The probationary period of all newly hired members will be for a period of twelve (12) months. This probation period will begin at date of employment unless the member is hired for a certified position and is not yet certified, then it will begin at the date of certification. Any time spent out of work or on modified light duty for any reason, including worker's compensation, may be deducted from the twelve (12) months, thus extending probation.

2.  All newly hired probationary members will be evaluated semi-annually. Newly hired deputies participating in the F.T.O. Program will also be rated daily utilizing the F.T.O.'s daily report.

### B.  Promotion, Transfer, Duty Re-classification, and Probationary Member:

1.  The probationary period for members who have received a re-classification or transfer (i.e. Detention to Law Enforcement, etc.) will be one (1) year unless:

    a.  Otherwise specified in the members' respective Collective Bargaining Agreement.

    b.  The member's new position is a certified position and the member is not yet certified. In this case the probationary period will be twelve (12) months from the date of certification. Anytime spent out of work or on modified light duty for any reason, including workers' compensation, may be deducted from the twelve (12) months, thus extending probation.

2.  Re-classified members who fail to successfully complete any required specialized training and/or the field training program, or who receive a final score indicating needs improvement or unsatisfactory performance, may be returned to the rate of pay and position prior to re-classification.

3.  The probationary period for all members who have been promoted will be one (1) year. At the end of the probationary period, the member will be evaluated.

4.  Unless a member has been evaluated within 90 days of their transfer, the transferring supervisor will evaluate the member upon transfer.

### C.  Non-Probationary Personnel:  Non-probationary members will be evaluated annually. Annual performance evaluations will be prepared and submitted the month of the member's anniversary date.

### D.  Members will be rated by their immediate supervisor or, if unavailable, the next higher level administrator.

### E.  Exceptions:  The following positions are exempt from annual performance evaluations:

1.  Sheriff.
2.  Chief Deputy.
3.  Department directors.
4.  General Counsel.
5.  Captains.
6.  Administrative assistant(s) to the Sheriff and Chief Deputy.
7.  Part-time members.
8.  School crossing guards.

*May 1, 2013*

## III.  RATER RESPONSIBILITIES:

**A.**  Raters will be trained to evaluate members and to prepare performance evaluations. The Field Training supervisor will provide instruction to new supervisors in the area of performance appraisal techniques, evaluation procedures, use of evaluations, and counseling techniques.

**B.**  The rater will ensure that the member's evaluation is based only on performance during the current rating period and on the member's actual job performance.

**C.**  The rater will be judicious on behalf of the Sheriff's Office but fair, impartial, and open minded to the member being rated.

**D.**  Raters are responsible to meet the required time frames to facilitate timely submission of the performance evaluations.

**E.**  The rater will evaluate the member using the outlined criteria as indicated on the performance evaluation in regard to:

   **1.**  Fulfillment of the duties and responsibilities of the member's position.
   **2.**  Statistical comparison with other members, where possible.

**F.**  At the beginning of the rating period, supervisors will counsel each member concerning the following, at a minimum:

   **1.**  Tasks of the position.
   **2.**  Level of performance expected.
   **3.**  Criteria used for ratings on the evaluation.

**G.**  At the end of the member's evaluation period, the rater will discuss with the member the results of the performance evaluation just completed and career counsel in relative topics such as advancement, specialization, or training appropriate for the member's position.

**H.**  The performance evaluation system is a process that spans the entire rating period. Throughout the rating period supervisors are to document both positive and negative performance. It is the supervisor's constant responsibility to assist members by making sure they understand how to do their jobs, what constitutes good performance, how they are doing, and how to improve if necessary.

**I.**  During the course of a non-probationary member's rating period, whenever a member's performance becomes unsatisfactory in any rating category, the supervisor will give written notification which defines actions that should be taken to improve performance. The unsatisfactory performance notice is to be issued at least ninety (90) days prior to the end of the member's evaluation rating period. This notice must be submitted with the performance evaluation if the member receives an unsatisfactory rating in any category.

