UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 2:16-cv-14072-ROSENBERG/HOPKINS

VIOLA BRYANT, as Personal Representative
of the Estate of GREGORY VAUGHN HILL, JR.,

        Plaintiff,

v.

SHERIFF KEN MASCARA, in his Official
Capacity as Sheriff of St. Lucie County and
CHRISTOPHER NEWMAN,

        Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CHRISTOPHER NEWMAN'S MOTION FOR SUMMARY JUDGMENT

      COMES NOW, the Plaintiff, Viola Bryant, as Personal Representative of the Estate of Gregory Vaughn Hill, Jr., by and through undersigned counsel, and respectfully requests this Honorable Court deny Defendant Christopher Newman's Motion for Summary Judgment [DE 67], and in support thereof, states as follows:

**I.**    **Material Facts**

      Plaintiff adopts the facts set forth in her Statement of Material Facts filed contemporaneously with this Response, as well as any specific facts detailed herein.[1]

## MEMORANDUM OF LAW

**II.**    **Summary Judgment Standard**

---

[1] Pursuant to this Court's Order [DE 8], the Plaintiffs have filed contemporaneously herewith a separate Statement of Material Facts in support of their Motions for Summary Judgment."

A party is entitled to summary judgment when it can show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997). Essentially, the court's function at the summary judgment stage is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the "initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absences of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On summary judgment, "the evidence of the non-movant is to be believed." Anderson, 477 U.S. at 255. "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all inferences . . . in his favor." United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991).

## III.    Complaint's Allegations

Essentially, the Complaint, filed on January 8, 2016, contains five Counts:

Count I – Claim Pursuant to 42 U.S.C. Section 1983, Municipal Liability against Sheriff Ken Mascara in his official capacity of Sheriff of St. Lucie County.

Count II - Claim Pursuant to 42 U.S.C. Section 1983, against Christopher Newman for his individual actions as a Deputy Sheriff of St. Lucie County.

Count III – Negligence against Sheriff Ken Mascara in his official capacity of Sheriff of St. Lucie County under the state laws of Florida.

2

Count IV - Battery against Christopher Newman for his individual actions as a Deputy Sheriff of St. Lucie County under the state laws of Florida.

Count V – Negligence resulting to damage to real property against Sheriff Ken Mascara in his official capacity of Sheriff of St. Lucie County. (See Compl.)

This Response is in opposition to Defendant Deputy Christopher Newman's Motion for Summary Judgment as to Counts II and IV.

**IV.    Record Facts Cited by Defendant are all Disputed by Competent Testimony**

Gregory Hill was shot and killed inside his home by St. Lucie County Sheriff's Deputy Christopher Newman on January 14, 2014, at approximately 3:24 PM, after Deputy Christopher Newman and Deputy Edward Lopez, spent approximately 60 seconds at his residence. Mr. Hill lived across from the school that his children attended. Prior to picking up one of his children, Mr. Hill was in his garage listening to music which bothered another arriving parent, Stefani Ann Mills, to the point that she called 911. (See Exhibit "E" – Mills depo. pg. 49/lines 22 – pg. 50/line 5). Shortly after Ms. Mills got the kids situated in her car, Mr. Hill closed his garage door. (See Exhibit "E" – Mills depo. pg. 24/lines 7-15). Other witness said music was no longer audible once the garage door was down. That includes parent Joseph Hall (See Exhibit "G" – Hall depo. pg. 16/lines 15-18), first grade teacher Donna Hellums (See Exhibit "J" – Hellums depo. pg. 7/lines 11-12), school principal Juanita Wright ("If that's why the police were called, because the music was loud… we didn't hear any loud music." (See Exhibit "H" – Wright depo. pg. 42/lines 23- pg. 43/line 2), teacher Lisa McGuire (See Exhibit "I" – McGuire depo. pg. 11/lines 4-8), school worker David Morales (See Exhibit "K" – Morales depo. pg. 9/lines 24-25) and Mr. Hill's own daughter, Destiny Hill, who was sitting outside when her father was shot and killed. (See Exhibit "L" - D. Hill depo. pg. 16/lines 3-4).

