**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 2:16-cv-14072-ROSENBERG/HOPKINS**

VIOLA BRYANT, as Personal Representative
of the Estate of GREGORY VAUGHN HILL, JR.,

        Plaintiff,

v.

SHERIFF KEN MASCARA, in his Official
Capacity as Sheriff of St. Lucie County and
CHRISTOPHER NEWMAN,

        Defendants.

_____/

<u>**PLAINTIFF'S MOTION FOR NEW TRIAL**</u>

      Plaintiff, VIOLA BRYANT, as Personal Representative of the Estate of GREGORY VAUGHN HILL, JR., by and through her undersigned counsel, moves this Honorable Court for a new trial. In support thereof, Plaintiff states the following:

      This cause came on for trial for six days commencing on May 17, 2018 and ending on May 24, 2018. Just before 5:00pm on May 24, 2018, the jury returned a perplexing or punitive verdict. [DE 223] The returned verdict was vastly inconsistent with the evidence presented at trial. Moreover, the verdict was influenced by improper evidence, incomplete evidence, juror confusion regarding essential instructions and key terms, material changes in testimony and expert opinions, and/or improper argument by the Defense. Singularly and as a whole the aforementioned issues were highly prejudicial to the Plaintiff and contributed to a verdict against the manifest weight of the evidence.

      Pursuant to Fed. R. Civ. P. 59, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows: After a jury trial for any reason or which a

new trial has heretofore been granted in an action at law in federal court…" Fed. R. Civ. P. 59(a). A judge should grant a new trial when, "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Lipphardt v. Durango Steakhouse of Brandon*, 267 F.3d 1183, 1186 (11th Cir. 2001).

A motion for new trial is committed to the sound discretion of the trial court, and a more lenient standard is applied than with a motion for judgment as a matter of law. *Kubiak v. S.W. Cowboy, Inc.*, No. 3:12-CV-1306-J-34JRK, 2016 WL 5933388, at *2 (M.D. Fla. Oct. 12, 2016). When considering a motion for new trial, the court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). The court is permitted to reweigh the evidence in determining whether to grant a new trial. *Id.* at 973

Though courts generally sustain jury verdicts if reasonable bases exist to uphold them, they will not do so when the trial was unfair and substantial errors occurred in the admission or rejection of evidence and in the giving or refusal to give jury instructions. [I]f one cannot say, with fair assurance …that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. Among the factors to consider in determining whether [Plaintiffs'] substantial rights were affected are the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during the trial. *Aetna Casualty & Surety Co. v. Gosdin*, 803 F.2d 1153, 1160 (11th Cir. 1986).

In this case, the unorthodox verdict, the submission of incomplete evidence for the jury's consideration, juror confusion regarding jury instructions and key terms on the verdict form,

improper Defense presentation of evidence and improper testimony from Defense witnesses were highly prejudicial to Plaintiff. It cannot be said with fair assurance that the verdict was not substantially swayed by the singular or cumulative effect of these errors and evidentiary issues. *Ad-Vantage Telephone Directory Consultants, Inc. v. GTE Directories Corp.,* 37 F.3d 1460, 1465 (11th Cir. 1994) (internal citations omitted). Further, the greater weight of the evidence did not suggest that Gregory Vaughn Hill, Jr., was 99% negligent in the incident that resulted in his death and that his intoxication contributed more than 50% to his negligence, as the jury verdict would suggest.

I.     IMPROPER AND INCONSISTENT TESTIMONY FROM DEFENSE EXPERT CHRISTOPHER LAWRENCE

Fed. R. Civ. P. 59(a)(1)(A) allows the court to grant a new trial "for any of the reasons for which new trials have heretofore been granted." Fed. R. Civ. P. 60 allows the court to grant a partial new trial "upon such terms as are just," on the grounds of "**misrepresentation, or other misconduct** of an adverse party," among other grounds. (*Emphasis added*).The standards for granting new trials are essentially the same under both rules.

A new trial is properly granted where a party can prove by clear and convincing evidence that verdict was obtained through fraud, **misrepresentation, or other misconduct,** and that conduct complained of prevented the losing party from fully and fairly presenting his case or defense. Fed. R. Civ. P. 59 and 60.The rule applies to misconduct in withholding information called for by discovery and it does not require that the information withheld be of such a nature as to alter the result in the case. The rule is addressed to judgments that are unfairly obtained and not at those which are factually incorrect. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978).

