UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 2:16-CV-14072-ROSENBERG/REINHART

VIOLA BRYANT, as Personal Representative
of the Estate of GREGORY VAUGHN HILL, JR.,

    Plaintiff,

v.

SHERIFF KEN MASCARA, in his Official
Capacity as Sheriff of St. Lucie County and
CHRISTOPHER NEWMAN,

    Defendants.
_____/

# ORDER DENYING PLAINTIFF'S MOTION
# FOR JUROR INTERVIEW AND MOTION FOR
# LEAVE TO FILE ADDITIONAL EVIDENCE IN SUPPORT
# OF PLAINTIFF'S TIMELY FILED MOTION FOR NEW TRIAL

**This Cause** is before the Court on Plaintiff's Motion for Juror Interview and Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial. DE 253. Defendants responded, DE 256, and Plaintiff replied, DE 257. For the reasons set forth below, Plaintiff's Motion [DE 253] is denied.

## I.    BACKGROUND

This case arises from an incident in which Defendant Christopher Newman, a St. Lucie County Sheriff's Deputy, fatally shot Gregory Vaughn Hill, Jr. through Mr. Hill's garage door while responding to a noise complaint. This case proceeded to trial on May 17, 2018 on two counts: an excessive force claim under 42 U.S.C. § 1983 against Defendant Newman and a negligence claim against Defendant Sheriff Ken Mascara in his Official Capacity as Sheriff of St. Lucie County.

On May 24, 2018, the jury returned a verdict for the Defendants. As to the § 1983 claim

against Defendant Newman, the jury found that Defendant Newman did not use excessive force. DE 223 at 1. As to the negligence claim, the jury found that there was negligence on the part of Sheriff Ken Mascara in his Official Capacity as Sheriff of St. Lucie County, through his deputy Christopher Newman. *Id.* at 4. The jury, however, also found that Mr. Hill was under the influence of alcoholic beverages to the extent that his normal faculties were impaired and, that as a result of the influence of such alcoholic beverage, Mr. Hill was more than 50% at fault for this incident and his resulting injuries. *Id.* The jury found Sheriff Ken Mascara, in his Official Capacity as Sheriff of St. Lucie County, to be 1% negligent and Mr. Hill to be 99% negligent for Mr. Hill's injuries and awarded $1.00 for funeral expenses and to each of Mr. Hill's three minor children. *Id.* at 5–6. Because of the finding that Mr. Hill was under the influence of alcoholic beverages to the extent that his normal faculties were impaired and that he was more than 50% at fault, Plaintiff was not entitled to any damages under Florida law. *See* Fla. Stat. § 768.36. Now before the Court is Plaintiff's Motion for Juror Interview and Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial. DE 253.

**II.    LEGAL STANDARD**

"A general rule has evolved to give substantial protection to verdict finality and to assure jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusion they expressed during deliberations. This principle, itself centuries old, is often referred to as the no-impeachment rule." *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 861 (2017). The no-impeachment rule was adopted in the Federal Rules of Evidence at Rule 606(b). It reads:

> **(b) During an Inquiry into the Validity of a Verdict or Indictment.**
> **(1) *Prohibited Testimony or Other Evidence.*** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on

that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.
**(2) *Exceptions*.** A juror may testify about whether:
    **(A)** extraneous prejudicial information was improperly brought to the jury's attention;
    **(B)** an outside influence was improperly brought to bear on any juror; or
    **(C)** a mistake was made in entering the verdict on the verdict form.

An inquiry into jury deliberations only may occur in the "gravest and most important cases." *McDonald v. Pless*, 238 U.S. 264, 269 (1915). The Supreme Court has stated that the no-impeachment rule must be strong so as to protect jury deliberations from intrusive inquiry and to ensure finality; the Supreme Court has also noted that there are significant safeguards, including voir dire and the juror's ability to report any misconduct prior to the deliberations, that protect the fairness of the trial process. *Pena-Rodriguez*, 137 S.Ct. at 866.

"District courts are subject to very stringent limitations on their authority to question jurors about their deliberations, and to use one or more juror's testimony to impeach the verdict of all." *United States v. Foster*, 878 F.3d 1297, 1309 (11th Cir. 2018) (quoting *United States v. Siegelman*, 640 F.3d 1159, 1185 (11th Cir. 2001)). The Eleventh Circuit has explained that "[t]he duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. To justify a post-trial hearing involving the trial's jurors, the defendant must do more than speculate; he must show clear, strong, substantial and incontrovertible . . . evidence that a specific, nonspeculative impropriety has occurred." *United States v. Cuthel*, 903 F.2d 1381, 1383 (11th Cir. 1990).

