# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO.: 2:16-CV-14072-ROSENBERG/REINHART

VIOLA BRYANT, as Personal Representative
of the Estate of GREGORY VAUGHN HILL, JR.,

       Plaintiff,

v.

SHERIFF KEN MASCARA, in his Official
Capacity as Sheriff of St. Lucie County and
CHRISTOPHER NEWMAN,

       Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

**This Cause** is before the Court on Plaintiff's Motion for New Trial. DE 237. Defendants responded, DE 247, and Plaintiff replied, DE 251. For the reasons set forth below, the Court hereby denies Plaintiff's Motion for New Trial.

## I.      BACKGROUND

This case arises from an incident in which Defendant Christopher Newman, a St. Lucie County Sheriff's Deputy, fatally shot Gregory Vaughn Hill, Jr. through Mr. Hill's garage door while responding to a noise complaint. This case proceeded to trial on May 17, 2018 on two counts: an excessive force claim under 42 U.S.C. § 1983 against Defendant Newman and a negligence claim against Defendant Sheriff Ken Mascara in his Official Capacity as Sheriff of St. Lucie County.

On May 24, 2018, the jury returned a verdict for the Defendants. As to the § 1983 claim against Defendant Newman, the jury found that Defendant Newman did not use excessive force. DE 223 at 1. As to the negligence claim, the jury found that there was negligence on the part of

Sheriff Ken Mascara in his Official Capacity as Sheriff of St. Lucie County, through his deputy Christopher Newman. *Id.* at 4. The jury, however, also found that Mr. Hill was under the influence of alcoholic beverages to the extent that his normal faculties were impaired and, that as a result of the influence of such alcoholic beverage, Mr. Hill was more than 50% at fault for this incident and his resulting injuries. *Id.* The jury found Sheriff Ken Mascara, in his Official Capacity as Sheriff of St. Lucie County, to be 1% negligent and Mr. Hill to be 99% negligent for Mr. Hill's injuries and awarded $1.00 each for funeral expenses and to each of Mr. Hill's three minor children. *Id.* at 5–6. Because of the finding that Mr. Hill was under the influence of alcoholic beverages to the extent that his normal faculties were impaired and that he was more than 50% at fault, Plaintiff was not entitled to any damages under Florida law. *See* Fla. Stat. § 768.36. Now before the Court is Plaintiff's Motion for New Trial.[1]

Before proceeding to its legal analysis, the Court notes that the tragic events that led to this case, coupled with the nature of the jury's verdict, understandably has elicited an emotional response. The Court does not take this fact lightly. It is deeply tragic that Mr. Hill lost his life; that Plaintiff, Ms. Bryant, lost her son; that Ms. Hill's fiancée lost her fiancé and the father of her children; and that three young children lost their father, following a noise complaint. Nevertheless, the Court must analyze the legal issues before it, under the applicable law, and determine if any of them alone or cumulatively give rise to a legal basis for a new trial.

## II.    ANALYSIS

Federal Rule of Civil Procedure 59 states that Court may grant a new trial "for any reason

---

[1] The Court notes that Plaintiff filed a Motion for Juror Interview and Motion for Leave to File Additional Evidence in Support of Plaintiff's Timely Filed Motion for New Trial. DE 253. In that Motion, Plaintiff sought leave of Court to interview the jurors because Plaintiff argued that post-trial statements made by Juror #6 raised questions of whether extraneous prejudicial information was improperly brought to the jury's attention and whether there was a mistake made in entering the verdict on the verdict form. *Id.* at 5. The Court denied the Motion. DE 258.

for which a new trial has been heretofore been granted in an action at law in federal court." In her Motion for New Trial, Plaintiff makes the following arguments: (1) defense expert Christopher Lawrence gave improper and inconsistent testimony; (2) the Court issued erroneous evidentiary rulings regarding the firearm and shorts used as a demonstrative aid and Mr. Hill's probationary status; (3) defense witness Sergeant Kyle King's testimony was based on materially false facts and Defendant Newman materially changed his testimony based on evidence he heard during the trial; (4) the jurors either did not understand the jury instructions or intended their verdict to be punitive; (5) the verdict is against the clear weight of the evidence; and (6) the cumulative effect of the errors and evidentiary rulings warrants a new trial. The Court will address each argument in turn.

A. Defense Expert Christopher Lawrence

Plaintiff argues that "Defendants' retained expert witness, Christopher Lawrence's contumacious testimony created severe prejudice on the proceedings." DE 237 at 4. Plaintiff's counsel points to the fact that Mr. Lawrence asked Plaintiff's counsel to speak up when Mr. Lawrence did not ask Defendants' counsel to speak up on direct examination. *Id.* at 4–5. Plaintiff also notes that when Plaintiff's counsel asked Mr. Lawrence for an accounting of costs of his services, "Mr. Lawrence bellowed out his father had recently passed away a 'couple weeks' prior and other questions would be difficult to answer." *Id.* at 5. Plaintiff's counsel states that this statement was unfair, improper, and a lie, as Mr. Lawrence's father had died on April 10, 2018 which was more than a couple of weeks before Mr. Lawrence's May 23, 2018 testimony. *Id.* Plaintiff states that Mr. Lawrence's responses to Plaintiff's counsel's questions became increasingly non-responsive. *Id.* at 5–6. Ultimately, Plaintiff argues that "Mr. Lawrence's non-responsive commentary, repeated sudden and selective hearing loss, exhaustion, and blaming of

Plaintiff after a completely problem free direct examination was not only a violation of Fed. R. Evid. 702, but created such irreversible prejudice that it warrants a new trial and sanctions." *Id.* at 6.

Defendants respond that it is not surprising that Mr. Lawrence did not ask Defendants' counsel, Mr. Bruce Jolly, to speak up as Mr. Jolly has a loud voice, and points to Mr. Lawrence's February 7, 2017 deposition in which Mr. Lawrence specifically informed Plaintiff's counsel of Mr. Lawrence's hearing limitations. DE 247 at 3. Defendants also argue that the mention of the passing of Mr. Lawrence's father is a trivial argument and clearly not a sufficient ground for a new trial. *Id.* at 3–4. Defendants state that "Mr. Lawrence conducted himself professionally at all times during the trial. This is further evidenced by the fact that it was not until after the Plaintiff lost the trial that claims of improper conduct on the part of this witness are now being lodged." *Id.* at 4.

The Court finds that nothing in Mr. Lawrence's testimony created prejudice on the proceedings. First, the Court notes that it is not surprising that a witness would have difficulty hearing one counsel but not another for a variety of reasons including the volume of counsel's voice or counsel's use of the microphone. Mr. Lawrence told Plaintiff's counsel about his hearing limitation before cross-examination began, Trial Tr., May 23, 2018, at 50:21–23 ("I am going to remind you, please, he did a good job speaking up, my hearing is not that great, I do not want to ask you to repeat yourself."), and had previously told him about his hearing limitation at his February 7, 2017 deposition, DE 241-1 at 2 ("*A.* Could I ask you to make sure you speak up? *Q.* Yes. *A.* I hear what—I can hear people speaking, but I don't always hear clearly what has been said. My hearing is not as good as it used to be. *Q.* Okay. *A.* So I may ask you to repeat

yourself."). Accordingly, the Court rejects Plaintiff's argument that Mr. Lawrence "feigned hearing loss when convenient." *See* DE 251.

Second, the Court agrees with Defendant that Mr. Lawrence mentioning that his father had passed away a few weeks before trial is not so prejudicial as to warrant a new trial. Plaintiff's counsel asked Mr. Lawrence why Mr. Lawrence had not prepared an invoice of his fees in the case prior to trial. Trial Tr., May 23, 2018, at 51:13–15. Mr. Lawrence stated that his father had died and that he had not prepared his invoice because he had been tending to other matters. *Id.* at 51:16–20. The Court notes that Plaintiff's counsel did not move to strike Mr. Lawrence's testimony regarding the death of his father. The Court agrees with Defendants that this testimony was somewhat trivial and certainly did not create unfair prejudice to warrant a new trial.

Third, the Court does not find that Mr. Lawrence's answers were non-responsive or that his testimony prejudiced Plaintiff's rights. During the cross-examination of Mr. Lawrence, Plaintiff's counsel only once sought the Court's assistance as to the non-responsiveness of Mr. Lawrence's testimony. Plaintiff's request for Court assistance occurred when Plaintiff's counsel asked Mr. Lawrence to step down from the witness stand and demonstrate what Mr. Lawrence understood Mr. Hill's body mechanics were at the time of the incident:

> *Q.* Let me fast forward some. Could you step down, please, and demonstrate what you know the facts to be insofar as Mr. Hill's body mechanics at the time this happened?
> *A.* Okay, clarify. That is a pretty broad statement.
> *Q.* Certainly. You did this when you were on the stand, but the stand was blocking you. I would like you to step down here and show what you understand Mr. Hill's body mechanics were at the time of this incident.
> *THE WITNESS:* Is that okay, your Honor?
> *THE COURT:* Yes, you may.
> *THE WITNESS:* When I went to the scene, I wanted to see what the garage door looked like when it was opened and closed. I went to the scene and I opened it

and closed it. It binds, doesn't roll nice and smooth like other garage doors I have seen, it is metal.

I looked to see if there is any evidence someone backed a car against it. There is quite a bit of time between when the event occurred --

*MR. PHILLIPS:* Your Honor, this is nonresponsive. I asked him to recreate Mr. Hill's body mechanics.

*THE COURT:* Can I ask our witness if you'd stand where counsel is so both our court reporter can better hear you and the jury can hear you and see you. Thank you.

*THE WITNESS:* When I got there, the door bound, as I pulled down on the door, my other hand wanted to come up at the same time. It took effort to pull it down, your other hand would come up like this. I said, okay, I can see how it could play out.

*BY MR. PHILLIPS*:

*Q.* You can resume your seat.

Trial Tr., May 23, 2018, at 62:21–63:25. Plaintiff's counsel sought the Court's assistance and then continued with his cross-examination. The Court notes that Plaintiff's counsel never moved to strike Mr. Lawrence's testimony or made any argument to the Court that Plaintiff did not have a full opportunity to cross-examine the witness. There is certainly nothing in this interaction that would warrant a new trial for Plaintiff; there was no impairment of her substantial rights.

B. The Court's Evidentiary Rulings

Plaintiff argues that two of the Court's evidentiary rulings substantially prejudiced her. In assessing evidentiary rulings already made by this Court, the question is whether the admission of the evidence affected Plaintiff's substantial rights. "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984) (citations omitted). Plaintiff bears the burden of showing that the decision(s) affected her substantial rights. *Id.* (citation omitted). First, she argues that the Court erred in permitting the use as a demonstrative aid of the firearm and shorts found on Mr. Hill. Second, Plaintiff argues that the Court erred in permitting the introduction of evidence that Mr. Hill was on probation, even though the Court instructed the

jurors about the limited reason for which they could consider Mr. Hill's probationary status. The Court addresses each argument in turn.

### i. The Firearm and Shorts Use as a Demonstrative Aid

Plaintiff argues that Defendants disclosed less than forty-eight hours before the trial that they were in possession of and intended to use as evidence the gun found in Mr. Hill's pocket. DE 237 at 6. Plaintiff states that Defendants never disclosed the gun in any of their six Federal Rule of Civil Procedure 26(a) disclosures. *Id.* at 7. Plaintiff also state that she was prejudiced because Defendants' witness "Sergeant Lebeau was permitted to testify about the handgun and perform an impromptu demonstration of placing the handgun into the back-right pocket of Mr. Hill's jean shorts." *Id.* Plaintiff states that it was improper for a lay witness to perform this demonstration, especially without advance warning to Plaintiff. *Id.* at 6–7.

Defendants respond that the Court has already ruled regarding Defendants' disclosure of the gun and the shorts. DE 247 at 5. Defendants also argue that the Court has broad discretion to permit demonstrations that it believes will assist the jury. *Id.* (citing *United States v. Rackley*, 742 F.2d 1266, 1272 (11th Cir. 1984)). Defendants state that Sergeant Labeau's demonstration of the gun fitting in the pocket of Mr. Hill's shorts was appropriate to rebut Plaintiff's suggestion "that Mr. Hill never held the gun at any point during his interaction with the deputies because he would not have had the time nor the opportunity to place the gun in his back pocket before being fatally wounded." DE 247 at 6.

The Court agrees with Defendants. Prior to the trial, Defendants filed a motion to allow an unloaded firearm in the courtroom as an exhibit during trial. DE 192. Plaintiff objected arguing that the gun was not disclosed pursuant to Rule 26(a). DE 198. According to Plaintiff, Plaintiff was completely unaware that Defendants were in possession of the gun until less than

48 hours before the start of trial; Plaintiff was never given the opportunity to inspect the gun and Plaintiff's expert did not have an opportunity to examine the gun; and utilizing the gun provided no additional insight for the jury when there were photographs available and would only prejudice Plaintiff. *Id.*

Defendants replied that the fact that the Sheriff's Office seized the firearm as well as Mr. Hill's clothing had been well documented and was known to Plaintiff's counsel throughout the litigation. DE 205. Defendants argued that they did disclose that they had the gun "in a material respect through discovery or through the Defendants' Rule 26 disclosures." *Id.* at 1. Defendants pointed to various disclosures that they argued should have informed Plaintiff that Defendants were in possession of the gun. *Id.* 1–2. For instance, they noted that several of their Rule 26 disclosures listed the reports, inventory returns and criminal investigative materials associated with the shooting investigation. *Id.* They also noted that Plaintiff listed the St. Lucie County Sheriff's Office Investigation Book in her Rule 26 disclosure; that investigation book included reports of deputies stating what evidence was seized, including the gun. *Id.* Defendants pointed to their 2017 Exhibit Lists which had Evidence Lists as exhibits and stated that Plaintiff did not object or inquire about these exhibits. *Id.* at 3. Defendants also noted that during the December 6, 2016 deposition of Sergeant Edgar Lebeau, Plaintiff's counsel inquired about whether the physical evidence of the case would still be in the Sheriff's Office evidence room. *Id.* at 3–4. Sergeant Lebeau did not know the answer but provided Plaintiff's counsel with the name of the person in the Sheriff's Office to whom Plaintiff's counsel should inquire. *Id.*

During the trial, Defendants' counsel stated that it was not seeking to have the gun and shorts admitted into evidence but wanted to use them as demonstrative aids. Trial Tr., May 21, 2018, at 9:3–6.

At the trial, the Court stated:

> Federal Rule of Procedure 37(c)(1) [states that] if the parties fail to identify witness as required by 26(a) or (e), the party is not allowed to use that information or evidence on a motion unless the failure was justified or harmless.
>
> Even if the gun was not disclosed as clearly as it could have been under Rule 26, the Court finds this is not prejudicial to Plaintiff because Plaintiff's counsel was on notice, therefore the Plaintiff's objection under Rule 37 is denied, and Defendants are not prohibited from using the gun under Rule 37.
>
> The Court doesn't have to make a determination as to admissibility because it is going to be used for demonstrative purposes, but it does not mean it is coming in for evidence.
>
> The gun has high probative value that Deputy Newman saw Mr. Hill holding the gun. The physical evidence would include what the gun looked like, and its size could be relevant to the jury in assessing Deputy Newman's actions. And then there is the issue of how and if the gun could make its way into the back pocket, so that clearly has been put out there, it is a relevant issue. It is up to counsel how they want to argue the issue. As far as being used for demonstrative purposes, the Court will allow it.

Trial Tr., May 21, 2018, at 11:8–12:4. The gun was not admitted into evidence but used as a demonstrative aid. Accordingly, the Court need not determine whether it should have been excluded under Federal Rule of Civil Procedure 37(c)(1). *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply *evidence* . . . at a trial, unless the failure was substantially justified or is harmless.) (emphasis added). The Court notes, however, that Defendants' failure to explicitly disclose that the gun was in their possession was harmless. Plaintiff was clearly put on notice that Defendants collected the gun and shorts following the incident and there was no indication to Plaintiff that the gun and shorts ever left Defendants' possession.

Additionally, it was proper to allow Sergeant Labeau to demonstrate that the gun could fit into the shorts pocket. "[A] trial court has broad discretion regarding experiments it will allow in the presence of the jury." *United States v. Rackley*, 742 F.2d 1266, 1272 (11th Cir. 1984)

(citation omitted). As the Court stated at trial, the gun had a high probative value. Trial Tr., May 21, 2018, at 11–12. Throughout the trial, Plaintiff argued that Mr. Hill never had the gun in his hand but rather the gun remained in his pocket throughout the interaction with the deputies. *See, e.g.*, Trial Tr., May 17, 2018, at 214:2–10. Because questions were raised about Mr. Hill's ability to place the gun in his shorts, the probative value of seeing that the gun fit into the pocket of the shorts was high and there was no error in allowing Sergeant Labeau to demonstrate that the gun fit into Mr. Hill's back pocket.

ii.   Mr. Hill's Probationary Status

Plaintiff argues that it was error for the Court to allow in any evidence of Mr. Hill's probationary status because the fact that Mr. Hill was on probation "was not a known fact or circumstance confronting Defendant Newman." DE 237 at 9. Plaintiff argues that evidence of Mr. Hill's probationary status was extremely prejudicial because it informed the jury that Mr. Hill was a past criminal. *Id.* at 13. Plaintiff also notes that Defendants submitted evidence that at the time of the shooting Mr. Hill was actively committing a crime in that he was consuming alcohol and possessing a firearm in violation of his probation. *Id.* Plaintiff argues that "[t]he prejudicial impact of admitting such evidence . . . confuse[d] the jury as to the issues of the present 42 U.S.C. § 1983 and the Negligence case." *Id.* at 14. Plaintiff notes that the Court issued the following limiting instruction: "ladies and gentlemen, as you have heard, Mr. Hill was on probation. This evidence is only admissible to the extent that you think it is relevant to Mr. Hill's actions on the date of the incident. It is not to be considered for any other purpose. What Mr. Hill was on probation for is irrelevant and should not be considered by you." *Id.* According to Plaintiff, the Court's "limiting instruction did nothing to quell the prejudicial impact of informing that Mr. Hill was a criminal. It also did not delineate the relative inadmissibility

probation had in the federal versus state law claim." *Id.* at 15.

Defendant responds that the evidence of Mr. Hill's probationary status was properly admitted because it added credibility to Defendant Newman's claim regarding the manner in which Mr. Hill acted. DE 247 at 7 (relying on *Escobedo v. Martin*, 702 F.3d 388, 400 (7th Cir. 2012)).

The Court finds that the evidence of Mr. Hill's probationary status was relevant and that it was not overly prejudicial, especially considering the Court's limiting instruction regarding the purpose for which the information was being admitted. During trial, the parties fiercely disputed whether or not Mr. Hill had a gun in his hand when he opened the garage door. Plaintiff argued that Mr. Hill did not have the gun in his hand, *see, e.g.*, Trial Tr., May 17, 2018, at 214:2–10, but that it was in Mr. Hill's back pocket, which is where it was found by law enforcement, Trial Tr., May 23, 2018, at 109:12–13 ("[T]he evidence is entirely inconsistent with it being out of Mr. Hill's pocket."). To support her argument, Plaintiff offered the testimony of Earl Ritzline, a DNA expert who testified that the gun had a low level mixture of at least three individual's DNA, *id.* at 109:2–11; the testimony of Dr. Robert Anderson, a medical examiner who testified that the shot to Mr. Hill's brain would have rendered him incapable of any motor function, Trial Tr., May 21, 2018, at 36:1–15; and the testimony of Mr. Hill's daughter, Destiny, who testified that her Mr. Hill was not holding a gun, *id.* at 109:2–5.

Defendants' theory of the case was that Mr. Hill opened the garage door with the gun in his hand. According to Defendants, when Mr. Hill saw that it was law enforcement knocking on his door, he knew he was in violation of two terms of his probation by being intoxicated and possessing a firearm. *See* Trial Tr., May 23, 2018, at 155:5–24. Accordingly, Mr. Hill closed the garage door in order to avoid being found in violation of his probation. *Id.* ("[B]ecause Mr. Hill

knew he was on probation, had no business having a gun and being under the influence of alcohol, his main concern was getting that gun out of view, get it in his pocket, put it away, and it was found in his back pocket. He was able to put it there on his own."). Defendants relied on the testimony of Deputy Lopez that Mr. Hill was holding a gun when he opened the garage door, Trial Tr., May 18, 2018, at 208:22–25; Defendant Newman's testimony that he saw Mr. Hill holding a gun when Mr. Hill opened the garage door, Trial Tr., May 22, 2018, at 136:17–19; and the testimony of Niles Graben that Mr. Hill was on probation and that his probation prohibited the consumption of alcohol or the possession of a firearm, Trial Tr., May 21, 2018, at 129:1–23. Because of the dispute regarding whether Mr. Hill had the gun in his hand when he answered the door, Mr. Hill's probationary status was relevant in order to add credibility to Defendant Newman's version of the events.

The Court notes that this case is not unlike the case of *Knight v. Miami-Dade Cnty.*, 856 F.3d 795 (11th Cir. 2017). In that case, Miami-Dade police officers attempted to perform a traffic stop on an SUV but the driver did not stop the car. *Id.* at 803–04. Eventually, the car stopped at a dead end and the officers exited their car with guns drawn. *Id.* at 804. The parties disputed what happened next. The defense theory was that the driver of the car intentionally accelerated backward towards the officers who had to move to avoid being struck by the vehicle. *Id.* The officers then shot at the vehicle, killing two of the occupants and injuring a third. *Id.* The Plaintiff's theory of what happened was that, when the car was stopped, an officer fired a single shot which hit the driver. *Id.* The driver's body then fell forward and the car began accelerating backwards, causing the officers to shoot at the vehicle. *Id.* The Eleventh Circuit affirmed the District Court's decision to admit the driver's most recent conviction in the § 1983 trial "because it was material to the defense theory that his earlier conviction and his probation status caused

him to initiate, and refuse to cease, flight when confronted by the officers." *Knight*, 856 F.3d at

816. The Eleventh Circuit further explained that:

> As for [the driver's] criminal history, the evidence was plainly admissible under
> Rule 404(b) to establish his motive to flee from Officers Robinson and Mendez.
> [The driver and the passengers] were all on probation at the time, and [the driver]
> had a probation hearing the next day. Evidence of [the driver's] most recent
> conviction, for which he was then on probation, was therefore probative of his
> motive to flee from the officers: had he pulled over, he would have been caught
> associating with other people on probation, which might have jeopardized his
> probationary status.

*Id.* at 816–17. In Mr. Hill's case, evidence of Mr. Hill's probationary status was probative of his

motive to close the garage door and put the gun in his back pocket, in order to avoid jeopardizing

his probationary status. Evidence of Mr. Hill's probationary status was probative of the defense

theory of the case—that Mr. Hill answered the garage door with a gun in his hand and then

placed it in his back pocket.

The introduction of Mr. Hill's probationary status was also not overly prejudicial. Federal

Rule of Evidence 403 states that "[t]he court may exclude relevant evidence if its probative value

is substantially outweighed by a danger of . . . unfair prejudice." To limit the unfair prejudice of

the evidence of Mr. Hill's probationary status, the Court read the following limiting instruction:

"ladies and gentlemen, as you have heard, Mr. Hill was on probation. This evidence is only

admissible to the extent that you think it is relevant to Mr. Hill's actions on the date of the

incident. It is not to be considered for any other purpose." Trial Tr., May 18, 2018, at 150:10–14.

This instruction limited the danger of any prejudicial effect of the jurors knowing that Mr. Hill

was on probation. Accordingly, when weighing the probative value and the danger of unfair

prejudice, the Court finds that the probative value of Mr. Hill's probationary status was not

substantially outweighed by a danger of unfair prejudice.

C. <u>Testimony of Sergeant Kyle King and Defendant Newman</u>

Plaintiff argues that the testimony of Defendants' expert Sergeant Kyle King was based on false facts and that Defendant Newman perjured himself after listening to the testimony of other witnesses. DE 237 at 15–17. Plaintiff states that Sergeant Kyle King's powerpoint reconstruction presentation was based on Defendant Newman's prior statements that Mr. Hill had raised his gun about waist level when it was fired. *Id.* at 16. Plaintiff notes that Defendant Newman was present for the testimony of Plaintiff's expert, Dr. William Anderson, who "testified that it is unlikely that Mr. Hill raised a gun 'anywhere near' Deputy Lopez based upon the positioning of the hand relative to Mr. Hill's abdomen wound." *Id.* (citing Trial Tr., May 21, 2018, at 26:19–24). According to Plaintiff, Defendant Newman materially changed his testimony after hearing the testimony of other witnesses; Defendant Newman demonstrated at trial that Mr. Hill only raised his arm in a slightly upward direction, which is in conflict with his prior statements that Mr. Hill had raised the gun waist level. DE 237 at 17. Plaintiffs state that, because of the change in Defendant Newman's testimony, Sergeant King's powerpoint was not an accurate reconstruction but the "Defendants still called Sgt. King to testify as an expert witness at trial even though his testimony was limited to the admittedly inaccurate reconstruction of the subject incident." *Id.*

Defendants respond that, even assuming Defendant Newman's testimony at trial differed from his previous deposition testimony, Plaintiff's remedy was to impeach Defendant Newman with his prior inconsistent statements at trial, not to seek a new trial. DE 247 at 9. Defendants also state that "to the extent Plaintiff takes issue with some of the information Sgt. King received in formulating his opinions, the appropriate way to address that was in cross-examination of the witness. Plaintiff had that opportunity." *Id.* at 10.

Plaintiff replied that she did not have an opportunity to cross-examine Sergeant King on the fact that his reconstruction was not an accurate reconstruction of the circumstances of the shooting because Sergeant King testified before Defendant Newman and it was Defendant Newman's changed testimony that showed that Sergeant King's reconstruction was inaccurate. DE 251 at 10.

The Court finds that Defendant Newman and Sergeant King's testimony did not prejudice Plaintiff's rights and that their admission does not merit a new trial. Defendants are correct that Plaintiff's remedy for any changes in Defendant Newman's testimony was through impeachment. If Defendant Newman had previously stated that Mr. Hill had raised the gun higher than he demonstrated during the trial, Plaintiff should have impeached him with his prior inconsistent statements. Certainly every change in a witness's testimony cannot lead to a new trial.

Similarly, there was nothing in Sergeant King's testimony that prejudiced Plaintiff's rights. Defendants did not bring up Sergeant King's powerpoint on direct examination; rather, Plaintiff did on her cross-examination. Trial Tr., May 22, 2018, at 41:2–7. And, Sergeant King testified that his conclusions were based on photographs, physical evidence, and statements, including Defendant Newman's pre-trial statements. *Id.* at 28:12–17. Sergeant King's testimony did not even delve into where the gun was pointing when Defendant Newman shot. His testimony was simply that he did not see any inconsistencies when reviewing the evidence with the deputies' statement about what happened. *Id.* at 29:17–23. During closing arguments, Plaintiff's counsel said:

> Sergeant Kyle King came in with opinions and a PowerPoint presentation that didn't get presented, I guess, or he had prepared, and admitted that PowerPoint presentation, or multiple photos like this, that he got it from evidence

> directly submitted by St. Lucie County Sheriff's Office, nobody else, he didn't do any independent.
>
> I asked him if he did a PowerPoint about the facts that the jury heard, you guys, how the arm could avoid being hit, blood spattering, DNA on the gun, no. How he put it back in the back pocket with all this going on, no.

Trial Tr., May 23, 2018, at 117:15–24. Plaintiff raised her concern with the weight the jury should give Sergeant King's testimony and made clear, as Sergeant King had on the stand, that his conclusions were based solely on the evidence that was given to him from the St. Lucie County Sheriff's Office. *Id.* The jury was able to consider what weight to give Sergeant King's testimony and, if the jury believed it conflicted with other testimony they heard, the jurors were free to reject it. There was nothing in Sergeant King or Defendant Newman's testimony that prejudiced Plaintiff's rights and Plaintiff is not entitled to a new trial on this ground.

## D. Jury's Verdict

Plaintiff argues that "[t]he inconsistent and legally improper verdict indicates juror confusion over the jury instructions and verdict form. In particular, there appeared to be confusion over the jury instructions' explanation of awardable damages and how those damages are apportioned on the verdict form." DE 237 at 17. Plaintiff takes issue with the fact that the Court did not read the title to each jury instruction when the Court charged the jury. *Id.* at 18. Plaintiff argues that the result of the Court not reading the titles of the jury instructions resulted in jury confusion; this caused the jury "to make a finding that only nominal damages were appropriate or sought to punish the Plaintiff and awarded an amount unsupported by evidence. The issue here is that nominal damages only pertained to the federal civil rights claim, *not* the negligence claim." *Id.* (emphasis in original). Plaintiff states that "[t]he other logical explanation for the jury's inconsistent verdict was that it intended to be punitive." *Id.* at 19.

Defendants respond that the jury instructions properly stated the law and that Plaintiff

waived any argument that the Court erred in failing to read the title pages of the jury instructions by not objecting after the Court read the instructions. DE 247 at 10–11. Defendants note that Plaintiff's argument that the verdict may have been intended to be punitive is mere speculation. *Id.* at 11. Defendants also note that "[i]n any event, the jury's decision as to Plaintiff's damages was ultimately, in practical effect, irrelevant based on its finding that Mr. Hill was intoxicated and that as a result of his intoxication was more than 50% at fault for his injuries entitling the Sheriff to judgment as a matter of law pursuant to F.S. § 768.36." *Id.* at 12.

The Court agrees with Defendants. First, the Court rejects Plaintiff's argument that the fact that the Court did not read the title pages of the jury instructions prejudiced Plaintiff. The Court notes that, following the Court's reading of the jury instructions, the Court asked each party if the Court had read the instructions as discussed in the charging conference. Both parties agreed that the Court had. Trial Tr., May 23, 2018, at 96:23–97:9 ("From the Plaintiff, did the Court give the instructions as discussed in the conference? *MS. HINES:* Yes, your Honor. *THE COURT:* Are there any objections that have not already been made as a matter of record? *MS. HINES:* No, your Honor. *THE COURT:* Defense, has the Court read the instructions discussed in the conference? *MR. BRUCE JOLLY:* Yes. *THE COURT:* Are there any objections that have not been made on the record? *MR. BRUCE JOLLY:* No, your Honor."). If Plaintiff thought that the Court should have read the title to the jury instructions, Plaintiff should have raised the objection at that time so that the Court could have remedied Plaintiff's objection at that time. The Court also notes that each juror received a copy of the jury instructions that included the title of each instruction. Accordingly, the jurors could have referred to the title of each jury instruction if they were confused about what damages instruction applied to which claim.

Second, the Court notes that the verdict was not legally inconsistent and any confusion

the jury may have had regarding the damages portion is legally irrelevant. Legally irrelevant, in this context, means that the jury's damages calculation is without practical effect because of the jury's determination as to liability and, accordingly, does not bear on the Court's decision regarding Plaintiff's Motion for New Trial. In stating that the jury's damage award is legally irrelevant, the Court is expressing no opinion about the damages award. The Court is simply stating that the jury's award has no impact on the legal issues before the Court because of the jury's determinations as to liability; that is, the jury's determination about who was at fault— specifically the jury's determination that Mr. Hill was intoxicated and more than 50% at fault— renders any determination that the jury made as to damages irrelevant as to Plaintiff's Motion for New Trial.

Plaintiff states that the jurors were confused because they thought nominal damages were available for the negligence claim, when in fact the instruction on nominal damages applied only to the § 1983 claim. Even if the jurors were confused about the availability of nominal damages in a negligence claim, their confusion is legally irrelevant because their conclusions that Mr. Hill was under the influence of alcoholic beverages and that he was more than 50% at fault prevented Plaintiff from collecting any damages for the negligence claim. *See* Fla. Stat. § 768.36. The verdict form could have instructed the jurors that if they found that Mr. Hill was intoxicated and 50% at fault for the incident and his injuries, they need not reach the question of damages. Accordingly, any confusion they had about the availability of nominal damages does not materially impact their verdict because of the jury's determination as to liability and does not render the verdict inconsistent or flawed.

Third, the Court notes that speculation regarding why the jury arrived at their verdict cannot be the basis for a new trial. Specifically, the jury instructions instructed that nominal

damages were available for the § 1983 if the jury found that:

> (a) Plaintiff has submitted no credible evidence of injury; or (b) Plaintiff's injuries have no monetary value or are not quantifiable with any reasonable certainty; or (c) Defendant Christopher Newman used both justifiable and unjustifiable force against Gregory Vaughn Hill, Jr. and it is entirely unclear whether Gregory Vaughn Hill Jr.'s injuries resulted from the use of justifiable or unjustifiable force.

DE 224 at 13. During closing arguments, Defendants pointed the jurors to (c). Defendants' counsel said:

> I would have you focus on C, Defendant Christopher Newman used both justifiable and unjustifiable force against Gregory Vaughn Hill, Jr. and it is entirely unclear whether Gregory Vaughn Hill, Jr.'s injuries resulted from the use of justifiable or unjustifiable force. Again, it pains me to talk about damages, and ultimately your verdict has to be unanimous. If you went down the road of damages, I would submit to you that that would be the way to go if there was any confusion about whether or not Deputy Newman should have used deadly force on Mr. Hill.

Trial Tr., May 23, 2018, at 159:25–160:9. Given the Defendants' closing arguments and emphasis on part (c) of the nominal damages jury instruction, the jurors, in awarding nominal damages on the negligence claim, may have been indicating that they thought it was unclear if Defendant Newman used justifiable or unjustifiable force. This conclusion would not have been inconsistent with their conclusion that Mr. Hill was 99% at fault and that Sheriff Mascara in his official capacity, through Defendant Newman, was 1% at fault for Mr. Hill's death. In reading the jury's verdict with this background in mind, the jurors could have been saying that they believe that Defendant Newman used both justifiable and unjustifiable force against Mr. Hill and that the jury could not determine if Mr. Hill's injuries were the result of the use of justifiable or unjustifiable force. This would not be the punitive verdict that Plaintiff speculates the jurors intended in awarding such a low amount of damages.

Speculation aside, the Court notes that it does not matter legally whether the jurors were

intending to be punitive or were stating that they thought it was unclear whether Defendant Newman used justifiable or unjustifiable force. The jurors should not have even reached the damages section of the verdict form, which is Plaintiff's sole basis to argue that the jurors were confused. Even if the jurors were confused about the amount of damages they could award, their damages award is legally irrelevant; their conclusions were that Defendant Newman did not use excessive force and that Mr. Hill was under the influence of alcoholic beverages to the extent that his normal faculties were impaired and, that as a result of the influence of such alcoholic beverage, Mr. Hill was more than 50% at fault for this incident and his resulting injuries. Accordingly, Plaintiff was not entitled to any damages and any juror confusion regarding the type of damages they could award for each claim is immaterial and not grounds for a new trial.

Although the damages verdict was legally irrelevant, one last point bears discussion, even though it has no impact on the Court's decision. The jury's award of $1.00 each for funeral expenses and to each of Mr. Hill's three minor children was not supported by Plaintiff's evidence as to damages. Ms. Bryant's undisputed testimony was that the funeral expenses for Mr. Hill were $11,352. Trial Tr., May 17, 2018, at 259:6–12. All three of Mr. Hill's children testified about the relationships they had with their father, including that he took them fishing and that they missed him. Test. of G.H., Trial Tr., May 21, 2018, at 99:25–100:7; Test. of A.H., *id.*, at 101:24–102:25; Test. of D.H., *id.* at 111:2–20. The Court notes this because of the emotional nature of the case and the truly tragic outcome of the events of that day. Ultimately, however, any evidence regarding the damages suffered by Mr. Hill's children or the funeral expenses incurred by Plaintiff are legally irrelevant and do not show any flaw in the jury's verdict or any reason for this Court to grant a new trial.

E.   The Weight of the Evidence

Plaintiff argues that the jury's verdict was against the clear weight of the evidence. Plaintiff points to the following evidence that she argues shows that the jury verdict was against the clear weight of the evidence:

> Roy Bedard, an expert on police practices, testified extensively on proper police protocol when a subject is behind an opaque surface. He also testified specifically about the troubling paradox created by discrepancies between Defendant Christopher Newman's testimony and the physical evidence presented. (Trial Tr. Vol. 2, 181-182, 16). Dr. William Anderson, a trained Medical Examiner, gave testimony regarding Mr. Hill's gunshot wounds and the order in which they were likely sustained. Dr. Anderson's testimony supported that of Earl Ritzline of the Indian River Crime Lab who testified about the DNA results which revealed that none of Mr. Hill's DNA was conclusively found on the KelTec firearm recovered from his back pocket. Furthermore, several independent eye witnesses located directly across the street from where the shooting occurred testified that they never saw Mr. Hill holding a gun in his hand.

DE 237 at 19–20. Plaintiff states that, based on this evidence, no rational jury could have found that Defendant Newman's use of force against Mr. Hill was not excessive in violation of 42 U.S.C. § 1983 or that Mr. Hill was 99% at fault for his own death. *Id.* at 20.

Defendants respond that "Plaintiff's cherry picking of the evidence the jury heard which was favorable to her and suggesting that the jury ignored it does not entitle her to a new trial. Indeed, the jury was entitled to reject Plaintiff's evidence if it were unrebutted if it chose to." DE 247 at 13 (citations omitted).

The Court agrees with Defendants. A new trial should not be granted "unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC.*, 684 F.3d 1211, 1231 (11th Cir. 2012) (citation omitted). Although the Court is permitted to weigh the evidence, it must be with this standard in mind. *See Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir. 1988) ("In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence, but

to grant the motion he must find the verdict contrary to the great, not merely the greater, weight of the evidence.").

The jury's verdict was not against the great weight of the evidence. The evidence about whether or not Mr. Hill had the gun in his hand when he opened the garage door was mixed. Plaintiff states that "several independent eye witnesses located directly across from the street from where the shooting occurred testified that they never saw Mr. Hill holding a gun in his hand." DE 237 at 20. This is a misleading statement. The only witness who said that she could see Mr. Hill and that he was not holding a gun was Mr. Hill's daughter, Destiny. *See* Trial Tr., May 21, 2018, at 109:2–5. All of the other witnesses who were across the street testified that they did not see Mr. Hill or his hands at all; thus, they could not tell if he was holding a gun. *See, e.g.*, Test. of Juanita Wright, Trial Tr., May 17, 2018, at 234:17–20 ("*Q.* And I understood your testimony, you were asked if you ever saw Mr. Hill with a gun. It is accurate to say you never saw Mr. Hill at all, correct? *A.* That day, no."); Test. of Donna Hellums, Trial Tr., May 17, 2018, at 240:23–25 ("*Q.* You were asked on direct if you saw Mr. Hill with a gun. You never saw Mr. Hill at all, correct? *A.* I never saw Mr. Hill at all."); Test. of Stefani Scheutz, Trial Tr., May 18, 2018, at 13:21–14:3 ("*Q.* And therefore, for any instant during this, I think I know the answer, but did you see anybody holding up a gun or – from inside the garage, holding up a gun or bringing the gun in the direction of anybody outside the garage? *A.* No. I couldn't see anyone from my angle at all. If there was -- I could not see inside the garage and it was also – it happened very fast to where I -- at that time I sped my car away, I wasn't looking at all."). And, both Defendant Newman and Deputy Lopez testified that they saw Mr. Hill holding a gun. Test. of Christopher Newman, May 22, 2018, at 136:17–19; Test. of Edward Lopez, Trial Tr., May 18, 2018, at 208:22–25. The great weight of the evidence did not show that Mr. Hill did not have the

gun in his hand; the jury was entitled to reject Plaintiff's evidence that Mr. Hill did not have the gun in his hand when he opened the garage door and believe the deputies testimony that Mr. Hill did have a gun in his hand when he opened the garage door.

Additionally, the jury was entitled to credit Deputy Lopez and Defendant Newman's testimony that Mr. Hill made a movement with the hand holding the gun, causing Defendant Newman to discharge his weapon. *See* Test. of Christopher Newman, May 22, 2018, at 137:4–7; Test. of Edward Lopez, Trial Tr., May 18, 2018, at 208:22–209:5. This could lead the jury to conclude that the force used by Defendant Newman was not excessive. Accordingly, the verdict was not against the great weight of the evidence and Plaintiff is not entitled to a new trial based on the weight of the evidence.

Again, the Court notes that its analysis regarding the weight of the evidence does not speak to the damages aspect of the jury's verdict. Because the jury's verdict was not against the great weigh of the evidence as to liability, the Court is not commenting on the jury's damages award because the award was a nullity in practical effect.

F.   The Cumulative Effect

Plaintiff argues that the cumulative effects of the errors and evidentiary rulings identified in her Motion for a New Trial demonstrate that Plaintiff's substantial rights were prejudiced and, accordingly, Plaintiff is entitled to a new trial. DE 237 at 20. The Court does not find that any of the grounds raised in Plaintiff's motion, or their cumulative effect, prejudiced Plaintiff's substantial rights. Accordingly, the cumulative effect of the grounds raised in Plaintiff's motion do not entitle Plaintiff to a new trial.

### III. CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that Plaintiff's Motion for New Trial [DE 237] is **DENIED.**

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 14th day of August, 2018.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE