UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 16-14072-CIV-CANNON/Reinhart

VIOLA BRYANT, as Personal
Representative of the Estate of
Gregory Vaughn Hill, Jr.,

    Plaintiff,
v.

SHERIFF KEN MASCARA and
CHRISTOPHER NEWMAN,

    Defendants.
_____/

## ORDER DENYING MOTION FOR NEW TRIAL

**THIS CAUSE** comes before the Court upon Plaintiff's Second Amended Motion for New Trial (the "Motion"), filed on January 17, 2023 [ECF No. 491]. The Court has reviewed the Motion, Defendants' Response in Opposition [ECF No. 498], the entire record,[1] and is otherwise fully advised in the premises. For the following reasons, Plaintiff's Motion [ECF No. 491] is **DENIED**.

### BACKGROUND

This case arises out of a January 14, 2014, incident in which Defendant Christopher Newman, a St. Lucie County Sheriff's Deputy, shot and killed Plaintiff's former husband, Gregory Vaughn Hill, Jr., through Mr. Hill's garage door while responding to a noise complaint [ECF No. 1-1]. The case initially proceeded to a jury trial (the "2018 Trial"), presided over by Judge Robin L. Rosenberg, on May 17, 2018, on two counts: a 42 U.S.C. § 1983 against Defendant Newman for excessive force and a negligence claim against Defendant Sheriff Ken Mascara in his

---

[1] Plaintiff did not file a reply brief in support of her Motion.

official capacity as Sheriff of St. Lucie County [ECF No. 209]. On May 24, 2018, the jury returned a verdict in favor of Defendants [ECF No. 223]. Plaintiff moved unsuccessfully for a new trial [ECF Nos. 237, 259].

Plaintiff timely appealed Judge Rosenberg's order denying Plaintiff's motion for a new trial [ECF No. 263]. In May 2020, the Eleventh Circuit ordered a new trial, citing improper admission of evidence related to Mr. Hill's probationary status during the 2018 Trial [ECF No. 272]. The Eleventh Circuit determined that Mr. Hill's criminal history did not help resolve either of the two central facts in dispute in this case: (1) whether Mr. Hill was holding a gun when he opened the garage door; and (2) whether it was possible for Mr. Hill to place the gun in his back pocket before he was shot [ECF No. 272 pp. 11–14]. Accordingly, the Eleventh Circuit determined that evidence of Mr. Hill's probationary status was "not relevant to any issue other than Hill's character," and its admission warranted a remand for a new trial [ECF No. 272 pp. 14–18].

Following remand, the case was reassigned to the undersigned [ECF No. 305]. Plaintiff filed a Motion to Change Venue, which the Court denied [ECF Nos. 337, 341]. The second jury trial (the 2022 Trial) began on July 18, 2022 [ECF No. 438]. After a seven-day trial, the jury returned a verdict in favor of Defendants on July 27, 2022 [ECF No. 465]. Plaintiff timely filed a Motion for a New Trial pursuant to Rule 59 of the Federal Rules of Civil Procedure [ECF No. 479]. Defendants moved for an extension of time to respond to Plaintiff's Motion for a New Trial because Plaintiff's Motion indicated that Plaintiff would need to file a supplemental brief once the trial transcript became available [ECF No. 483]. On September 1, 2022, the Court granted Defendants' Motion for an Extension of Time and instructed Plaintiff to file its supplemental brief "within seven (7) days of receiving the entire trial transcript" [ECF No. 484].

By December 15, 2022, Plaintiff still had not filed her supplemental brief or otherwise indicated that she was in receipt of the entire trial transcript. Accordingly, the Court denied Plaintiff's Motion for a New Trial without prejudice and instructed Plaintiff to file a fully briefed Amended Motion for a New Trial by January 9, 2023 [ECF No. 489]. Plaintiff timely filed an Amended Motion for a New Trial on January 6, 2023 [ECF No. 490] but subsequently filed a Second Amended Motion for a New Trial on January 17, 2023, to add an exhibit [ECF No. 491]. The Court accepted the late filed Second Amended Motion for a New Trial [ECF No. 493]. The Motion is ripe for adjudication [ECF No. 498].

## LEGAL STANDARD

A motion for a new trial under Rule 59(a) of the Federal Rules of Civil Procedure may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A party may move for a new trial on a number of bases, including that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).

In reviewing a motion for a new trial, the judge is "free to weigh the evidence." *Rosenfield v. Wellington Leisure Prod., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987) (quoting *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982) (citing *Rabun*, 678 F.2d at 1060). But "[c]ourts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Narcisse v. Ill. Cent. Gulf R. Co.*,

620 F.2d 544, 548 (5th Cir. 1980) (quoting *Tennant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 35 (1944)).[2] District courts "should not substitute [their] own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) (quoting *Rosenfield*, 827 F.2d at 1498). District courts should grant a motion for new trial only if "the verdict is against the great, and not the greater weight of the evidence." *Ard v. Sw. Forest Indust.*, 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir. 1988) (alterations added)).

In assessing evidentiary rulings already made by the Court, the question is whether the exclusion or admission of evidence affected the moving party's substantial rights. *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1446 (11th Cir. 1984). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Id.* "The burden of demonstrating that substantial rights were affected rests with the party asserting error." *Id.* (citing *Liner v. J.B. Talley & Co., Inc.*, 618 F.2d 327, 329 (5th Cir. 1980)).

## DISCUSSION

Plaintiff's Motion raises ten grounds for why this Court should grant Plaintiff a new trial: (1) Defendant Newman changed his testimony at trial; (2) Detective Edgar LeBeau revealed a bias in favor of Defendants at trial; (3) Defendant Newman improperly provided testimony about his finances; (4) the Court improperly excluded video evidence of Defendants' expert opening and closing Mr. Hill's garage door; (5) Defense counsel asked an improper question of the medical examiner who performed Mr. Hill's autopsy; (6) the Court improperly excluded Plaintiff from

---

[2] Decisions handed down by the Fifth Circuit on or before September 30, 1981, are binding precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

conducting a re-re-direct examination of Officer Lopez; (7) the Court improperly admitted evidence of Mr. Hill playing poker; (8) the Court improperly permitted cumulative expert evidence; (9) the Court improperly denied Plaintiff's Motion for a Change of Venue; and (10) the verdict is against the clear weight of the evidence [ECF No. 491]. Plaintiff's Motion is devoid of any meaningful citation to the record, with the exception of a few small portions of testimony [*see* ECF No. 491]. Nevertheless, the Court addresses each argument in turn.

I. **Defendant Newman's Changed Testimony**

Plaintiff's first argument in favor of a new trial is that Defendant Newman "completely changed a majority of his testimony" from the 2018 Trial which resulted in unfair prejudice to Plaintiff [ECF No. 491 p. 4]. Plaintiff asserts that, in the 2022 Trial, Newman altered his testimony with respect to (1) the timing of the shots he fired; (2) how Mr. Hill was standing when Mr. Hill opened the garage door; and (3) Mr. Hill's actions upon opening the door [ECF No. 491 pp. 6–8]. Plaintiff also argues that the Court improperly denied her request to read a portion of Newman's testimony from the 2018 Trial during its rebuttal case as impeachment evidence [ECF No. 491 pp. 8–12]. Defendants counter by arguing that Newman's testimony in the 2022 Trial was not materially different than his testimony in the 2018 Trial, and that the portion of Newman's testimony from the 2018 Trial that the Court prevented Plaintiff from reading to the jury was not proper impeachment evidence because it pertained to Newman's training and not the shooting surrounding Mr. Hill's death [ECF No. 498 pp. 8–13]. The Court agrees with Defendants.

First, with respect to Plaintiff's argument that Newman materially changed his testimony between the 2018 Trial and the 2022 Trial, an examination of the trial transcripts reveals this argument to lack merit. During the 2018 Trial, Newman testified that the shots were fired in fractions of a second apart [ECF No. 241 p. 208]. Specifically, when Plaintiff's counsel asked Newman how fast he fired his firearm, Newman respondent "I don't know, sir, I didn't time

5

myself" [ECF No. 241 p. 208]. Plaintiff's counsel followed up by asking Newman whether the shots were fired "fractions of a second apart" to which Newman responded, "Yes, sir, that is safe to say" [ECF No. 241 p. 208]. Additionally, during the 2018 Trial, Defense counsel asked Newman about the cadence of his shots, specifically the timing between his four shots [ECF No. 241 pp. 153–54]. Newman testified that the entire sequence of his shots "was quick, but there was more of a gap between the first and the second than the third and fourth" [ECF No. 241 p. 154].

Plaintiff now asserts that Newman changed his testimony during the 2022 Trial by inserting a new pause between shots two and three [ECF No. 491 p. 7]. Specifically, when questioned by defense counsel during the 2022 Trial as to what he could recall surrounding the cadence of his shots, Newman responded "I remember I fired the first one, and there was a pause between two and three — between the first, I don't know how long, but I fired one . . . two, three, four" [ECF No. 491-1 p. 4]. In response to Defense counsel's next two questions, Newman responded that he didn't know how long his pause was, but that "[t]here was more of a pause between [shots] one, two, and three — I mean between one and two than any of the other shots" [ECF No. 491-1 p. 5]. This testimony is not inconsistent with—let alone materially different from—Newman's testimony from the 2018 Trial when Newman testified that it was safe to say the shots were fired quickly and that "there was more of a gap between the first and second than the third and fourth" [ECF No. 241 p. 154].

Despite the lack of any material difference involving Newman's testimony surrounding the cadence of his shots, Plaintiff argues, without any citation to the 2022 Trial Transcript, that the Court improperly denied Plaintiff's request to read in two pages of Newman's testimony from the 2018 Trial [ECF No. 491 pp. 8–9]. As an initial matter, despite Plaintiff's argument to the contrary, the Court allowed Plaintiff's counsel to read in portions of Newman's testimony from the 2018

6

Trial [ECF No. 503 pp. 9–10 ("MS. HANNA: Your Honor, at this time, we would read the prior testimony of Christopher Newman. THE COURT: All right. And the date of that prior testimony? MS. HANNA: May 22, 2018)]. Plaintiff's counsel then read in six pages of Newman's testimony from the 2018 Trial [ECF No. 503 pp. 10–16]. Plaintiff now argues that the Court improperly denied her request to read in an additional two pages of Newman's testimony during her rebuttal case to impeach Newman regarding the cadence of the shots he fired at Mr. Hill [ECF No. 491 pp. 8–9].

The bulk of the 2018 Testimony that Plaintiff says she should have been allowed to read into the record during rebuttal concerns Newman's training and not the cadence of the shots he fired at Mr. Hill [ECF No. 491 pp. 8–9; ECF No. 241 pp. 151–52]. And, to the extent that such testimony did refer to the cadence of the shots fired, the Court previously determined that it did not "clearly contradict or rebut Mr. Newman's testimony" [ECF No. 495 p. 11]. Thus, the two pages of testimony that Plaintiff wanted to read in on rebuttal could not have been used to impeach Newman's 2022 testimony regarding the cadence of his shots. Furthermore, on cross examination during the 2022 Trial, Plaintiff's counsel specifically questioned Newman about the cadence of the shots he fired, including any pauses in the firing [ECF No. 491-1 pp. 46–48]. Because Newman's testimony about the cadence of his shots during the 2022 Trial is consistent with his testimony during the 2018 Trial, and because Plaintiff was given ample opportunity to question Newman about the cadence of the shots on cross examination, Plaintiff has failed to meet her burden of showing that she is entitled to a new trial based on any purported change in testimony surrounding the cadence of Newman's shots. *See Traylor v. Pickering*, 324 F.2d 655, 658 (5th Cir. 1963) (determining that when a witness's testimony is different from the witness's prior testimony, a new trial should not be granted when counsel failed to raise an objection at trial).

CASE NO. 16-14072-CIV-CANNON/Reinhart

Second, as to Plaintiff's argument that Newman changed his testimony regarding how Mr. Hill was standing when Mr. Hill opened the garage door, the Court finds Plaintiff's argument that Plaintiff was unfairly prejudiced unconvincing. During the 2022 Trial, Newman testified that, when Mr. Hill opened the garage door that Mr. Hill was in a "bladed" stance, with his left foot in front of his right foot, his left hand on the bottom of the garage door, with a gun in his right hand [ECF No. 491-1 pp. 39–40]. Based on this testimony, Plaintiff argues in conclusory terms—and without any citation to the 2018 Trial or any prior testimony—that "the testimony that Mr. Hill was in a bladed stance at the time he was shot is completely inconsistent with Defendant Newman's previous testimony" [ECF No. 491 p. 7]. As the party moving for a new trial, Plaintiff has the burden of establishing that she was unfairly prejudiced by the testimony. By failing to cite to any prior testimony by Newman regarding Mr. Hill's body position when Mr. Hill opened the garage door, Plaintiff has failed to meet her burden to establish that she is entitled to a new trial based on this supposed change in testimony. Furthermore, based on the Court's review of the 2018 trial transcript, Newman's testimony in the 2022 Trial regarding Mr. Hill being in a bladed position with his left foot in front of his right is not "completely inconsistent" with Newman's testimony in the 2018 Trial as Plaintiff boldly asserts. During the 2018 Trial, Newman testified that Mr. Hill "came to the garage and faced Deputy Lopez with a firearm in [his] hand" [ECF No. 241 p. 134], and that "[w]hen the garage door came up, Mr. Hill was standing there, he was staring at Deputy Lopez, he had a gun in his hand" [ECF No. 241 p. 136]. Newman's testimony during the 2022 Trial that Mr. Hill was in a bladed stance—with his left foot in front of his right foot—was not a drastic change from Newman's testimony in the 2018 Trial. Indeed, Newman testified in both trials that Mr. Hill was holding a gun when he opened the garage door and was facing Deputy Lopez. Accordingly, the Court determines that Plaintiff is not entitled to a new trial based on this supposed change in Newman's testimony.

Finally, still on the subject of Defendant Newman's purportedly changed testimony, Plaintiff argues that Newman changed his testimony to imply that Mr. Hill came out of the garage firing a gun, which unfairly prejudiced Plaintiff. Specifically, Plaintiff takes issue with Newman's testimony that "it was a loud music call, so I wasn't expecting somebody to come out guns blazing at me or anything like that . . . ." [ECF No. 491 p. 9]. When Newman made this statement, he was responding to counsel's inquiry as to why he did not park his vehicle in front of the doorway to Mr. Hill's home [ECF No. 491-1 p. 6]. That is, Newman was explaining that police officers are trained not to park their vehicles in front of doorways regardless of the incident to which they are responding [ECF No. 491-1 p. 6]. If Plaintiff had an issue with this testimony, she should have objected to Newman's response—which she did not do [ECF No. 491-1 p. 6]—and questioned Newman on this issue on cross examination. In any event, a review of the transcripts provided by Plaintiff and Defendants reveals that Newman never stated that Mr. Hill fired his gun [ECF No. 491-1; ECF No. 498-1]. Indeed, Newman testified that Mr. Hill was only raising his gun—and had not fired—when Newman opened fire [ECF No. 491-1 p. 4]. Plaintiff has failed to meet her burden to show she is entitled to a new trial based on Newman's testimony that he did not expect anyone to come out of the house guns blazing.

At bottom, the Court determines that none of Newman's "new testimony" in the 2022 Trial was so prejudicial as to warrant a new trial. For the most part, the testimony to which Plaintiff takes issue is wholly consistent with Newman's testimony in the 2018 Trial. To the extent there was any inconsistency, Plaintiff had ample opportunity to question Newman about such inconsistencies on cross examination. Accordingly, Plaintiff has failed to meet her burden of showing she is entitled to a new trial based on Newman's supposedly new testimony.

## II.  Sergeant Edgar LeBeau's Testimony

As another justification for a new trial, Plaintiff asserts that during the 2022 Trial Sergeant Edgar LeBeau—the sheriff's office's lead investigator of the shooting—"demonstrated bias repeatedly" in favor of Defendants [ECF No. 491 p. 12].[3] Plaintiff argues—without citing to any authority—that if these biases were known prior to the 2022 Trial, such information would have disqualified LeBeau from testifying [ECF No. 491 p. 12]. The "bias" to which Plaintiff refers is LeBeau's testimony that he would defer to Deputies Lopez and Newman with respect to what they said they saw during the incident [ECF No. 491 p. 12]. Because of these statements, Plaintiff asserts that LeBeau's conclusion from his investigation that Newman did not use excessive force was "not based on objective investigation, but on his deference to the post shooting statements of Detective Newman and Detective Lopez" [ECF No. 491 p. 13]. But, as Defendants point out, on Plaintiff's cross examination of Sergeant LeBeau, Sergeant LeBeau made clear that he was only deferring to Newman and Lopez's testimony because of the corroborating evidence that he found during his investigation and because it had been eight years since the shooting had taken place [ECF No. 498-1 p. 24 ("I told you before, after I spoke with Deputy Newman and then in corroboration with what we learned through the investigation, today, now eight years after the effect, I defer to his testimony.")]. Thus, the record is clear that Plaintiff had ample opportunity to question Sergeant LeBeau on cross-examination about any bias Sergeant LeBeau may have had in favor of Defendants. This is the proper remedy for any witness bias, not wholesale exclusion of the witness's testimony. *See United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992)

---

[3] In the heading of Plaintiff's motion on this subject, she labels this argument "Edgar LeBeau Changed Testimony." Plaintiff does not, however, make any argument that LeBeau changed his testimony and instead argues that he was biased and failed to disclose his bias during the 2018 Trial [ECF No. 491 pp. 12–13].

10

(noting that a district court's discretion to admit evidence is narrow with respect to limiting a party's right to question a witness about that witness's bias). Accordingly, Sergeant LeBeau's alleged bias does not warrant Plaintiff being granted a new trial.[4]

### III. Newman's Testimony Regarding Finances

Plaintiff argues that she was unfairly prejudiced because the Court allowed Newman to introduce evidence "of his status as a poor law enforcement officer" [ECF No. 491 p. 14]. The testimony at issue concerns Newman responding to Defense counsel's inquiry as to how he recognized the type of gun that Mr. Hill was carrying [ECF No. 498-1 p. 45]. In doing so, Newman stated: "I was looking around for some firearms online, just to replace my bulky 45 that I had as a backup. And one of the ones I remember looking at was — some of them were Kel-Tecs because I mean, to be honest, they're less in price, and I didn't make much money. I didn't want to spend two paychecks on purchasing a handgun" [ECF No. 498-1 p. 45]. Plaintiff's counsel objected to this testimony without providing any basis for his objection [ECF No. 491-1 p. 45 ("Mr. Phillips: Objection.")], which the Court overruled [ECF No. 498-1 p. 45].

"The general rule is that, during trial, 'no reference should be made to the wealth or poverty of a party, nor should the financial status of one party be contrasted with the other's.'" *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1178 (11th Cir. 2002) (quoting *Batlemento v. Dove Fountain, Inc.*, 593 So. 2d 234, 241 (Fla. Dist. Ct. App. 1991)). "The erroneous admission of such

---

[4] While discussing Sergeant LeBeau's testimony, Plaintiff also argues in conclusory fashion, without any citation to the record, that (1) "the lack of evidence preservation" and "the mishandling of evidence ultimately led to the administrative determination that Detective Newman did not use excessive force when he shot and killed Mr. Hill inside his own garage"; and (2) "Plaintiff was prohibited from questioning Defendant Newman on the consequences he would have faced had it been determined he used excessive force during the Sheriff's Office's investigation of the shooting" [ECF No. 491 p. 13]. Because Plaintiff fails to cite to any portion of the record on this point, she fails to meet her burden of showing she is entitled to another new trial for any of these alleged errors.

evidence can constitute reversible error." *Id.* (citing *Baggett v. Davis*, 169 So. 372 (Fla. 1936); *Deese v. White Belt Dairy Farms, Inc.*, 160 So. 2d 543 (Fla. Dist. Ct. App. 1964)). When admission of such evidence is harmless, however, it cannot form the basis of a new trial. *Id.* "[A] new trial is warranted only where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')." *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004) (citing *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1258–59 (11th Cir. 2004); *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1330 (11th Cir. 2000); *Noble v. Ala. Dep't of Env't Mgmt.*, 872 F.2d 361, 367 (11th Cir. 1989)).

Here, the Court determines that any error regarding the admission of Newman's testimony that he didn't make much money and did not want to spend two paychecks on purchasing a backup handgun was harmless. This was the only testimony presented at trial regarding Newman's financial status, and it was done in the context of explaining how he recognized the gun that Mr. Hill was allegedly holding when Mr. Hill opened the garage door. Plaintiff has failed to show how Newman's passing reference to how much he made while discussing the types of guns he was considering purchasing caused Plaintiff to suffer a substantial prejudice. Accordingly, Plaintiff should not be granted a third trial based on this testimony.

**IV. Exclusion of Lawrence Video**

Plaintiff argues, again without any citation to the Record, that the Court abused its discretion by not permitting Plaintiff to show a video of Defendants' expert, Mr. Lawrence, opening and closing Mr. Hill's garage door (the "Lawrence Video") [ECF No. 491 pp. 15–16]. According to Plaintiff, because Mr. Lawrence used two hands in the video to close the garage door, and because two relatives of Mr. Hill testified that they saw Mr. Hill close the garage door on the day in question with both hands, the video evidence was "imperative to the Plaintiff's case to fully

demonstrate whether or not the garage door could be opened, or closed, with one hand" [ECF No. 491 p. 16]. At trial, however, Plaintiff offered a different reason for wanting to show the Lawrence Video, arguing instead that it showed a "pretty shoddy investigation" which could be used to discredit Mr. Lawrence [ECF No. 498-1 p. 37].

After reviewing the video during trial, the Court sustained Defendants' objection to showing the video to the jury based on Rule 403 of the Federal Rules of Evidence, because (1) portions of the video were unfairly prejudicial, specifically posters which could be seen in the video which called for "Justice for [Mr. Hill]"; and (2) there was "a risk of confusion to the jury given the almost three-year time span between [Mr. Lawrence's] inspection and the relevant incident insofar as the operation of the subject garage door which is a fairly important feature of this case" [ECF No. 498-1 p. 37; ECF No. 504 pp. 137–38]. Although Plaintiff now argues that the posters could have been blurred [ECF No. 491 p. 16], Plaintiff made no such argument at trial [ECF No. 504 pp. 137–38]. And the blurring of the posters would do nothing to resolve the high risk of confusion with respect to how the garage door operated in the Lawrence Video versus three years prior when the shooting occurred. Accordingly, the Court determines that Plaintiff has failed to meet her burden to show she is entitled to a new trial based on the Court's exclusion of the Lawrence Video.

V.  **Questioning of the Medical Examiner**

Plaintiff argues that on cross examination, defense counsel improperly asked the medical examiner who performed the autopsy of Mr. Hill how long cirrhosis of the liver takes to develop [ECF No. 491 pp. 16–17]. Although Plaintiff did not object to this question, she argues that it constitutes plain error because "[t]he only purpose of this speculative line of questioning by Defendants was to paint Mr. Hill as a bad man with a drinking problem," and that it was not relevant to the case [ECF No. 491 p. 17]. Defendants counter by arguing that such questioning

13

was relevant to this case because Defendant Sheriff Mascara raised the alcohol defense as set forth in Florida Statute § 768.36 [ECF No. 498 p. 17].  Indeed, the jury instructions required the jury to determine whether "(1) [Mr.] Hill was under the influence of any alcoholic beverage to the extent that his normal faculties were impaired, or that he had a blood or breath alcohol level of 0.08 percent or higher; and (2) whether as a result of the influence of such alcoholic beverage [Mr.] Hill was more than 50 percent at fault for his own harm" [ECF No. 455 p. 16].  Furthermore, as Defendants accurately point out, Plaintiff opened the door to any questions regarding cirrhosis of Mr. Hill's liver by asking her expert whether his examination of Mr. Hill revealed "any evidence of cirrhosis or alcohol related deterioration internally" [ECF No. 498 p. 17; ECF No. 501 p. 31].

It is well settled that "[a] party introducing evidence generally 'cannot complain on appeal that the evidence was erroneously admitted.'" *Ruiz v. Wing*, 991 F.3d 1130, 1140 (11th Cir. 2021) (quoting *Ohler v. United States*, 529 U.S. 753, 755 (2000)).  Under the "open the door" doctrine, "when a party offers inadmissible evidence before a jury, the court may in its discretion allow the opposing party to offer otherwise inadmissible evidence on the same matter to rebut any unfair prejudice created."  *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1349 (11th Cir. 2004) (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 177 n.2 (1988)).  By soliciting testimony from her expert that Mr. Hill had not developed cirrhosis of the liver [ECF No. 501 p. 31], Plaintiff opened the door to defense counsel rebutting that testimony by questioning the medical examiner as to how long cirrhosis of the liver takes to develop [ECF No. 491-1 pp. 15–16].  Thus, the Court determines that Plaintiff is not entitled to a new trial based on defense counsel's question to the medical examiner regarding cirrhosis of the liver.

## VI. Exclusion of Second Redirect Examination of Officer Lopez

Plaintiff argues that the Court abused its discretion by preventing Plaintiff from "fully and completely examin[ing] Officer Lopez" [ECF No. 491 pp. 17–18].  Specifically, Plaintiff takes

issue with the fact that the Court prevented Plaintiff from asking Officer Lopez an additional question following defense counsel's re-cross examination at the conclusion of day 3 of the trial [ECF No. 491 p. 18; ECF No. 501 p. 215 ("MS. BARRANCO: I have no further questions. MR. PHILLIPS: One question, Your Honor. THE COURT: No, I think we are done. Thank you. Ladies and gentlemen, it is almost 5:30. As I do each evening before we close, I want to remind you of your obligations not to conduct any additional research or speak to anybody about this case.")]. Thus, while Plaintiff states that she was prevented from conducting a redirect examination of Officer Lopez, this Court actually prevented Plaintiff from conducting a second redirect examination of Officer Lopez [ECF No. 501 pp. 130–215]. Plaintiff had abundant opportunities to fully examine the witness during her case-in-chief [ECF No. 501 pp. 130–59] and on redirect [ECF No. 501 pp. 207–14]. Accordingly, the Court determines that Plaintiff's argument that she was prevented from fully and completely examining Officer Lopez is entirely without merit, and Plaintiff is not entitled to a new trial on this basis.

### VII. Evidence of Physical Altercation

Prior to the 2022 Trial, Plaintiff filed a Motion in Limine seeking, among other things, to exclude evidence that Mr. Hill was involved in a physical altercation while playing poker on the day of the shooting [ECF No. 362 pp. 4–5]. The Court denied Plaintiff's request to exclude this evidence, reasoning that evidence of the altercation with the other poker player went directly to Mr. Hill's state of mind when the shooting took place and thus was probative on the issue as to whether Mr. Hill was holding a gun when he opened the garage door [ECF No. 402 pp. 2–3; ECF No. 406 pp. 7–12]. In denying Plaintiff's request to exclude this evidence, the Court cautioned Defendants to not "emphasize gambling or otherwise impute any wrongdoing toward Mr. Hill on account of gambling" [ECF No. 402 p. 3]. Plaintiff does not point to any testimony from the 2022 Trial which would indicate that Defendants violated this instruction [*see*

ECF No. 491 pp. 19–21]. Instead, Plaintiff argues that the Court should not have allowed this evidence to be admitted because "[t]here was no material fact in dispute that Mr. Hill's alleged altercation helped solve" [ECF No. 491 pp. 20–21]. The Court disagrees and sees no reason to reexamine its prior determination on the admissibility of this evidence. Therefore, the Court determines that Plaintiff is not entitled to a new trial based on the admission of Mr. Hill's physical altercation with the other poker player.

**VIII.   Testimony of Defendants' DNA Expert**

In her Motion in Limine, Plaintiff also sought to exclude testimony from Defendants' experts, Meghan Clement and William P. Allan, on the basis that their anticipated testimony was almost entirely cumulative and duplicative of the testimony offered by fact-witness Earl Ritzline, who worked at the Indian River Crime Lab in 2014 [ECF No. 362 pp. 10–11]. Mr. Ritzline was called by Plaintiff in the 2018 Trial to discuss the 2014 Indian River Crime Lab Report, which determined that Mr. Hill could not be excluded as a potential match for the DNA found on the handgun in his back pocket [ECF No. 491 p. 21]. Plaintiff argued that Ms. Clement and Mr. Allan's testimony would be "indistinguishable" from Mr. Ritzline's. The Court denied Plaintiff's request to exclude the testimony of Ms. Clement and Mr. Allan without prejudice [ECF No. 402 p. 3; ECF No. 406 pp. 26–27]. The Court reasoned that, prior to the trial taking place, it could not determine whether the testimony was going to become cumulative [ECF No. 406 p. 27]. The Court stated that Plaintiff could reraise her challenge at trial if necessary [ECF No. 406 p. 27].

During the 2022 Trial—hours before Ms. Clement was set to testify—Plaintiff again moved to exclude Ms. Clement's testimony, raising the same argument that any testimony she provided would be cumulative of Mr. Ritzline's and confuse the jury [ECF No. 448]. Defendants responded by first emphasizing that Mr. Ritzline was a fact witness, and not an expert witness as Plaintiff contended [ECF No. 449 p. 2]. Furthermore, Defendants argued that Ms. Clement was

16

retained as a rebuttal expert to Plaintiff's expert, Ms. Suzanna Ryan, and that Ms. Clement was "prepared to testify for the purpose of assisting the jury in understanding any differences between the Indian River Crime Lab's 2014 report and Ms. Ryan's separate and independent 2021 DNA testing and report" [ECF No. 449 p. 2]. On the sixth day of trial, the Court heard the parties' arguments on Plaintiff's Motion [ECF No. 504 pp. 3–5] and ultimately denied Plaintiff's renewed motion to exclude Ms. Clement's testimony [ECF No. 451]. In denying Plaintiff's renewed motion, the Court determined that "[t]here are differences between the fact witness testimony of Mr. Ritzline, a lab technician, versus Ms. Clement who was retained as an expert witness in this case to evaluate, among other things, Ms. Ryan's evaluation" [ECF No. 504 p. 5]. Plaintiff now argues she is entitled to a new trial because Ms. Clement's testimony was cumulative and duplicative of Mr. Ritzline's testimony in violation of Rule 403 of the Federal Rules of Evidence [ECF No. 491 pp. 21–24].

Upon review of Ms. Clement's testimony, the Court again determines that her testimony was not cumulative or duplicative of Mr. Ritzline's. Although Plaintiff cites to snippets of Ms. Clement's testimony where she agrees with the results of the 2014 Indian River Crime Laboratory Report [ECF No. 491 p. 22], Ms. Clement also testified as to how Ms. Ryan's Report and the 2014 Indian River Crime Laboratory Report differed based on the different methods and tests that they employed [ECF No. 504 pp. 23–27]. Specifically, Ms. Clement testified that the kit Ms. Ryan used in her DNA analysis "looks at ten more peaks that the Indian River Crime Lab's kit doesn't even look at," which resulted in "no real overlap or similarities between the two labs" [ECF No. 504 p. 26]. Mr. Ritzline did not testify at all with respect to Ms. Ryan's Report [*see* ECF No. 503 pp. 165–77]. Because the bulk of Ms. Clement's testimony pertained to explaining the differences between Ms. Ryan's Report and the 2014 Indian River Crime Laboratory Report, in particular the methods and results of both reports, and Mr. Ritzline did not testify at all regarding these topics,

17

the Court determines that Ms. Clement's testimony was not cumulative to that of Mr. Ritzline's. Accordingly, Plaintiff's request for a new trial on the basis of this supposed cumulative testimony is denied.

IX.     **Denial of Plaintiff's Motion for a Change of Venue**

As discussed in the background section, prior to the 2022 Trial, Plaintiff moved for a change of venue claiming it would be impossible for Plaintiff to get a fair and impartial trial in St. Lucie County due to the "highly charged and emotional testimony regarding a St. Lucie County Sheriff's Office deputy involved shooting" [ECF No. 337 p. 10]. The Court denied that Motion, determining that the totality of the circumstances did not warrant transfer of venue [ECF No. 341]. Plaintiff now argues, in generalized terms, that she should be granted a third trial "[b]ased on the circumstances during jury selection, at trial, the nature of deliberations, the initial deadlock and the ultimate verdict against the manifest weight of the evidence, the denied Motion to Change Venue on a case against St. Lucie County Sheriff's Office inside of St. Lucie County was improper" [ECF No. 491 p. 24].

The Court need not rehash its reasoning from its Order Denying Plaintiff's Motion to Change Venue [ECF No. 341]. With respect to Plaintiff's current argument that she was denied a fair trial because the trial was held in St. Lucie County, the Court finds such an argument unconvincing. Although Plaintiff again fails to cite to any portion of the 2022 Trial Transcript in support of her argument [*see* ECF No. 491 pp. 24–26], the Court's review indicates that Plaintiff's enumerated grievances lack merit. For example, Plaintiff argues in conclusory terms that the 2022 jury pool was "comprised of individuals who had relationships with the St. Lucie County Sheriff's Office" [ECF No. 491 p. 25]. Yet, the trial transcript reveals that no jurors who were seated had connections to the St. Lucie County Sheriff's Office, and further, Plaintiff never raised any objection to the jurors who were seated at trial [ECF No. 499 pp. 224–29 (Plaintiff's counsel

accepting every juror who was seated)]. Plaintiff also argues that the Court's *Allen* charge "was inherently coercive as the jury was pressured to render a unanimous verdict outside the verdict they already rendered . . . a deadlock" [ECF No. 491 p. 26]. This argument fails. The purpose of an *Allen* charge is to get the jury to continue deliberating in an attempt to reach a unanimous verdict. *United States v. Polar*, 369 F.3d 1248, 1254 (11th Cir. 2004) ("An '*Allen* charge' is a trial court's admonition to a deadlocked jury, instructing it to make further attempts to reach a verdict."). The Court utilized the Eleventh Circuit pattern *Allen* charge [ECF No. 505 pp. 4–7], and Plaintiff does not identify anything about the charge that was inherently coercive or otherwise erroneous.

For the above reasons, Plaintiff's conclusory submission falls well short of meeting her burden to show that holding her trial in St. Lucie County deprived her of a fair and impartial trial. Nothing occurred during the duration of the 2022 Trial to indicate that the jurors or attorneys were improperly influenced by St. Lucie County Sheriff's Office. Plaintiff should not be granted a new trial in a separate county.

**X.     Clear Weight of the Evidence**

Plaintiff's final argument, like the majority of her arguments in favor of a new trial, is a conclusory argument unsupported by any citation to the record, this time claiming that the jury rendered a verdict that was against the clear weight of the evidence [ECF No. 491 pp. 26–27]. Plaintiff asserts that the evidence presented by both parties indicated that it was impossible for Mr. Hill to put the gun in his back pocket after being shot [ECF No. 491 p. 26]. Despite this bold assertion, both medical experts testified that Mr. Hill would have been able to place the gun in his back pocket prior to being shot in the head [ECF No. 498-1 p. 16; ECF No. 501 p. 64 (Dr. Anderson admitting that Mr. Hill would still have motor function and be conscious when he was shot in the abdomen); ECF No. 498-1 pp. 17–18; ECF No. 501 pp. 77–78 (Dr. Anderson conceding that Mr.

Hill would have been capable of placing the gun in his back pocket prior to being shot in the head); ECF No. 498-1 p. 35; ECF No. 504 p. 78 (Dr. O'Neil conceding that Mr. Hill's abdominal wounds would not have prevented him from placing the gun in his back pocket prior to being shot in the head)]. Furthermore, both Officers Newman and Lopez testified that Mr. Hill was holding a gun when he opened the garage door [ECF No. 501 p. 143 (Officer Lopez stating when the garage door came up, he saw a gun in Mr. Hill's right hand); ECF No. 491-1 p. 3; ECF No. 504 p. 181 (Officer Newman testifying that when he first saw Mr. Hill that Mr. Hill had a gun in his hand)]. And both officers testified that Mr. Hill was raising his gun in the direction of Officer Lopez [ECF No. 501 p. 143 (Officer Lopez); ECF No. 504 p. 183 (Officer Newman)].

Based on the above, the Court determines that the jury's verdict was not against the clear weight of the evidence.

## CONCLUSION

For the above reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Second Amended Motion for a New Trial [ECF No. 491] is **DENIED**.

2. This case remains **CLOSED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 20th day of June 2023.

*[signature]*

**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record