**J.**  In the event the member's unsatisfactory performance was not discoverable, did not commence until the last ninety (90) days, and/or the performance rating was based on a standard of occurrence's (for example: sick leave standard of absence as outlined in G.O. 13.03) that did not accumulate to substandard until the last ninety (90) days, the supervisor will:

*May 1, 2013*

    **1.** Attempt to give written notice, as soon as possible, before the end of the rating period if there is sufficient time for the member to demonstrate improved performance; and

    **2.** Explain in the rater's comments section why notice could not be given at least ninety (90) days prior.

**K.** Where a non-probationary member does not meet performance standards, the rater will develop a performance plan intended to correct performance deficiencies.

**L.** Members receiving an <u>unsatisfactory</u> overall will be placed on a ninety (90) day corrective period. The rater will re-submit a special evaluation report within 90 days. If at the end of the ninety (90) day period the member is still rated unsatisfactory he/she may be terminated.

**M.** When a member is managed by more than one supervisor during the rating period, each supervisor involved with the member will come to a consensus of opinion and prepare one evaluation on the individual. Both supervisors involved with the rating of the member will sign the evaluation document prior to reviewing it with the member. The completed evaluations will be forwarded to the appropriate reviewer.

**IV. COMPLETING THE EVALUATION:** The rater will:

**A.** Save the evaluation by selecting "Save As" and adding the member's name and the evaluation period ending year to the end of the title of the document. (i.e. EmployeeEvaluation-JohnDoe2012)

**B.** Complete each field in the employee information section to include selecting if they are rating a civilian, sworn, and/or supervisor. If rating a sworn and/or supervisor additional rating categories will appear only if selected.

**C.** The number of categories to complete are as follows:

    **1.** Civilian = 10
    **2.** Sworn = 15
    **3.** Civilian Supervisor = 15
    **4.** Sworn Supervisor = 20

**D.** Complete all rating categories by selecting the appropriate rating from the drop down options and document in the related comment field the member's performance on ratings of "Outstanding" or "Unsatisfactory."

**E.** Ensure that the "Scoring" section is complete. A score will automatically be calculated as long as all rating categories are completed. If there is no score, recheck the rating categories for completeness.

**F.** Electronically forward the saved evaluation to the reviewer for review and signature.

**G.** Sign the completed evaluation once returned from the reviewer and forward to the division commander.

*May 1, 2013*

**G.O. 19.01**

**V.   REVIEWER RESPONSIBILITIES:**

    **A.**  Upon receipt, the reviewer will check the performance evaluation for completeness and that the accomplishment level reflects fairness and impartiality. At the reviewer's discretion, he/she may provide additional remarks in the area designated for reviewer comments. The reviewer may meet with the rater to critique the member's evaluation and make written comments as needed.

    **B.**  Once approved, the reviewer will print and sign the performance evaluation where indicated and forward the signed evaluation back to the rater.

    **C.**  The reviewer will evaluate raters regarding their fairness and impartiality of ratings given, their participation in counseling and guidance, and their ability to carry out the rater's role in the performance evaluation system. The reviewer will ensure that the rater applies ratings uniformly.

    **D.**  If the evaluation is contested, the reviewer will supplement the evaluation documenting findings.

**VI.   MEMBER RESPONSIBILITIES:**

    **A.**  Each evaluation of a member's performance will be read and acknowledged by the signature of the member. The signature will indicate only that the member has read the evaluation and will not imply agreement or disagreement with the content.

    **B.**  The member will be provided the opportunity to select whether they agree or disagree with the evaluation.

    **C.**  The member should indicate if they will or will not respond to the evaluation in writing. If the member chooses to respond to their evaluation, they will have the opportunity to provide a memo to the rater within seven (7) business days of the date they signed the evaluation. If they do not provide a response to the rater within that timeframe, they will be considered to have forfeited their opportunity to respond.

**VII.   ROUTING PROCEDURE:**

    **A.**  Completed evaluations will be routed through the chain of command to the appropriate division commander.

    **B.**  Upon receipt of a performance evaluation for a member under their command, the appropriate division commander will review the evaluation adding necessary comments in memorandum form and attach to the evaluation. A copy of the memorandum will be delivered to the member being evaluated.

**VIII. CONTESTING EVALUATIONS:** Members may contest unsatisfactory evaluations through informal means by conferring with the next level within the chain of command. Members will be given the opportunity to clarify their position and voice opinions regarding the evaluation. The reviewing authority will supplement the evaluation as to the findings. If the informal review process does not resolve the contested issue, the grievance process may be utilized as outlined in G.O. 14.01.

**IX.   DISTRIBUTION:** The original evaluation and attachments will be forwarded to Human Resources for retention in accordance with Florida law. A copy will be provided to the rated member.

*May 1, 2013*

G.O. 19.01

**X.   EVALUATION RESULTS:**  Evaluation results and utilization may be used to:

**A.** Inform members of what is expected of them and how well they are performing;
**B.** Assess the strong points of the member for possible future duty assignments;
**C.** Aid superiors in conjunction with other evaluations for promotions, transfers, and other personnel transactions;
**D.** Provide a continuing record of a member's performance history; and
**E.** Check accuracy of job descriptions and classification.

**XI.  GLOSSARY:**

<u>CONTESTED PERFORMANCE EVALUATION</u> - An evaluation which has been challenged by the rated member.

<u>IMMEDIATE SUPERVISOR</u> - The person regularly assigned to direct the work of a member.

<u>MEASUREMENT DEFINITIONS</u> -

1. Outstanding - Performance surpasses job requirements/expectations and is clearly higher than peers.

2. Commendable – Performance often exceeds job requirements/expectations.

3. Satisfactory - Performance meets job requirements/expectations.

4. Needs Improvement – Performance minimally meets job requirements/expectations. The member has identifiable weaknesses which need to be improved.

5. Unsatisfactory - Performance does not meet job requirements/expectations. The member has identifiable deficiencies which need to be corrected.

<u>RATER</u> - The immediate supervisor of the person being rated.

<u>RATING PERIOD</u> - The period of time for which the member's performance is being evaluated.

<u>REVIEWER</u> - The supervisor of the rater who submits the performance evaluation.

<u>SPECIAL EVALUATION</u> - An evaluation submitted to record exceptional performance, recognize achievement, or record marginal or substandard performance.

**INDEXING:**

EVALUATION SYSTEM
PERFORMANCE EVALUATION SYSTEM
PROBATIONARY MEMBERS

DRAFTED BY:  cfs/lkt April 16, 2013

**Sheriff Ken J. Mascara**

*May 1, 2013*

## ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Supersedes:** EP 602.03 (09/01/95) | **Effective:** August 1, 2001 | **General Order:** 20.02 |
|---|---|---|---|
| | | **Title: Conducting Preliminary Investigations** | |
| | | **Accreditation Standards:** CFA & 18.07 CALEA & 42.1.4, 42.2.2 FCAC & | **Attachments:** FCN: |

**CONTENTS:** This order consists of the following numbered sections:

      I.     INVESTIGATION DUTIES
     II.    GLOSSARY

**PURPOSE:**  The purpose of this General Order is to establish guidelines for conducting preliminary investigations.

**SCOPE:**  This order applies to all members.

**DISCUSSION:**  A properly conducted preliminary investigation is paramount to the successful prosecution of a case, and may bring the case to a satisfactory conclusion, thereby eliminating the need for a follow-up investigation.

**PROCEDURE:**

I.    **INVESTIGATION DUTIES:**  In general, patrol deputies will conduct the preliminary investigation of most cases, and follow-up if circumstances prevail. Any other follow-up investigations will be conducted by the Criminal Investigations Division.

    **A.**  The first deputy arriving at an incident scene will:

        **1.**  Protect life.

        **2.**  Render aid.

        **3.**  Secure and protect the crime scene.

        **4.**  Secure and protect evidence.

        **5.**  Call for any assistance necessary.

    **B.**  The deputy conducting the preliminary investigation will:

        **1.**  Observe all conditions, events and remarks, and record them for the incident report.

        **2.**  Interview the complainant and/or victim and ensure that witnesses are located and interviewed.

        **3.**  Ensure that evidence is properly collected and processed.

        **4.**  Locate and interview the suspect, if possible.

*August 1, 2001*

**G.O. 20.02**

5. Arrest the perpetrator of the crime, if probable cause can be determined.

6. Complete incident report, including all details of the investigation along with any additional forms that are necessary.

7. Initiate notification of others (units) who may be responsible for further investigation or follow-up.

## II.   GLOSSARY:

<u>PRELIMINARY INVESTIGATION</u> - The activity that begins when uniformed deputies arrive at the scene of an incident.  The activity will continue until such time as postponement of the investigation or transfer of responsibility will not jeopardize the successful completion of the investigation.

**INDEXING:**

CONDUCTING PRELIMINARY INVESTIGATIONS

DRAFTED BY:  jdr/lkt July 18, 2001

**Sheriff Ken J. Mascara**

*August 1, 2001*

### ST. LUCIE COUNTY SHERIFF'S OFFICE

| | **Amends:**<br>G.O. 27.01 (09/01/07) | **Effective:** October 1, 2007 | **General Order: 27.01** |
|---|---|---|---|
| | | **Title: Internal Investigations** | |
| | | **Accreditation Standards:**<br>**CFA** & 11.05, 27.01, 27.02, 27.04<br>**CALEA** & Ch. 52<br>**FCAC** & 4.14, 4.15 | **Attachments:**<br>**FCN:** 002, 003, 253 |

**CONTENTS:** This order consists of the following numbered sections:

I.      RESPONSIBILITIES AND AUTHORITY
II.     INVESTIGATIVE PROCESS
III.    INVESTIGATIVE CONCLUSION
IV.     INTERNAL AFFAIRS RECORDS
V.      EARLY DETECTION SYSTEM
VI.     CONFIDENTIALITY OF INVESTIGATIONS
VII.    GLOSSARY

**PURPOSE:** The purpose of this General Order is to establish guidelines for the coordination of internal investigations.

**SCOPE:** This order applies to all members.

**DISCUSSION:** It is the policy of the Sheriff's Office to investigate all complaints against the agency and its members. This policy will be carried out in a manner that ensures prompt corrective action when Sheriff's Office members conduct themselves improperly. Citizen complaints are frequently based upon misunderstanding of laws or procedures. When possible, they should be resolved during the initial contact by demonstrating a sincere desire to hear and understand the problem and conveying appropriate information to the complainant.

**PROCEDURE:**

I.    **RESPONSIBILITIES AND AUTHORITY:**

    A. **Organization:**

        1.  The Internal Affairs Unit will report directly to the Sheriff and/or the Chief Deputy.

        2.  Additional members may be assigned to the Internal Affairs Unit on a permanent or temporary basis, as directed by the Sheriff.

        3.  Internal Affairs Unit investigators are responsible for the administrative investigation of complaints and have full authority to discharge this responsibility.

        4.  Internal affairs investigators will be provided access to all Sheriff's Office facilities, equipment, and records as directed by the Sheriff.

        5.  Members will cooperate with and assist internal affairs investigators conducting administrative investigations.

G.O. 27.01

6. As each complaint is received, the Internal Affairs Unit, will notify, at the earliest possible time, the Sheriff, Chief Deputy, and the affected department director.

7. Internal investigations will not be conducted without knowledge and prior authorization of the Sheriff or the Chief Deputy.

B. **Function:** The Internal Affairs Unit has as its major functions:

1. Receiving, recording, registering, and controlling the investigation of complaints against members;

2. Supervising and controlling the investigation of alleged or suspected misconduct within the agency; and

3. Maintaining the confidentiality of the internal affairs investigation and records.

4. The Internal Affairs Unit will act for the Sheriff as a fact-finding section and will not make any recommendations as to the discipline and/or training resulting from the investigation, unless requested to do so by the Sheriff.

5. The Internal Affairs Unit will provide a systematic, objective, and impartial investigation regarding allegations of inappropriate behavior by Sheriff's members.

## II. INVESTIGATIVE PROCESS:

A. As an integral part of the administrative control process, the Internal Affairs Unit coordinates and exercises staff supervision on behalf of the Sheriff over matters involving Sheriff's Office members who receive a complaint of misconduct. The Internal Affairs Unit may also conduct other investigations as required by the Sheriff. However, the Internal Affairs Unit will not conduct criminal investigations against bargaining unit members.

B. The Internal Affairs Unit will ensure that any allegation made against a member of the Sheriff's Office is thoroughly and objectively investigated.

C. Administrative investigations will be conducted in conformance with Florida law and current policies and procedures of the Sheriff's Office.

D. Once a complaint has been filed and an investigation has been initiated, the subject of the investigation will be notified in writing by the Internal Affairs Unit (FCN 002). The nature of the allegation(s) and the name of the complainant will be provided to the subject of the investigation. The subject will be provided, in writing, their rights and responsibilities relative to the investigation. In cases where advanced notification would jeopardize the investigation, the notification may be given immediately prior to the interview of the subject.

E. When there is a complaint of a criminal violation(s), it will be the decision of the Chief Deputy to decide if the Internal Affairs Unit or the Criminal Investigation Division will conduct the investigation.

**F.**  Investigative questions will be directly related to the matter under investigation.

    **1.**  When criminal prosecution is contemplated against personnel who are to be interviewed, appropriate Miranda warnings will be given and counsel or other representatives will be allowed to be present.

    **2.**  When criminal prosecution is not contemplated, members under investigation are required to answer all questions related to the performance of their duties.  Failure to answer such questions may result in disciplinary action, including dismissal (FCN 003).  However, no information obtained through compelled statements may be used in future criminal prosecution.  Questions must be specific and narrowly related to the member's duties or behavior.  At the request of the member under investigation, he or she shall have the right to be represented by counsel or any other representative of his or her choice.

    **3.**  If the right to have counsel or other representatives present is exercised, their involvement may be limited as to not interfere with the interview.

**G.**  Sheriff's members may be ordered to submit to breath tests, photographs, financial disclosure, or other such tests or examinations that are specifically directed or related to a particular investigation being conducted.  Members will not be ordered to submit to a line up, voice prints, polygraph, and hand writing exemplars.

**H.**  Members may volunteer to take a polygraph administered by the Sheriff's Office, however, bargaining unit members will not be requested to volunteer for such test.

**I.**  Members under investigation will not be subjected to offensive language or threatened with transfer, termination, or disciplinary action.

**J.**  Agency offices, vehicles, lockers, and issued or assigned property may be subject to a warrantless search at any time based on reasonable suspicion.

**K.**  Personal property will not be subjected to search or seizure without probable cause and/or warrant, as required by law.

**L.**  The member's immediate family will not be required to give statements in administrative investigations, but may volunteer such statements.

**M.**  In accordance with Florida law, investigations must be completed and written notice of proposed discipline rendered within 180 days of the date of the receipt of the complaint.  However, the St. Lucie County Sheriff's Office will strive to complete most investigations within 30 days after receipt of the initial complaint, unless an extension is granted by the Chief Deputy.  Weekly status reports will be submitted as necessary.

**N.**  In cases where the Sheriff determines that (1) the member's absence from the work location is essential to the investigation and (2) the member should not be reassigned to other duties pending completion of the investigation, the member will be placed on Administrative Leave with pay. The Sheriff will make every effort to complete the investigation within forty-five (45) days during any Administrative Leave status.

     *October 1, 2007*

**O.** If a member is arrested for, or charged with, a felony or misdemeanor, he or she may be suspended without pay during the investigation period and any subsequent administrative appeals. While suspended without pay, the member may use compensatory time or annual leave. Captains or above are authorized to suspend a subordinate without pay under those circumstances upon approval of the Sheriff or designee. If the criminal charge(s) against the member is dismissed and the member is not disciplined as a result of the administrative process, the Sheriff will restore the member's pay for the period of suspension or any used compensatory or annual leave time.

## III.  INVESTIGATIVE CONCLUSION:

**A.** All cases of member misconduct that are investigated and documented by line supervisors, or any other supervisor, will be forwarded for review to the Internal Affairs Unit via their chain of command.

**B.** Files complete with Statements of Charges, where applicable, will be hand delivered to the Internal Affairs Unit.

    **1.** If investigated by the member's line supervisor, as an administrative inquiry, files will be hand delivered via the chain of command to the member's department director and then to the Internal Affairs Unit.

    **2.** Subsequently, each person reviewing the file will date and sign their name to the Citizen's Complaint Control Form (FCN 253) or Internal Affairs Review Log. Each person will ensure that the confidentiality of the file is maintained while a disposition is pending.

    **3.** If the supervisor determines the administrative inquiry allegation is a "misunderstanding of law" on the part of the complainant, notification will be made to Internal Affairs of the findings. No case file will be required to be sent through the chain of command. Investigative notes will be retained by the investigating supervisor for a period of at least six (6) months.

**C.** The Internal Affairs Unit will review all internal affairs or supervisory investigative files to ensure a thorough and objective investigation was completed.

**D.** A preliminary recommended finding and case file will be forwarded to the member's department director, who will proceed as outlined in General Order 15.02.

**E.** The entire file will be returned to the internal affairs investigator if additional investigation is required. The investigator will complete an addendum to the investigation and resubmit the file.

## IV.  INTERNAL AFFAIRS RECORDS:  Internal Affairs/Citizen's Complaint - Receipt, Registration, and Control:

**A.** Upon receipt of a complaint, the Internal Affairs Unit will assign a control number and enter the same into the designated Internal Affairs computer software program.

    **1.** The numbering system will be sequential, prefixed by the year then the number.

    **2.** The complainant's name and contact information, name of the person complained about, date received, type of complaint, case number (if applicable), and the final disposition will all be logged into the designated Internal Affairs computer software program.

**B.** The Internal Affairs Unit will ensure that a file is prepared for every complaint assigned. The file will contain the original report, offense reports, photographs, or other pertinent documentation.

   **1.** Folders will be filed in sequence, by year, and kept secure while in the custody and control of the Internal Affairs Unit.

   **2.** No one will be allowed access to the files without authority from the Sheriff, Chief Deputy, or supervisor of Internal Affairs.

   **3.** No portion of the file may be copied or reproduced by anyone, other than members assigned to the Internal Affairs Unit.

   **4.** Digital audio files will be cross referenced by the complaint control number and maintained in the investigative file.

**C.** At the direction of the Internal Affairs Unit, a single copy of the original file may be produced as a work file copy for the convenience of the investigator.

**D.** Whether investigations are completed by the member assigned to the Internal Affairs Unit or completed by members assigned at the division level, the Internal Affairs Unit will ensure that investigations are conducted in a timely manner. The Internal Affairs Unit will advise the investigator of the scheduled completion date (normally 45 days after the receipt of the complaint).

**E.** The complainant will be notified in writing of the disposition of the complaint upon conclusion of the investigation. The notification will be documented and maintained in the investigative file.

**F.** Any sustained allegation that is a violation of Florida Statute 943.13 (4) or (7) will be reported to the Florida Department of Law Enforcement, Division of Criminal Justice Standards and Training.

**G.** All records pertaining to administrative investigations will be maintained in a secured area under the control of the Internal Affairs Unit.

**H.** Members having a job related need (e.g., annual evaluation, current investigation) for information concerning another member's disciplinary file, may request such information in person, by telephone, or in writing to the Internal Affairs Unit supervisor.

**I.** Members requesting to view their own disciplinary records may schedule an appointment through the Internal Affairs Unit.

   **1.** Members may obtain one copy of his or her disciplinary file without charge.

   **2.** Additional copies will be charged at a rate established in General Order 29.01. The Internal Affairs Unit supervisor will have the discretion to decide if reproduction costs are levied.

**J.** Citizens or members requesting another member's file without having a job related need for the information can make a public records request through the Records Unit. The Internal Affairs Unit supervisor will notify the Chief Deputy when records are requested through F.S. 119.

*October 1, 2007*

**K.** At the discretion of the Chief Deputy, the Internal Affairs Unit supervisor will review the previous year's records to determine whether files are eligible for destruction. The following guidelines apply:

    **1.** Completed administrative investigations classified as exonerated, unfounded, or not sustained may be destroyed after one year. *(Allegations that allege excessive use of force or treatment of persons in custody will be retained for a minimum of two years.)*

    **2.** Sustained investigations may be destroyed according to Florida Bureau of Archives guidelines. The period for destruction of these cases may range from three to five years.

    **3.** The master control log for administrative investigations must be retained for 25 years after a member's separation from the agency.

**L.** At the conclusion of the prescribed period, the aforementioned files may be destroyed in accordance with the State of Florida General Records Schedule for Law Enforcement Agencies.

**M.** A listing of files to be destroyed will be supplied to the Sheriff and Chief Deputy before destruction. The designated files will be destroyed and notification will be sent to the Florida Department of State, Bureau of Archives and Records Management, and the Sheriff.

**N.** Administrative investigation files will not be placed in the member's personnel file in the Human Resources Unit.

**O.** The Internal Affairs Unit will prepare an annual statistical summary of complaints and dispositions for the Chief Deputy.

**P.** Internal Affairs investigations with final dispositions are open for public review. Inactive internal investigations which are not closed, are open for public review after 180 days.

**Q.** Cases that have Criminal Intelligence Information and/or ongoing Criminal Investigation Information will be guarded pursuant to F.S. 119.

## V. EARLY DETECTION SYSTEM:

**A.** The Internal Affairs Unit will review all complaints of misconduct to identify members who have a pattern of repeated complaints.

**B.** The department director will be notified when any member exceeds the threshold of alleged misconduct within a six-month period.

**C.** The department director may assign a supervisor to provide the member with coaching, training, or other action deemed appropriate.

## VI. CONFIDENTIALITY OF INVESTIGATIONS:

**A.** Any person who is a participant in an internal investigation and reveals investigation information before it becomes public record, is guilty of a misdemeanor and punishable under Florida law. Participants will include the complainant, subject of the investigation, investigator, and any witnesses.

G.O. 27.01

**B.** Disclosure of any information obtained in reference to an  open internal investigation before that complaint, document, action, or proceedings becomes public record is a violation of Florida law and prohibited by the St. Lucie County Sheriff's Office.  Members receiving complaints and involved in these investigations will not discuss these matters with any person(s) other than those person(s) as authorized by Internal Affairs.  Violation of this procedure will result in disciplinary action.

## VII.  GLOSSARY:

ADMINISTRATIVE INQUIRY - The preliminary review of an incident or situation normally conducted by the immediate supervisor.  The immediate supervisor will determine if any improper action may have been committed by the agency or one of its members.  If information is revealed that supports an allegation of misconduct, an administrative investigation will be initiated.

ADMINISTRATIVE INVESTIGATION - The systematic, objective, and impartial method of investigating complaints of inappropriate behavior to determine if a violation of Sheriff's Office administrative rules, orders, directives, or procedures has been committed by a Sheriff's Office member.

COMPLAINT OF MISCONDUCT - An accusation, or charge accusing a member of violating statue, ordinances, a policy, procedure, rule, or regulation.  This DOES NOT INCLUDE citizen complaints that result from a complainant's misunderstanding of law, or Sheriff's Office policies or procedures.

CORRECTIVE ACTION - Action intended to modify or improve behavior and elicit compliance with established policies and procedures, i.e., letter of counseling, reprimands, and sanctions.

INTERNAL AFFAIRS INVESTIGATION - An investigation by trained and qualified members who do not have control of the person(s) being investigated for alleged inappropriate behavior, misconduct, and criminal violations.

**INDEXING:**

DISCIPLINARY ACTION
INTERNAL AFFAIRS INVESTIGATION
INTERNAL AFFAIRS UNIT

DRAFTED BY:  jdr/lkt  September 6, 2007

**Sheriff Ken J. Mascara**

*October 1, 2007*