Deputy Newman's timeline includes many facts which have been entirely refuted by other witnesses. For instance, the garage door was never fully open for any period of time during the approximately 60 seconds the Deputies were on Mr. Hill's property. Despite the Deputies' contentions that the garage door was all the way up long enough for Deputy Newman to scream several commands at Mr. Hill, no one saw the door all the way up or heard several commands. Teacher Donna Hellums said the garage door only went up halfway (See Exhibit "J" - Hellums depo. pg. 20/lines 16-19). Teacher Lisa Maguire said the door rose "maybe above the waist a little bit." (See Exhibit "I" – McGuire depo. pg.6/lines 19-21). School worker David Morales never saw the garage door above knee level. (See Exhibit "K" – Morales depo. pg. 21/lines 3-10). Parent Lizbeth Enriquez-Ruiz never saw the garage door completely open. . (See Exhibit "F" – Ruiz depo. pg. 19/lines 23-25). She testified that the door was "like halfway of the door being open." (See Exhibit "F" – Ruiz depo. pg. 20/lines 9-12). School principal Juanita Wright said she saw the garage only "maybe a foot" open. (See Exhibit "H" – Wright depo. pg. 39/lines 15-20). While parent Joseph Hall watched, the garage door was down or just about all the way down. (See Exhibit "G" – Hall depo. pg. 16/line 23- pg. 17/line 4). Even Stefani Mills, who called the police, said the garage was closed by the time her and the children were back to the car. (See Exhibit "E" – Mills depo. pg. 24/lines 8-10). She saw it rise quickly. She saw the police "get startled" and one fired his gun. (See Exhibit "E" – Mills depo. pg. 24/lines 17-20). He visibly "jumped back." (See Exhibit "E" – Mills depo. pg. 26/line 19). She never saw anyone on the other side of the garage door. (See Exhibit "E" – Mills depo. pg. 51/lines 9-12). Mr. Hill's daughter, Destiny Hill, was also watching and had a special interest, as that was her home. Even she only saw the door only raise "halfway." (See Exhibit "L" – D. Hill depo. pg. 15/lines 10-17).

Hindsight has also substantially changed the testimony to the utterances Deputy Newman and Deputy Lopez claim to have directed to Gregory Hill. Deputy Newman admitted he heard Deputy Lopez say literally nothing on the scene. (See Exhibit "P" – Newman depo. pg. 28/lines 14-19). Deputy Lopez heard Deputy Newman utter one word: "Hey." (See Exhibit "A" – Lopez depo. pg. 51/lines 18-20). Meanwhile, not one single eyewitness/earwitness heard any statements such as "Gun. Drop the Gun," "Sheriff's office," "gun, gun, gun, drop the gun, drop the gun," or any other commands related to a firearm whatsoever despite the fact that Deputy Newman testified that he was "screaming at the top of my lungs" and "as loud as I could." (See Exhibit "P" - depo. Newman pg. 26/lines 8-11). Not Miss Hill, as she only heard the Deputies say to turn down the music (See Exhibit "L" - D. Hill pg. 23/lines 16-23). Not Ms. Mills who did not hear any words used. (See Exhibit "E" – Mills depo. pg. 27/lines 21-23). Parent Joseph Hall was the closest to the Deputies and the only command he heard was an officer telling Mr. Hill to "Get on the floor. Mr. Hall also testified that he heard that command at the same time the other officer started shooting. (See Exhibit "G" – Hall depo. pg. 10/lines 20-22, 21-24). The subject incident describes the essence of a civil rights violation. Only the Sheriff's Deputies have a different version.

Furthermore, no witnesses have testified that they saw a gun in Mr. Hill's possession. Miss Hill saw "nothing" in her father's hand. (See Exhibit "L" – depo. D. Hill pg. 22/lines 1-5). Ms. Mills never saw anyone on the other side of the door, despite such a contention being impossible according to the Deputies' versions. (See Exhibit "E" – Mills depo. pg. 51/lines 9-12, and 18-22). Parent Joseph Hall said the same thing, he saw no one. (See Exhibit "G" – Hall depo. pg. 16/lines 19-22). Parent Lizbeth Enriquez-Ruiz said she assumed the garage door was moving automatically because she didn't see feet or anyone inside. (See Exhibit "F" – Ruiz depo. pg.

21/lines 23- pg. 22/line 8). Mr. Morales only saw legs on the other side. (See Exhibit "K" – Morales depo. pg. 11/lines 10-13). Ms. McGuire saw "one arm down and the other one holding the garage door" and thus also saw no gun. (See Exhibit "I" – McGuire depo. pg. 6/lines 17-19). Finally, Ms. Hellums did not see an occupant behind the door. (See Exhibit "J" - Hellums depo. pg. 14/lines 18-20). Between the door not raising as high as the Deputies claimed and multiple independent eyewitnesses unequivocally testifying that they saw nothing more than knees or an empty hand, there are volumes of facts which warrant denial of summary judgment.

Finally, no gun was found in Mr. Hill's hand or by his side. An unloaded gun was found in Mr. Hill's pocket. It lacked any blood splatter, brain matter or other forensic material which would be expected, given the multitude of gunshots to Mr. Hill's right side. (See Exhibit "M" – Indian River Crime Laboratory Reports), (See also Exhibit "C" – Medical Examiner's Report). Further, it lacked conclusive fingerprints or DNA to identify him. (See Exhibit "M" – Indian River Crime Laboratory Reports). Finally, experts have indicated Mr. Hill could not have placed a gun back in his pocket given the level of damage caused by Deputy Newman's headshot and the multiple shots to the right side of Mr. Hill's body. (See Exhibit "N" -Anderson depo. pg. 62/lines 5-10).  One expert discussed an entirely plausible scenario leading to a conclusion that the gun might have been planted on Mr. Hill after he was killed. (See Exhibit "O" – Bedard depo. pg. 40/lines 9-25 – pg.44/lines 1-25).

In conclusion, it is simply impossible to reconcile the unsupported claims of Mr. Hill "holding a gun in his right hand," that he was given "numerous orders to drop the gun," that the garage door was ever sufficiently open for there to be an "identification" that Defendants were law enforcement, or otherwise that Mr. Hill was a threat in any way at any time to anyone. Both

Deputies even admit that the gun they claim was in Mr. Hill's hand was never directly pointed at either Deputy. Deputy Newman testified that the gun was never directly pointed at any officer or human being. (See Exhibit "P" – Newman depo. pg. 69/lines 7-12 and pg. 48/lines 14-18) and that the garage came down before the (*what we contend was a fictional*) gun could even be raised, admitting Hill would have to shoot blindly through a closing garage door if he planned to shoot at anyone. (See Exhibit "A" – Lopez depo. pg. 59/lines 11-24).

In fact, Defendant's failure to give the other side of the story truly gives the undersigned pause as to whether it is even a fair Motion under rules requiring candor to the Court and Plaintiff.

## V.      Defendant Deputy Newman is not entitled to Summary Judgment on Count II (42 U.S.C. Section 1983).

Regarding excessive force and/or use of deadly force, Defendant claims, "The question is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation, citing Graham v. Connor, 490 U.S. 386 (1989). Defendant also correctly points out that, "Reasonableness depends on all circumstances relevant to an officer's decision to use force, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight," also citing Graham.

As the facts will clearly show here, this fatal shooting by Deputy Newman was not only unreasonable and wrongful, but went against clear police standards governing use of force. Further, the shooting was initiated solely due to loud music, which was not even a crime. According to Deputy Lopez, a noise complaint is not an arrestable offense; they tell people to

turn it down. "All we can do is ask them to be courteous and, maybe, lower the music a little, but that's the extent of that." (See Exhibit "A" -Lopez depo. pg.30/lines 3-14). "Can we take further action? Not really." "I don't believe it's a violation." (See Exhibit "A" -Lopez depo. pg.31/lines1-7). There was no threat according to witnesses and biomechanical science. There was no arrest or detention sought or probable cause had,  and there was no evading or threat to do so on Mr. Hill's part. Mr. Hill was shot by Deputy Newman in his own home and killed by one of the several bullets shot through his closed garage door.

Additionally, the Defendant also cites another very important qualifier in an attempt to judicially end a case by summary judgment, "The Supreme Court has said **that if the suspect threatens** the officer with a weapon or there is  probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm, then it is constitutionally permissible to use deadly force to prevent the escape of the suspect." McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1246 (11th Cir 2003), citing Tennessee v. Garner, 471 U.S. 1 (1985)(emphasis added).

In Mr. Hill's case, he presented no threat. He displayed no weapon. There are overwhelming questions of material fact about whether Deputy Newman saw a gun in Mr. Hill's hand, given that no other independent witnesses saw a gun in Mr. Hill's hand. Further, biomechanical science and experts will say that Mr. Hill did not have a gun in his hand. Forensic evidence, such as a lack of blood, DNA, brain matter or fingerprints on the gun, which was later found in Mr. Hill's back pocket after his death, shows he was not holding a gun. Finally, at the time of the deadly shooting, Mr. Hill was completely in the curtilage of his own home with a closed garage door between himself and Deputy Newman. There is also no allegation that Mr.

Hill committed a crime on the day in question. The facts only support denial of Defendant's Motion for Summary Judgment.

## VI. Deputy Newman is not entitled to Qualified Immunity on Count II.

### A. Qualified Immunity

Qualified immunity "protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Lewis v. City of West Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citations omitted); see also Hardin v. Hayes, 957 F.2d 845, 849 n.7 (11th Cir. 1992) ("The doctrine balances society's interest in providing a remedy for injured victims and discouraging unlawful conduct with that of enabling public officials to act independently and without fear of consequences.").

> The requirements for qualified immunity are as follows:
> To receive qualified immunity, the officer must first show that he acted within his discretionary authority . . . . Once discretionary authority is established, the burden shifts to the plaintiff to show that qualified immunity should not apply. In analyzing the applicability of qualified immunity, the Court has at its disposal a two-step process. Saucier v. Katz, 533 U.S. 194, 201 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Traditionally, a court first determines whether the officer's conduct amounted to a constitutional violation. Id. Second, the court analyzes whether the right violated was "clearly established" at the time of the violation. Id. . . . Thus, if the violated right was not clearly established, qualified immunity still applies.

Lewis, 561 F.3d at 1291.  The lower courts have discretion to decide which of the two prongs to consider first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  Finally, the Eleventh Circuit has held that the qualified immunity standard demands a fact-intensive inquiry.  Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997).  *See* Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. at 2738; *see also* Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir.1993).

**a. The Fourth Amendment Constitutional Right to be free from the use of excessive force**

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the court of an arrest."  Lee, 284 F.3d at 1197.  Excessive force claims are analyzed under the Fourth Amendment's objective reasonableness standard.  Graham v. Conner, 490 U.S. 386, 395 (1989).  A district court must evaluate whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to the officer's underlying intent or motivation.  Lee, 284 F.3d a 1198 n. 7.  Whether the amount of force used was proper hinges on "whether a reasonable officer would believe that his level of force is necessary in the situation at hand."  Id. at 1197.  As such, the "[u]se of force must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (quoting Graham, 490 U.S. at 396).  Furthermore, the court must remain mindful that "police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Graham, 490 U.S. at 396-97.

The assessment of whether an officer used reasonable force "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against

the governmental interests at stake." Id. at 396 (internal quotations omitted).  Additionally, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. However, "[t]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Lee, 284 F.3d at 1198 (reciting the Graham factors).  "In addressing these factors, the Court should consider the need for the application of force, the relationship between the need and amount of force used, and the extent of the injury inflicted." Pace v. City of Palmetto, 489 F. Supp. 2d 1325, 1331 (M.D. Fla. 2007) (citing Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).

Taking the facts in the light most favorable to Plaintiff, the relevant issue for this Court to determine is whether it was reasonable for Deputy Newman to fire his weapon at a man in his own home through a closed garage door. This Court must accept all of the witness' versions of the events as true: that there was not, at any time, a gun being held by Gregory Hill on the day he was shot and killed by Deputy Newman.

The first Graham factor, the severity of the crime, weighs heavily in favor of Mr. Hill and his estate. This was a complaint over loud music and even Deputy Newman stated that a noise complaint was not a crime. Neither Deputy Newman, nor Deputy Lopez could delineate what "felony" or "crime" had occurred prior to his interaction with the Mr. Hill. They did no background check on Mr. Hill before this incident. (See Newman depo. pg.28/line 21 – pg. 29/line 6). Mr. Hill also was not being investigated for any other criminal activity. (See Exhibit "P"-Newman depo. pg.86/lines 8-10).  As Deputy Lopez put it, loud noise is not an arrestable offense: "All we can do is ask them to be courteous and, maybe, lower the music a little, but

that's the extent of that." (<u>See</u> Exhibit "A" -Lopez depo. pg.30/lines 3-14). "I don't believe it's a violation." (<u>See</u> Exhibit "A" -Lopez depo. pg.31/lines1-7). Therefore, there was no probable cause to conduct an investigation for any crime.

The second <u>Graham</u> factor—danger to the officer—also weighs in favor of Gregory Hill's estate.  It is understood but disputed that Deputy Newman, at a bare minimum, believed there was a gun in Mr. Hill's possession or he says that in hindsight. However, this is a point of extreme contention. Destiny Hill said Mr. Hill's hand was empty (See Exhibit "L" – depo. D. Hill pg. 22/lines 1-5) and Lisa McGuire saw one hand on the door and another arm down (<u>See</u> Exhibit "I" – McGuire depo. pg. 6/lines 17-19). No one saw a gun or the scene the Defendant's described: Gregory Hill in full view, receiving commands and slowly raising a gun. Finally, any gun that had been in Mr. Hill's hand would have been recovered with fingerprints, blood splatter, and would have been at or by Mr. Hill's side where he fell. It was not. Thus, there are material facts for the jury to consider and weigh. Deputy Newman specifically chose to initiate lethal force through a closed garage door without coordinating with or waiting for backup.

As for the third <u>Graham</u> factor—risk of flight— Mr. Hill was in his own home. There was no risk of flight, nor any reason to flee. Mr. Hill had not done anything wrong other than play music a little too loud, albeit subjectively so.

A reasonable jury could find Deputy Newman violated the constitutional rights of Gregory Hill by employing excessive force.

**b.    Clearly Established Law**

The qualified immunity analysis next requires this Court to determine whether Mr. Hill's right to be free from excessive force was clearly established at the time of the incident. The relevant determination is "whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation he confronted." Id. at 202.  A right may be clearly established in one of two ways: "(1) by citing controlling and materially similar case law declaring the official's conduct unconstitutional, or (2) by demonstrating that the official's conduct lies so obviously at the core of what the Fourth Amendment prohibits that the unlawfulness of the conduct should have been readily apparent to the official, notwithstanding the lack of case law." Priester v. City of Riviera Beach, 208 F.3d 919, 926 (11th Cir. 2000).

For purposes of this analysis, Plaintiff chooses the former method of establishing that Mr. Hill's right to be free from excessive force was clearly established.  The United States Supreme Court has held: **"[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."** Tennessee v. Garner, 471 U.S. 1, 11 (1985)(emphasis added).

Further, "[a] police officer may not seize an unarmed, non-dangerous suspect by shooting him . . ." Id.  Even Deputy Newman admits that a gun was never pointed at any officer or human being. (See Exhibit "P" – Newman depo. pg. 69/lines 7-12 and pg. 48/lines 14-18). Although Deputy Newman maintains Mr. Hill was raising a gun in Deputy Lopez's direction as the garage door was going down, this Court must accept Plaintiff's version of the facts—as according to a vast majority of witnesses and biomechanical science--there was no gun in Mr. Hill's hand and this scene did not take place as the Defendant's Motion for Summary Judgment contends.

Therefore, Deputy Newman was clearly on notice of the prohibition against shooting at an unarmed suspect and every reasonable officer would conclude that shooting an unarmed person through a closed garage door who was not under investigation for any crime, as contended under the facts as stated by Plaintiff, would be clearly unlawful.  A reasonable jury could find in favor of Plaintiff.

13

c.    **Substantive Due Process under the Fourteenth Amendment**

If the Court finds the Fourth Amendment does not apply to the facts of this case, Plaintiff submits Mr. Hill's rights were violated under the Fourteenth Amendment.

"'The touchstone of due process is protection of the individual against arbitrary action of the government,' whether the fault lies in a denial of fundamental fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objection." County of Sacremento v. Lewis, 523 U.S. 833, 845-46 (1998) (internal citations omitted).  This protection governs both legislative and executive action. Id. at 846.  In cases dealing with abusive executive action, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id. (quoting Collins v. Harker Heights, 503 U.S. 115, 129 (1992).

The level of executive abuse of power that amounts to a constitutional violation is that which "shocks the conscience". Id. See also Rochin v. California, 342 U.S. 165, 171-73 (1952) (the forced pumping of suspect's stomach offends due process as conduct "that shocks the conscience" and violates the "decencies of civilized conduct."); Breithaupt v. Abram, 352 U.S. 432, 435 (1957) (conduct that "'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency' violates due process).  "While the measure of what is conscience shocking is no calibrated yard stick, it does, . . . 'poin[t] the way.'" Lewis, 523 U.S. at 847 (quoting Johnson v. Glick, 481, F.2d 1028, 1033 (2nd Cir. 1973).  However, the Fourteenth Amendment does not "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." Daniels v. Williams, 474 U.S. 327, 332 (1986).  The easiest case to find a constitutional violation is through "conduct intended to injure in some way unjustifiable by any

government interest." <u>Lewis</u>, 523 U.S. at 849.  Essentially, "purpose to cause harm" is needed for due process liability.  <u>Id.</u> at 854.

In <u>Lewis</u>, a police officer pursued a non-violent suspect and his passenger on a motorcycle at high speeds.  The police officer unintentionally hit the passenger as he fell off the motorcycle.  <u>Id.</u> at 836-37.  The Court held that more than "negligence", "recklessness", "carelessness" and "conscious disregard" is required to achieve liability in a police pursuit case.  <u>Id.</u> at 854-55.  In this case, Deputy Newman's 's behavior is "conscience-shocking."

**d.     Deputy Newman's actions "shock the conscience"**

Deputy Newman fired his weapon with a "purpose to cause harm" to Mr. Hill.  He said he was "eliminating a threat." (<u>See</u> Exhibit "P" – Newman depo.pg. 34.lines 7-9). Deputy Newman was clearly on notice of the prohibition against shooting at an unarmed suspect and every reasonable officer would conclude that shooting an unarmed person through a closed garage door who was not under investigation for any crime, as contended under the facts as stated by Plaintiff, would be clearly unlawful.  A reasonable jury could find in favor of Plaintiff.  Everything, taken in context, shows a clear violation of Plaintiff's Fourteenth Amendment rights.

**f.     Defendant's arguments made in his Motion for Summary Judgment are offensively one-sided**

As stated above, in the facts section of his Motion for Summary Judgment, Deputy Newman overwhelmingly relies on his own version of the facts to make his case for Summary Judgment. It ignores the volumes of counter evidence, including independent eye witness testimony, and sound expert opinion.

As the garage door never was seen to rise above Mr. Hill's head and Mr. Hill's head was never visible, it is entirely uncertain and is pure speculation to say what Mr. Hill could see or

identify the individuals outside his home as law enforcement officials. Further, witnesses stated Mr. Hill did not open the garage door more than a couple of feet. As conceded by Deputy Newman, a garage door opens bottom-up. As such, Mr. Hill would need to be standing far enough back to even see the shoes, pants, waist or other identifying dress of a law enforcement officer.

*Mr. Hill was opening the garage door with his left hand while holding a gun in his right hand.* (See Exhibit "P" – Newman depo. pg. 25/lines 23-25 – pg. 26/lines 1-4). Simply put, this is solely Deputy Lopez and Newman's telling of the incident. Literally every other witness says something to the contrary- that there was no gun in Mr. Hill's hand and that the door never opened to the extent the Deputies claim.

*Both deputies identified themselves and despite the orders, "Hill raised a gun on the direction of Deputy Lopez."* (See Exhibit "P" – Newman depo. pg. 26/lines 16-22). Deputy Lopez and Deputy Newman were standing next to each other on the opposite side of the garage door and its loud music. They could not hear each other's commands. (See Exhibit "P" – Newman depo. pg. 28/lines 14-19), and (See Exhibit "A" – Lopez depo. pg. 51/lines 18-20). The witnesses on the other side of the garage heard no specific commands from the Deputies other than one who heard "turn that music down." (see above). Mr. Hill was certainly on the louder side of his garage door and, according to most witnesses, the door never rose to head level. As such, the commands even if they were made, could not have been reasonably heard and interpreted by Mr. Hill.

**VII.   Defendant Deputy Newman is not entitled to Summary Judgment on Count IV (Battery) or to Sovereign Immunity on the Plaintiff's State Law Claim(s)**

"Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon the defendant either to lessen the risk or see that sufficient

precautions are taken to protect others from the harm that the risk poses." <u>Kaisner v. Kolb</u>, 543 So.2d 732, 735 (Fla. 1989). This standard certainly applies to governmental actors. <u>See Kaisner</u>, 543 So.2d at 735-36 ("We see no reason why the same analysis should not obtain in a case in which the zone of risk is created by the police."). <u>See</u> also <u>City of Pinellas Park v. Brown</u>, 604 So.2d 1222, 1225 (Fla. 1992) (high speed police suit caused bystander to wreck); <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1263 (11th Cir. 2001) (police officer involved shooting of a suspect through the windshield of his automobile).

Under Florida law, the offense of battery occurs when a person: (1) Actually and intentionally touches or strikes another person against the will of the other; or (2) Intentionally causes bodily harm to another person.

In addition to having a meritorious state law claim for the reasons cited above, Defendant cannot allege himself out of Counts simply because of wordsmithing. Whether by neglect of duty, neglect of mind, depravity or maliciousness, a jury is entitled to consider state law theories in addition to federal theories.

Because Deputy Newman's actions are not objectively reasonable under constitutional scrutiny and "shock the conscience," the state law claim of Battery must also survive this stage of the litigation as it is clear that, based on the facts taken in a light most favorable to Plaintiff, Deputy Newman acted with "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights . . ." of Mr. Hill. Fla. Stat. § 768.28(9)(a) and/or committed an unauthorized and legally improper touching of him by shooting him in his home with his firearm.

### VIII. <u>Defendant's Motion for Summary Judgment Ignores or Fails to Cite Facts which are Favorable to Gregory Hill.</u>

As noted above, there is an abundance of evidence that shows an entirely opposite perspective than what Deputy Newman contends in his defense of this suit, including lay fact and expert opinion. To not allow a jury to make its own determination and resolve the disputed issues of fact would further deprive Plaintiff of his civil rights and, in this unique instance, further reward a Defendant who refuses to consider anyone's facts but his own.

## CONCLUSION

For the foregoing reasons, and given that all facts must be taken in a light most favorable to Plaintiff, Defendant Christopher Newman's motion for summary judgment should be denied as it relates to all claims against Deputy Newman. At a bare minimum, there are genuine issues of material fact as to whether Gregory Hill possessed a gun, pointed a gun at Deputy Newman, posed any threat to Deputy Newman or Deputy Lopez, or was properly under any qualifying investigation or otherwise knew that he was even encountering law enforcement. Further, at the time he was killed, Mr. Hill was entirely within the curtilage of his own home and was not a threat to Deputy Newman or Deputy Lopez or the public. Finally, Deputy Newman's actions were contrary to standard protocol required in this instance. Accepting those facts as true, as this Court is required to do, requires this case to go before a jury on the federal and state claims against Deputy Newman.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and a copy hereof has been furnished to Summer M. Barranco, Esquire, Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304, by email to summer@purdylaw.com, and melissa@purdylaw.com, this 7th day of April, 2017.

Law Office of John M. Phillips, LLC

JOHN M. PHILLIPS, ESQUIRE
Florida Bar Number:  0477575
4230 Ortega Boulevard
Jacksonville, FL  32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorney for Plaintiff
jphillips@floridajustice.com
michele@floridajustice.com