3

Expert testimony falls squarely within the purview of Rule 59 and Rule 60; and is particularly important in assisting the trier of fact in cases involving allegations of constitutional violations arising under 42 U.S.C. §1983. Federal Rule of Evidence 702 states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Of course, each party is permitted to retain an expert to offer such testimony. The party retaining the expert may not, however, control the expert witness. Fed. R. Evid. 702. Expert witnesses, as all other witnesses, are bound to testify truthfully. **An expert witness should never become one party's expert advocate**. An expert witness should be an advocate of the truth with testimony to help the court and the jury reach the ultimate truth in a case, which should be the basis of any verdict. *Selvidge v. U.S.*, 160 F.R.D. 153 D. Kansas January 19, 1995 ("The court finds that there is no right on behalf of an expert witness to answer only those questions propounded to him which he believes he has been retained to answer."). *Van Blargan v. Williams Hospitality Corporation*, 754 F.Supp. 246, 248 (D.P.R.1991).

Defendants' retained expert witness, Christopher Lawrence's contumacious testimony created severe prejudice on the proceedings. Defense counsel questioned Defendant's expert witness on the stand for over an hour. Defense counsel was never asked to speak up, move or alter his voice or diction in any way. Prior to Mr. Lawrence's testimony, Plaintiff's counsel, a board certified civil trial attorney, was never asked throughout trial to "raise his voice" or otherwise repeat any questions based on volume or diction.

From the instant Plaintiff's counsel, John Phillips, began cross examination, Defendant's expert, Mr. Chris Lawrence displayed bias and attempted to advocate, or obfuscate, to the benefit

of the Defendant. Mr. Lawrence sought sympathy for a self-proclaimed hearing impairment, which had never before been a problem at any stage in the proceedings. (Trial Tr. Vol. 51: 4-18).

He constantly claimed he could not hear Plaintiff's counsel, made him move all around, raise and lower his voice and otherwise garnered sympathy from the jury while heaping prejudice upon Plaintiff.

Mr. Lawrence's misconduct and bias worsened.  On question number five, Plaintiff's counsel simply asked Mr. Lawrence for an accounting of costs of his services.  He refused to answer this question as his pre-trial deposition.  Mr. Lawrence bellowed out his father had recently passed away a "couple weeks" prior and this and other questions would be difficult to answer.  *Id.* at 15:3-18.  It was severely unfair and improper. Making matters worse, Mr. Lawrence testified that his "father died a couple of weeks ago and things have been kind of upside down."  It was also a lie.  Mr. Lawrence's father died on April 10, 2018, at age 84 (Attached hereto as **Exhibit "A" & "B"**). While our condolences remain, this is egregious misconduct.  It was one month over a "couple weeks" and could not be impeached or rehabilitated.

As the selective hearing and excuses mounted (his 3 AM flight, exhaustion, prior travel to the jurisdiction to testify, but not being called), Mr. Lawrence repeatedly refused to answer questions. *Id.* at 54:1-10.  He then began to vomit non-responsive answers, including testifying that a car may have struck a piece of evidence, damaging it. *Id.* at 63:3-12.   There was zero evidence of this fact, which was repeated twice and completely non-responsive. *Id.* at 64-1-11. Plaintiff sought the courts intervention at that point.

At least one member of the jury was in Mr. Lawrence's peer group and appeared visibly displeased with Mr. Phillips to the point he specifically said he was going to skip forward.

Invoking "a death in the family" as a shield to further questioning is one of those matters so inflammatory and offensive that courts need to regulate such misconduct. Furthermore, Mr. Lawrence's non-responsive commentary, repeated sudden and selective hearing loss, exhaustion, and blaming of Plaintiff after a completely problem free direct examination was not only a violation of Fed. R. Evid. 702, but created such irreversible prejudice that it warrants a new trial and sanctions.

II.     ERRONEOUS EVIDENTIARY RULINGS

The party seeking a new trial based on an erroneous evidentiary ruling has the burden of proving that the error prejudiced a substantial right of that party. *Munn v. Algee,* 924 F.2d 568, 571 (5th Cir.1991).

a.   Undisclosed firearm and shorts used as demonstrative aid

One of the central issues of this trial was whether or not Mr. Hill raised a handgun in the direction of Deputy Lopez.  Less than forty-eight hours prior to trial, Defendants disclosed to Plaintiff for the first time that they were in possession of, and intended to use as evidence, the gun allegedly raised by Mr. Hill.

Over Plaintiff's written and spoken objections, Defendants were granted permission to display the Kel-Tec handgun to the jury.  In addition, Defendants witness Sergeant Lebeau was permitted to testify about the handgun and perform an impromptu demonstration of placing the handgun into the back-right pocket of Mr. Hill's jean shorts.   Significantly, Sergeant Lebeau was not disclosed as an expert witness and was testifying as a lay witness.

Allowing a lay witness to perform an in-court recreation of an event that they themselves did not witness is erroneous.  To do so by surprise is worse.  This lay witness's recreation not only constituted unfair surprise, but created a significant substantive disadvantage because

Plaintiff's actual expert witnesses were not provided opportunity to perform similar testing or recreations.

Defendants disclosed to Plaintiff that they possessed the subject firearm in an email transmitted less than forty-eight hours before opening statements.  Defendants are prohibited from engaging in such deceptive practices.  Pursuant to Federal Rule of Civil Procedure 26(a)(ii), Defendants' initial disclosure must include "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment" (emphasis added) Fed. R. Civ. Pro. 26(a)(1)(A)(ii).

Over the course of this litigation, Defendants filed six separate Rule 26(a) disclosures.  The Kel-Tec gun the Defendants presented to the jury was not disclosed in any of them.  Defendants were in possession, custody, or control of the Kel-Tec gun from the day Mr. Hill died through trial even though the criminal investigation was concluded years before.

Fed. R. Civ. Pro. 37(c)(1) states the sanctions for Defendants failure to timely disclose their possession of the Kel-Tec.  It states in pertinent part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. Pro. 37(c)(1)

As discussed above, Defendants failed to disclose their possession of the handgun pursuant to Rule 26(a).  Therefore, pursuant to Fed. R. Civ. Pro. 37(c)(1), Defendants should have been prohibited from introducing this evidence at trial, unless their failure to disclose was substantially justified or harmless.  As discussed below, Defendants actions were neither.

"In determining whether a failure to disclose evidence is substantially justified or harmless, courts are guided by the following factors: the unfair prejudice or surprise of the

opposing party; the opposing party's ability to cure the surprise; the likelihood and extent of disruption to the trial; the importance of the evidence; and the offering party's explanation for its failure to timely disclose the evidence." (emphasis added) *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1250–51 (M.D. Fla. 2012).

Plaintiffs are not required to guess or assume in federal court. "Mandatory" means "mandatory." Sergeant Lebeau's in-court demonstration with the Kel-Tec came as a surprise to Plaintiff. Plaintiff had no ability to cure this late surprise disclosure because she was never afforded the opportunity to review the evidence nor have her expert witnesses, whom had already formulated their opinions based upon the properly disclosed evidence, examine the gun. Defendants' failure to disclose their possession of the handgun is not remotely justified, let alone substantially justified.

In addition, Defendants' failure to disclose is far from harmless. "A harmless error is one where one party made an <u>honest mistake</u> and the other had <u>sufficient knowledge</u> of it." *Two Men & a Truck Int'l, Inc. v. Residential & Commercial Transp. Co., LLC*, No. 4:08-CV67-WS/WCS, 2008 WL 5235115, at *2 (N.D. Fla. Oct. 20, 2008).

As stated above, Defendants' failed to disclose the handgun in all six of their Rule 26(a) disclosures. It was also not disclosed on a single exhibit list despite Defendants' sandbagging Plaintiff with over 500 separate items on said exhibit lists. Defendants' failure to disclose the handgun was not the result of several separate honest mistakes. In addition, as stated above, Plaintiff had absolutely no knowledge that Defendants' possessed or controlled said gun. Let alone, *sufficient knowledge* that Defendants' were in possession, custody, or control of the gun.

The cumulative effect of repeatedly failing to disclose the handgun in all six of their Rule 26(a) disclosures, their exhibit disclosures, and then compounding this non-disclosure by

surprising the Plaintiff on the eve of trial, allowing a lay-witness to perform a reconstruction demonstration of an event the lay-witness never actually saw, and denying the Plaintiff the opportunity to have her expert witness perform testing on the handgun, amounts to a substantial injustice and warrants a new trial.

      b. Evidence of Mr. Hill's probationary status

The United States Supreme Court has set forth the standard by which a jury is to judge Defendant Newman's actions at the time he fired the fatal shot. The question the jury was asked to answer is whether or not Defendant Newman acted objectively reasonable in light of the facts and circumstances confronting him. *Graham v. Connor*, 490 U.S. 386 (1989). Defendant Newman was responding to a noise complaint and was clearly and admittedly unaware of Mr. Hill's probationary status at the time he fired the fatal shot. As such, Mr. Hill's probation status was not a known fact or circumstance confronting Defendant Newman.

As such, Plaintiff moved to exclude evidence of Mr. Hill's probationary status prior to and during trial. Immediately prior to jury selection, this honorable court held a brief hearing on the matter. Plaintiff argued that evidence of Mr. Hill's probationary status at the time of shooting is irrelevant, unfairly prejudicial, and constituted inadmissible character evidence. As discussed below, Plaintiff relied upon the Seventh Circuit opinion in *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) in support of her motion.

Defendants argued that evidence of Mr. Hill's probationary status was admissible because it was relevant to Mr. Hill's speculative motive and/or intent. In support of their argument, Defendants relied on the Seventh Circuit's later decision in *Escobedo v. Martin*, 728 F.3d 388 (7th Cir. 2012). Minutes before the hearing, Defense counsel provided a copy of the nineteen page *Escobedo* opinion to Plaintiff. Plaintiff was not given an opportunity to read the

*Escobedo* opinion prior to oral arguments and Defendants did not bring forth the negative aspects of *Escobedo* to their case.

Defendants' grossly misstated the holding of *Escobedo* and argued that evidence of Mr. Hill's probationary status is admissible under *Escobedo* because it was potentially relevant to Mr. Hill's motive and/or intent.   As discussed below, this honorable court's reliance on Defendants' argument and *Escobedo* was misled and misplaced under the facts of this case.

As stated previously, Plaintiff relied on *Sherrod* in support of their motion to exclude evidence of Mr. Hill's probationary status because it was admittedly unknown by Defendant Newman at the time of the shooting.   *Sherrod*, a 42 U.S.C §1983 excessive force civil rights case, states the <u>general rule</u> concerning the admissibility of evidence outside of the shooting officer's knowledge at the time he fires.   *Sherrod* held in pertinent part:

> "Knowledge of facts and circumstances gained after the fact… has no place in the trial court's or jury's proper post-hoc analysis of the reasonableness of the actor's judgment.  Were the rule otherwise… the jury would possess more information that the officer possessed when he made the crucial decision.   Thus, we are convinced that **the objective reasonableness standard…requires that Officer Berry's liability be determined exclusively upon an examination and weighing of the information Officer Berry possessed immediately prior to and at the very moment he fired the fatal shot**.   The reception of evidence or any information beyond that which Officer Berry had and reasonably believed at the time he fired his revolver is improper, irrelevant and prejudicial to the determination of whether Officer Berry acted reasonably "under the circumstances." *Sherrod* at 804.

However, the *Sherrod* opinion also enumerated <u>two exceptions</u> to the general rule.

> "Our holding today should not be interpreted as establishing a black-letter rule precluding the admission of evidence which would establish whether the individual alleging a § 1983 violation was unarmed at the time of the incident. Clearly, the **credibility of the witness** "can always be attacked by showing that his capacity to observe, remember or narrate is impaired." 3 Weinstein's Evidence ¶ 607[04] p. 607–55. Further, "**impeachment by contradiction** is a technique well recognized in the federal courts by which specific errors in the witness's testimony are brought to the attention of the trier of fact." (emphasis added) *Id.* at 806

In *Escobedo*, the Seventh Circuit applied the Sherrod rule and exceptions when tasked with determining if the trial court committed reversible error in admitting evidence of the decedent Plaintiff's then-upcoming court date and potential five-year prison sentence for his recent substance abuse violations.   The defendant officer was admittedly unaware of the decedents' pending trial date at the time of the shooting.   The court properly admitted the evidence, even though it was unknown by the officer at the time of the shooting, because Plaintiff's estate "opened the door" and the evidence was used to <u>impeach</u> and <u>attack the credibility of a testifying witness</u>.

On appeal, the Seventh Circuit held that because one of Plaintiff's witnesses opened the door "to [the decedents] demeanor and state of mind, the defense has an opportunity to now examine it on cross to determine **whether or not this witness was aware** that [the decedent] had these other events and situations in his life at the same approximate time." *Escobedo,* at 400. Significantly, it was only after the Plaintiff opened the door to Plaintiff's state of mind that the contested evidence fell within one of the exceptions to the *Sherrod* rule and was admitted.

The court went on to explain,

> "[W]hen a party opens the door to evidence that would be **<u>otherwise inadmissible</u>**, that party cannot complain on appeal about the admission of that evidence."   *Griffin v. Foley*, 542 F.3d 209, 219 (7th Cir. 2008) (quotations omitted).   And when a party puts evidence at issue that party must "accept the consequence[s]" of opening the door to that evidence. S.E.C. v. Koenig, 557 F.3d 736, 740-41 (7th Cir. 2009).   The Estate opened the door to evidence concerning Escobedo's state of mind when it questioned [the sister] about it."  *Id.*

Clearly, evidence unknown to the shooting officer was admitted in *Escobedo* because it fell within one of the two enumerated exceptions to the *Sherrod* rule.   The evidence was used to impeach and challenge the credibility of Escobedo's sister who testified and opened the door

regarding "her brother's demeanor and state of mind." The *Escobedo* court did not admit evidence of decedent Plaintiff's then upcoming court date and potential five-year prison sentence because it was potentially relevant to motive or intent.

Here, Defendants' reliance on *Escobedo* is wholly inapplicable because Plaintiff never opened the door to evidence of Mr. Hill's state of mind. At the time evidence of Mr. Hill's probation was deemed admissible, no witness had even taken the stand. As such, neither of the two exceptions enumerated in *Sherrod* and *Escobedo* apply.

Defendants have cited to no authority which allows Defendants to introduce evidence of Mr. Hill's probationary status at the time he was shot because of some possible or speculative relevance to motive or intent. Evidence of Mr. Hill's probationary status was clearly admitted in error, over objection, and convicted Mr. Hill's character.

Not every evidentiary error, of course, requires reversal. The eleventh circuit has held that a new trial is warranted where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's "substantial rights" or resulted in "substantial injustice"). *See, e.g. Hall v. United Ins. Co. of America, 367 F.3d 1255, 1258–59 (11th Cir.2004)* ("substantial prejudice"). Notwithstanding the difference in terminology, the inquiry is always directed to the same central question—how much of an effect did the improperly admitted or excluded evidence have on the verdict? *Peat Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154-62 (11th Cir. 2004).

To answer this question, the court weighs a number of factors, including the <u>closeness of the factual disputes,</u> the <u>prejudicial effect of the evidence,</u> whether <u>counsel intentionally elicited the evidence,</u> whether counsel <u>focused on the evidence during the trial,</u> and whether any cautionary or <u>limiting instructions</u> were given. *Id.*

Evidence that Mr. Hill was on probation at the time of his death is extremely prejudicial because it informs the jury that Mr. Hill was a past criminal. Significantly, in thirty years of life, Mr. Hill was never convicted of a felony. Mr. Hill was on probation for a crime where he pled no contest and adjudication of guilt was withheld. Nevertheless, by introducing evidence that Mr. Hill was on probation, Defendants were permitted to prejudicially inform the jury that Mr. Hill was a past criminal. Making matters worse, in their case in chief, Defendants' could not actually prove Mr. Hill was on probation as there was evidence of a prior automatic termination.

In addition to informing the jury that Mr. Hill was a past criminal, Defendants submitted evidence that at the time of the shooting Mr. Hill was actively committing a crime. Defense witness Niles Graben testified that as a condition of Mr. Hill's probation, he was prohibited from consuming alcohol and possessing a firearm. (Trial Tr. Vol. 3, 129:4-11). Over Plaintiff's objection, Defendants' introduced evidence that Mr. Hill's blood alcohol level was over three times the legal limit to drive. Also, numerous defense witnesses testified that a gun was recovered in Mr. Hill's back pocket. By allowing evidence of Mr. Hill's probation restrictions in effect at the time of the incident (no alcohol and no firearm), the jury was plainly aware that, according to law enforcement officials, Mr. Hill was actively committing the crime of violating the terms of his probation at the time of the shooting.

Defendant Newman was investigating a loud noise complaint, not a probation violation. Mr. Hill was shot and killed before he was arrested, charged or convicted of violating the terms of his probation. Nevertheless, the jury was allowed to hear testimony from law enforcement officers that Mr. Hill was actively committing the completely unrelated crime of violating his probation at the time of the shooting. This amounts to nothing short of a substantial injustice.

In addition, Mr. Graben's testimony made Mr. Hill's probationary status a central issue of the trial. The prejudicial impact of admitting such evidence is that it confuses the jury as to the issues of the present 42 U.S.C. § 1983 and the Negligence case. The issue of the trial is whether or not Defendant Newman violated Mr. Hill's constitution rights and/or was negligent, not whether Mr. Hill violated the terms of his probation. Courts have prohibited evidence of probation restrictions for this very purpose. *See U.S. v. Becker*, 490 F. Supp.2d 1029 (N.D. Iowa 2007). ("Ultimately, the court concludes that evidence of [litigants] probation status should be excluded, because the serious potential prejudice arising from the possibility that the jurors might convict [litigant] of the charged offenses for the unrelated reason that he violated the terms of his probation, rather than on the basis of evidence of charged wrongdoing, exceeds the relatively limited probative value of such evidence, if any.")

The jury verdict itself is evidence that the precise pitfall cautioned in *Becker* happened here. The jury ultimately determined that Mr. Hill's constitutional rights were not violated and that he himself was 99% comparatively negligent. While Mr. Hill may have been 99% responsible for violating the terms of his probation (if he was even on probation), the clear weight of the evidence demonstrates that he was not 99% responsible for being shot three times through a closed garage door.

In an effort to reduce the prejudicial impact of this probation evidence, the court offered a limiting instruction which stated: "Ladies and gentlemen, as you have heard, Mr. Hill was on probation. This evidence is only admissible to the extent that you think it is relevant to Mr. Hill's actions on the date of the incident. It is not to be considered for any other purpose. What Mr. Hill was on probation for is irrelevant and should not be considered by you."

The courts limiting instruction did nothing to quell the prejudicial impact of informing the jury that Mr. Hill was a criminal.   It also did not delineate the relative inadmissibility probation had in the federal versus state law claim.   The jury was informed that Mr. Hill was a criminal, but they were not aware as to what crime he committed.   In addition, the jury was allowed to consider Mr. Hill's probationary status as it related to "Mr. Hill's actions on the date of the incident." Based on the admissibility of the probation restrictions in effect, the jury was allowed to consider that Mr. Hill's actions of drinking and possessing a handgun equates to actively committing the unrelated crime of violating the terms of his probation.   The introduction of probation evidence substantially deprived Mr. Hill of a fair trial and turned a 42 U.S.C. § 1983 and negligence trial, into a probation violation trial.   It improperly devalued Mr. Hill's life which lead to a jury holding that Mr. Hill's children's pain and suffering from losing that life was merely $1.00 per child.

III.   <u>MATERIAL CHANGES IN TESTIMONY</u>

As previously stated, the Federal Rules of Civil Procedure pertaining to a parties' request for a new trial, applies to misconduct in withholding information called for by discovery and it does not require that the information withheld be of such a nature as to alter the result in the case. The rule is addressed to judgments that are unfairly obtained and not at those which are factually incorrect. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir. 1978).

A new trial may be granted on grounds that a witness willfully testified falsely to material facts, especially where perjured testimony was induced by the opposite party or the false testimony was that of the opposite party. *Traylor v. Pickering*, 324 F.2d 655 (5th Cir. 1963).

a.   <u>Sgt. Kyle King and Defendant Christopher Newman</u>

Defendants called Sergeant Kyle King of the Indian River Sheriff's office to testify as a non-retained expert witness.   According to Defendants expert witness disclosure, Sgt. King's

testimony was limited to "his knowledge regarding reconstruction of the subject incident." (*See* Defendants' Expert Witness Disclosure attached hereto as **Exhibit "C"**).   At trial, Sgt. King testified that he reconstructed the incident in the form of a Powerpoint presentation.

The Powerpoint consisted of several animated images depicting the garage door open and the gun parallel to the ground. (Attached hereto as **Exhibit "D"**). When asked how he determined the gun was pointed at Deputy Lopez, Sgt. King testified that he relied on Defendant Newman's statements made to other SLCSO officers wherein he said, the gun was "about waist level when I fired."

At his deposition, Defendant Newman testified that Mr. Hill, "did, like, a simultaneous bringing the gun up as he was bringing the garage door down." (P. 46, line 22-47).   Further, Defendant Newman testified that he "lost sight of the gun as it was coming up around his hip area, I believe, is where I last saw it, and, yeah." (P. 47, L. 6-20).   Defendant Newman also testified "the muzzle would have been aiming towards Deputy Lopez' thigh area."   [DE No. 80-17 69:19-20]   (Also *See* **Exhibits "E" and "F"** attached hereto). At all times prior to trial, Mr. Hill's gun was aimed at or in the direction of Deputy Lopez when Defendant Newman last saw it.  Just not, "center mass", said Newman. *Id.*

Throughout the course of trial, Defendant Newman was present for all witness testimony, including that of Plaintiff expert Dr. William Anderson.  Dr. Anderson testified that it is highly unlikely that Mr. Hill raised a gun "anywhere near" Deputy Lopez based upon the positioning of the hand relative to Mr. Hill's abdomen wound. (Trial Tr. vol. 3, 36:19-24, May 26, 2018.) Dr. Anderson testified that if the gun was raised in the direction of Deputy Lopez, the bullet would have had to gone through Mr. Hill's arm, which clearly did not happen.  Roy Bedard, Plaintiff's

police expert also testified about the "paradox" caused by the location Newman claimed the gun was in, as it couldn't get back in Hill's pocket if it was in the location.

After hearing this testimony, Defendant Newman materially changed his testimony.  In fact, Defendant Newman was asked to perform a demonstration in the courtroom wherein he raised his arm, ever so slightly, in an upward direction.  Defendant Newman's trial testimony, given after all of Plaintiff's expert witnesses had testified, in no way indicated that the Mr. Hill ever pointed the gun up, or at Deputy Lopez' thigh area.  It was pointed at the ground to now compensate for Mr. Bedard and Mr. Anderson's testimony.

After trial, Defendants even admitted that Sgt. Kyle King's powerpoint "wasn't an accurate depiction or what happened here." (Trial Tr. Vol. 6, 7:7-11) Nevertheless, Defendants still called Sgt. King to testify as an expert witness at trial even though his testimony was limited to the admittedly inaccurate reconstruction of the subject incident and fought by pre-trial motion to have this introduced. [DE 195] The entirety of Sgt. King's testimony was predicated on materially false facts.  Admitting that a non-retained expert witness testified about facts that were known to be false warrants a new trial.

## IV.   JUROR ISSUES

The inconsistent and legally improper verdict indicates juror confusion over the jury instructions and verdict form. In particular, there appeared to be confusion over the jury instructions' explanation of awardable damages and how those damages are apportioned on the verdict form. A new trial is required only if the trial judge's instructions taken as a whole give a **misleading impression or inadequate understanding** of the law and the issues to be resolved. *Bass v. International Brotherhood of Boilermakers,* 630 F.2d 1058, 1062 (5th Cir.1980).

Prior to deliberations, this honorable court read the jury instructions to the members of the jury. Significantly, this honorable court did not read the title to each instruction (Trial Tr. Vol. 5, 82:5). The practical impact of failing to read the title of each jury instruction clearly confused the jury- or they otherwise sought to be punitive. In either scenario, a new trial is warranted.

The written jury instruction at issue, titled **Civil Rights – 42 U.S.C. § 1983 Claims – Damages**, states as follows, "You may award $1.00 in nominal damages..." By law, nominal damages only apply to the 42 U.S.C. § 1983 claim. Significantly, the only part of the jury instruction that limits nominal damages to the 42 U.S.C. § 1983 claim, is the title. By failing to read the complete instruction to the jury (including the title), combined with an omission of instructions in the verdict form, the Plaintiff was prejudiced and the jury was confused. This confusion is confirmed by the erroneous jury verdict.

On the negligence claim, the jury awarded $1.00 in damages to the Estate of Gregory Vaughn Hill, Jr. and each of his surviving minor children (for a total of $4.00). Thus, the jury purported to make a finding that only nominal damages were appropriate or sought to punish the Plaintiff and awarded an amount unsupported by evidence. The issue here is that nominal damages only pertained to the federal civil rights claim, *not* the negligence claim.

During deliberations the jury asked for help by submitting the following question: "If we find minimal negligence, can the courts over rule monetary amounts presented by the jury." [DE 225] The Court and the parties struggled to fully understand the jury's question. The Court sent back a request for clarification, and instead of explaining their question, the jury rendered its verdict. The verdict rendered was improper due to the jury's confusion over the instructions and verdict form.

The other logical explanation for the jury's inconsistent verdict was that it was intended to be punitive. The jury assessed a sliver of fault on the Defendant, but wanted to ensure the Court would not alter their numbers. A punitive verdict in this context ignores unrebutted evidence presented throughout trial, particularly related to objective, unrebutted funeral expenses. In sum, the jury's rendered verdict either signals a punitive measure or an improper attempt to award nominal damages. Either way, the verdict is legally improper. This confusion or misunderstanding clearly prejudiced the Plaintiff.

V.     VERDICT AGAINST CLEAR WEIGHT OF THE EVIDENCE

A jury's verdict is not contrary to the great weight of the evidence simply because the party moving for a new trial believes that his evidence is more persuasive than his opponent's; rather, a new trial should only be granted on evidentiary grounds where the moving party points to an error in admitting or excluding evidence that was so harmful as to sway the jury in its consideration of the matter. *Noel v. Terrace of St. Cloud, LLC.*, 212 F.Supp.3d 1193 (M.D. Fla. April 5, 2016).

The jury disregarded the expert testimony of Roy Bedard, Dr. William Anderson, the DNA lab test results and testimony of Earl Ritzline, and the multitude of eye and ear witness testimony from independent witnesses in finding completely for the Defendant, Christopher Newman on the federal civil rights violation claim (42 U.S.C. §1983), and apportioning fault at 1% for the SLCSO and 99% for the decedent, Gregory Vaughn Hill, Jr., on the state law negligence claim. The jury's disregard of the testimony and evidence presented resulted in a miscarriage of justice.

Roy Bedard, an expert on police practices, testified extensively on proper police protocol when a subject is behind an opaque surface. He also testified specifically about the troubling

paradox created by discrepancies between Defendant Christopher Newman's testimony and the physical evidence presented. (Trial Tr. Vol. 2, 181-182, 16). Dr. William Anderson, a trained Medical Examiner, gave testimony regarding Mr. Hill's gunshot wounds and the order in which they were likely sustained. Dr. Anderson's testimony supported that of Earl Ritzline of the Indian River Crime Lab who testified about the DNA results which revealed that none of Mr. Hill's DNA was conclusively found on the KelTec firearm recovered from his back pocket. Furthermore, several independent eye witnesses located directly across the street from where the shooting occurred testified that they never saw Mr. Hill holding a gun in his hand.

No rational jury could have found that Defendant Christopher Newman's use of deadly force against Mr. Hill was not excessive as set forth in 42 U.S.C. §1983. Likewise, no rational jury could have found Mr. Hill 99% at fault for his own death after being shot by Defendant Deputy Newman through a closed garage door.

## VI. THE CUMULATIVE EFFECT OF THE ERRORS AND EVIDENTIARY RULINGS WARRANTS A NEW TRIAL

Erroneous evidentiary rulings by a trial court can be treated as harmless only if the error does not affect the substantial rights of a party. *Dartez v. Fibreboard Corp.*, 765 F.2d 456, 569 (5th Cir. 1985). The errors identified throughout this motion undeniably affected the substantial rights of the Plaintiff (cumulative effect of the errors in evidentiary rulings rendered the verdict unreliable) *Frymire-Brianti v. Marwick*, 2 F.3d 183 (7th Cir. 1993). A new trial should be granted.

WHEREFORE, for the reasons set forth hereinabove, Plaintiff VIOLA BRYANT, as Personal Representative of the Estate of Gregory Vaughn Hill, Jr., respectfully requests this Court grant the instant Motion for New Trial. Plaintiff also moves for such other relief as the Court deems appropriate.

## 7.1 (a)(3) STATEMENT

Counsel for Plaintiff has conferred with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

### PLAINTIFF REQUESTS A HEARING ON THIS MATTER

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and a copy hereof has been furnished to Summer M. Barranco, Esquire, Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304, by email to summer@purdylaw.com, and melissa@purdylaw.com, this 27th of June, 2018.

**Law Office of John M. Phillips, LLC**

/s/ John M. Phillips
**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number: 0477575
**KIRBY W. JOHNSON, ESQUIRE**
Florida Bar Number: 113323
4230 Ortega Boulevard
Jacksonville, FL 32210
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Plaintiff
jphillips@floridajustice.com
michele@floridajustice.com
Kirby@floridajustice.com