Local Rule 11.1(e) states:

After the jury has been discharged, a lawyer shall not communicate with a member of the jury about a case with which the lawyer and the juror have been connected without leave of Court granted for good cause shown. In such case, the Court may allow counsel to interview jurors to determine whether their verdict is subject to legal challenge, and may limit the time, place, and circumstances under

which the interviews may be conducted.

The Eleventh Circuit "has construed the 'good cause' requirement to mean satisfaction of one of the exceptions listed in Rule 606(b)." *United States v. Nerey*, 877 F.3d 956, 972 (11th Cir. 2017) (citing *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991)). "A party's ability to interview a juror exists on a spectrum, which is dependent upon the nature of the alleged misconduct. On one end, serious accusations usually require investigation. On the other, speculative and unsubstantiated allegations present little need to investigate." *Nerey*, 877 F.3d at 972 (citations omitted).

### III. ANALYSIS

In her Motion, Plaintiff requests that the Court allow her to interview the jurors involved in the case. Plaintiff states that a documentary is being filmed on the subject case and that Juror #6 gave an interview to the documentarian. DE 253 ¶ 7. Plaintiff states that she has acquired the full version of Juror #6's interview. *Id.* ¶ 8. In her motion, Plaintiff includes some of Juror #6's statements:

> A. "And then there's two suborn people in there that pissed me off (laughs) that they said they had their minds made up from the beginning and that's what irritated me."
> B. "And then they're just - they weren't going to budge whatsoever no matter what I-I tried explaining everything and they just... two of them just wouldn't budge."
> C. "I'm not going to be partial for any party and some of the jurors were like that right from the bat."
> D. "They we're con- considered under oath but they said they weren't going to be that way and they were once we got in the jury."
> E. "(Mr. Phillips) didn't have them sold because they already had their minds made up."
> F. "Because we brought it up and we're in the middle of negotiating, um, someone had brought up, was like well did- did it- do you guys already have your minds made up before you've seen any like ... before you even deliberate, before you even seen any evidence, and it was like yeah they are al- they were basically- they were like, "Yeah we already had our minds made up who's side we were on." I was like- you guys just took partial sides, and just right off red, and the

judge asked you guys not to make sure you guys are going to be fair and you guys weren't."

G. "I just think, um, it could have been more so a police thing. I'm not sure. The-these two people were just stubborn, just I don't know, I real- honestly don't know why they were the way they are but they shouldn't have ever been ... I don't think they were even going to try and be fair."

H. "But then the two went back after a while because they knew they wouldn't budge."

I. "Their biased opinion. Mainly the two like I said. The other ones were being realistic and listening and put everything into consideration but not the other two. They didn't want to hear anything you had to say."

*Id.* ¶ 9. Based on statements made by Juror #6, Plaintiff now seeks to interview Juror #6 and other jurors "to determine whether and what outside influence(s) was (were) improperly brought to bear on any juror; and . . . whether and what mistake(s) was/were made in entering the verdict on the verdict form." *Id.* ¶ 12.

Defendants respond that Juror #6's statements are vague and that

[t]here is no mention of any outside influence coming to bear on the jurors' deliberations or its verdict. Although Plaintiff states in a conclusory fashion that the two jurors "engaged [in] overtly prejudicial acts that affected the verdict", Plaintiff does not set forth why the Plaintiff believes these two jurors referenced by juror #6 had a prejudicial effect upon the verdict. Moreover, despite juror #6's purported comments, ultimately the jury rendered a verdict in favor of the defense to which all jurors, when polled, individually affirmed was in fact their verdict. Regardless, such testimony by juror #6 would be inadmissible under Federal Rule of Evidence 606(a).

DE 256 at 5.

Plaintiff has failed to show good cause for why she should be allowed to interview the jurors. Plaintiff states that she wants to interview the jurors "to determine whether and what outside influence(s) was (were) improperly brought to bear on any juror; and . . . whether and what mistake(s) was/were made in entering the verdict on the verdict form." DE 253 ¶ 12. Nothing in statements made by Juror #6, however, offers support for Plaintiff's assertion that any

outside influence was improperly brought to the jury's attention or that the jurors made a mistake in entering the verdict onto the verdict form.

First, Plaintiff has failed to meet her burden to offer evidence that extraneous prejudicial information was improperly brought to the jury's attention. Plaintiff points to Juror #6's vague allegations that two jurors may have had their minds made up before hearing evidence. *See* DE 253 ¶ 9(F). The allegation that some of the jurors had made up their mind before hearing evidence does not support a claim that extraneous information was brought to the jury's attention. "Generally speaking, information is deemed 'extraneous' if it derives from a source 'external' to the jury. 'External' matters include publicity and information related specifically to the case the jurors are meant to decide, while 'internal' matters include the general body of experiences that jurors are understood to bring with them to the jury room." *Warger*, 135 S.Ct. at 529. During voir dire, the Court read a summary of the case and asked the potential jurors if they knew anything about the case. Trial Tr., May 17, 2018, at 38:16–39:22. The Court and the parties questioned all of the jurors, including any juror who indicated any familiarity with the case, the parties, or the witnesses. During jury selection, the parties were afforded the right to raise any cause challenges and were afforded their preemptory challenges. During jury selection[1] and

---

[1] The Court instructed the venire:

> So, let me read an important instruction to you that you must be guided by in every stage throughout this case.
> We know, again, the jurors haven't been selected yet, but this applies to all of you until you have been selected and will continue to apply to those of you who are selected to be jurors in this case.
> While serving on the jury you must not talk to anyone about anything related to the case. You may tell them you are a juror and give them information when you must be in court, but you must not discuss anything about the case itself with anyone. You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you hear everything, all the

evidence, the lawyers' closing arguments and my instructions on the law before you begin deliberating.

You should keep an open mind until the end of the trial because premature discussions may lead to a premature decision.

In the age of technology, I want to emphasize in addition to not talking to anybody face-to-face about the case, you must not communicate anything about the case by any other means, this includes the internet, social networking, Facebook, My Space, and Twitter. You shouldn't Google online or off line about any information about the case, the parties, or the law.

Don't read or listen to the news about this case, don't visit any places related to the case or research any issue or place of the case. The law forbids any of the jurors to talk to anyone about it. It is important you understand why these rules exist and are so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision on information that you acquire outside of the courtroom.

For example, the law often uses words and phrases in special ways, so it is important that any definitions you hear come from me and not from any other source.

Only you, as jurors, can decide the verdict in this case. The law sees only you as fair and only you have promised to be fair. No one else is so qualified.

So, if I can simplify it, this is what it means.

When you go in and out of the courtroom on breaks you can't talk to anyone about what went on in the courtroom. You can talk to each other, what were you doing this weekend, where do you work, nothing about what is going on in the courtroom, even if it is mundane like it is cold, or you don't like the way somebody is sitting, or you like somebody's suit, nothing, nothing are you to talk about with each other or with anybody else, by phone, in person, or any type of social media.

You are not to do any research. If I say something or somebody says something and it peeks your interest and you think you are being diligent to look for further information about it, that is not permitted at all. The only thing you need to know is going to be here in the courtroom.

If you start doing your own research, I don't know what you are looking at, the parties can't be looking at it, and don't know how we can address it. It is not permitted.

There may or may not be media coverage of this case. You are not to listen or review any media coverage of this case. Hypothetically, if you hear something that sounds familiar about this case, turn it off.

If you go home and there is a newspaper or news flash, and somebody in your family is watching the news and something comes up that seems remotely related to this case walk out of the room or ask that the TV been turned off.

I want to know if there is any exposure to any media the next day. If you come in the next day and you saw something, or you didn't see it, but it was in the newspaper and you turned your eyes away, I want you to let me know. Raise your

throughout the trial, the Court routinely instructed the jurors not to do their own research on the case or to view any media about the case. *See, e.g.*, *id.* at 261:2–263:6.[2] Accordingly, Juror #6's allegations that two of the jurors were stubborn and made their minds up quickly is not clear,

---

> hand and tell me what happened, but in no instance should you be getting any information from any other source, friend, family member, colleague, radio show, news report, TV, paper, period.
> Very important, the internet as well.
> You are insulated for purposes of this trial. Anything you need to know and should know and have to know is in the courtroom only, not a public rendition, not a friend's view, not what Google tells you, it is what is presented through the evidence. It's very important.
> If I find in that you have not followed these instructions, I will leave it at this, there are consequences to that because we invest a lot of time and money in assembling and fair and impartial jury and we do not want this fair and impartial jury to be tainted by outside influences.
> Does anyone have a problem with what I just said? Anyone here who cannot follow the rules I just set forth? If so, raise your hand. Seeing no hands.

Trial Tr., May 17, 2018, at 47:8–50:18.

[2] The Court instructed the jury on the first day of trial as follows:
> This is the first time we are letting you go for more than an hour, I will not see you again until nine o'clock tomorrow morning. So, it is very likely that people you see or talk to this evening are going to be curious, I would think, maybe not, but maybe, about where you've been, what you have been doing, and what is going on, and interested in having you tell them about it.
> You can certainly tell them you have been selected as a juror, you can tell them you are here at the Ft. Pierce Federal Courthouse, you can tell them you will be in trial for five or seven days, that is all. You can't tell them the name of the case, how you find it so far, interesting, not interesting, any legal issues, any of the claims or impressions you formed, nothing.
> It is easy, you just say the judge told us I can't answer your questions. If I do, I will get in trouble. Hopefully they will leave you alone.
> You are to do no research about anything directly, indirectly, or tangentially entered in the case. Third, if there is any media by way of television, newspaper, radio, anything else, avoid it. Don't listen to the radio or watch TV tonight or the morning if that is part of your ritual. If anything comes across the news that happens to appear related to what you have been hearing today, leave the room. If you don't let me know, I am going to assume no one saw, heard or reviewed or researched anything.
> Does anyone have any questions about those instructions?
>
> *THE JURORS:* No.
> *THE COURT:* Seeing no hands.

strong, substantial and incontrovertible evidence that an extraneous prejudicial information was brought to the jury's attention. *See Cuthel*, 903 F.2d 1383.

Second, the Court notes that Juror #6 speculates that it may have been a "police thing" that made the two jurors stubborn and unwilling to consider all of the evidence. DE 253 ¶ 9(G). Juror #6 may have been speculating that the two jurors whom he believes made their minds up quickly during deliberations did so because of a pro-police bias. The Supreme Court has noted that "[t]here may be cases of juror bias so extreme that, almost by definition, the jury trial right has been abridged. If and when such a case arises, the Court can consider whether the usual safeguards are or are not sufficient to protect the integrity of the process." *Warger*, 135 S.Ct. at 529 n.3 (2014). In *Warger*, the Supreme Court rejected a motion for a new trial in a civil case based on foreperson's alleged pro-defendant bias. *Id.* at 525.

To date, the only instance where the Supreme Court has found that juror bias was so extreme as to necessitate violating the no-impeachment rule was "where a juror ma[de] a clear statement that indicate[d] he or she relied on racial stereotypes or animus to convict a criminal defendant." *Pena-Rodriguez*, 137 S.Ct. at 869. In reaching this decision, the Supreme Court noted the unique historical role that racial discrimination plays in the history of the United States and in the criminal justice system. *See id.* at 868 ("The unmistakable principle underlying these precedents is that discrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice.") (citations omitted). The Supreme Court noted that in other instances of alleged jury misconduct, the no impeachment rule holds strong and the Court should not inquire into the juror's deliberations. *See id.* ("To attempt to rid the jury of every irregularity of this sort would be to expose it to unrelenting scrutiny. It is not at all clear . . . that the jury system could survive such efforts to perfect it.") (citations omitted).

Juror #6's allegation that the two jurors may have been influenced by a pro-police bias does not warrant an exception to the no impeachment rule. The allegation is both vague and is similar to the juror's pro-defendant bias in *Warger* that the Supreme Court found did not warrant a new trial, *see Warger*, 135 S.Ct. at 525. The Court notes that each potential juror filled out a questionnaire that included a question as to whether the juror or a close family member or friend ever worked for a law enforcement agency and whether there was anything in the juror's background or personal feelings which might affect the juror's ability to be fair and impartial to both sides. The Court followed up with each juror as to the juror's answers in the questionnaire and the parties, through counsel, were given the opportunity to ask questions of the jurors. The parties had copies of the completed questionnaires. Although any bias in the criminal system should be guarded against, every allegation of bias does not warrant the Court's investigation and does not require violating the no impeachment rule. *See, e.g., Warger*, 135 S.Ct. at 525. Allegations of bias in favor of police officers do not meet the narrow exception to the no impeachment rule that the Supreme Court declared for allegations of racial bias. *See Pena-Rodriguez*, 137 S.Ct. at 869. To find otherwise would open the jury system to constant scrutiny. *See id.*

Third, Plaintiff does not offer any support for why she asserts that the jurors may have made a mistake in entering the verdict on the verdict form. Following the publication of the jury's verdict, the jurors were polled and each juror stated that the verdict, as published, was his or her verdict. Trial Tr., May 24, 2018, at 26:25–27:24. Moreover, in the statements provided by Juror #6, Juror #6 does not state that there was any error in putting the verdict on the verdict form. Plaintiff's unsupported speculation that there may have been an error is not a "serious accusation[] [that] require[s] investigation." *See Nerey*, 877 F.3d at 972. Accordingly, because

Plaintiff has not shown good cause for why she should be permitted to interview the jurors, Plaintiff's Motion is denied. Because Plaintiff's Motion for Juror Interview, which is denied, serves as the basis for her Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial, Plaintiff's Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial is also denied.

## IV. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion for Juror Interview and Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial [DE 253] is **DENIED.**

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 14th day of August, 2018.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE